UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                        :
DANIEL DE OLIVEIRA,                       :

                                Plaintiff,      :

                 - against -                           :                         Lead Case:
                                                       :                         25-CV-1683 (VSB)

TENET HEALTHCARE, *et al.*,               :

                                Defendants.   :

------------------------------------------------------------X
                                                         :
DANIEL DE OLIVEIRA,                       :

                                Plaintiff,      :
                                                         :                         Member Case:
                 - against -                           :                         25-CV-1692 (VSB)

PAKIS, GIOTES, BURLESON &            :
DEACONSON, P.C., *et al.*,                  :

                                Defendants.   :

------------------------------------------------------------X
                                                        :
DANIEL DE OLIVEIRA,                       :

                                Plaintiff,      :
                                                         :                         Member Case:
                 - against -                           :                         25-CV-1753 (VSB)

VALLEY BAPTIST REALTY COMPANY,   :
LLC, *et al.*,                                    :

                                Defendants.   :

------------------------------------------------------------X

|  |  |
|---|---|
| DANIEL DE OLIVEIRA,<br><br>                Plaintiff,<br><br>   - against -<br><br>VHS HARLINGEN HOSPITAL COMPANY, L.L.C., *et al.*,<br><br>                Defendants. | Member Case:<br>25-CV-1754 (VSB) |
| DANIEL DE OLIVEIRA,<br><br>                Plaintiff,<br><br>   - against -<br><br>JAMS,<br><br>                Defendant. | Member Case:<br>25-CV-1868 (VSB)<br><br>**OPINION & ORDER** |

Appearances:

Daniel De Oliveira
East Meadow, NY
*Pro Se Plaintiff*

Howard Ian Elman
Mioko Catherine Tajika
Elman Freiberg PLLC
New York, NY
*Counsel for Defendant JAMS*

2

VERNON S. BRODERICK, United States District Judge:

Pro se Plaintiff seeks a nationwide injunction enjoining Defendant JAMS, Inc.[1] ("JAMS") "from initiating, continuing, or administering any arbitration proceedings against any individual or entity within the United States until federal regulators determine whether JAMS has engaged in systemic misconduct." (Doc. 44 at 1.)[2] I liberally construe Plaintiff's motion as a request for a preliminary injunction with nationwide effect because (1) Plaintiff lists the traditional four-part test governing motions for preliminary injunctions and (2) the remedy sought is an injunction enjoining all arbitrations before JAMS, including an arbitration scheduled for May 2025 involving Plaintiff. (*Id.* at 3.) Because Plaintiff fails to demonstrate irreparable harm, Plaintiff's motion for a nationwide injunction is DENIED.

I.  **Background**

Pro se Plaintiff filed five actions which have been consolidated, and all relate to arbitration in JAMS or litigation in Texas state court in connection with contracts with Defendant Tenet Healthcare and its subsidiaries VHS Harlingen Hospital Company, LLC ("VHS Contract") and Valley Baptist Realty Company, LLC ("Valley Baptist Contract"). All five actions were initiated between February 22, 2025 and March 6, 2025. Plaintiff has since filed over 56 motions, notices, or other letters.

On March 17, 2025, I issued an order consolidating all five actions and directing Plaintiff "to make all filings only in Case No. 25-CV-1683" (the "Lead Case") and warning Plaintiff that he "should not make additional filings or submissions in the other four actions." (Doc. 13 at 5

---

[1] "Founded in 1979, JAMS is the world's largest private alternative dispute resolution (ADR) provider." JAMS, *About Us*, https://perma.cc/7TGW-G38N. At the time of its founding, "JAMS was an acronym for Judicial Arbitration and Mediation Services, Inc." JAMS, *What does JAMS stand for?*, https://perma.cc/H26K-DN2X.

[2] Unless otherwise noted, record citations refer to the Lead Case of *De Oliveira v. Tenet Healthcare*, No. 25-CV-1683 (S.D.N.Y. filed February 22, 2025).

3

(emphasis in original).)  Since its filing, Plaintiff has ignored that order.  (*See, e.g.*, No. 25-CV-1692, Docs. 19 (motion to expedite summary judgment proceedings), 20 (motion to compel); No. 25-CV-1754, Docs. 17–18 (proposed clerk's certificate of default and accompanying affirmation), 24 (motion to compel).)

In the Lead Case, No. 25-CV-1683, Plaintiff filed even more motions or notices.  For example, in the span of one week between March 17–24, 2025, Plaintiff filed 16 motions or notices.  (*See* Docs. 14–25, 33–36.)  As another example, on April 18, 2025, Plaintiff filed 11 motions and one "notice of selective judicial adjudication" in one day.  (*See* Docs. 112–123.)

This Opinion & Order only addresses Plaintiff's March 26, 2025 motion for a nationwide injunction, which I construe as a motion for a preliminary injunction with nationwide effect.  (Doc. 44.)  On April 10, 2025, JAMS opposed.  (Doc. 89.)  To date, although Plaintiff has filed other documents, he has not filed a reply brief.

## II. Discussion

### A. *Applicable Law*

To obtain a preliminary injunction, the movant "must make a clear showing that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Starbucks Corp. v. McKinney*, 602 U.S. 339, 346 (2024) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)).  "A preliminary injunction is an 'extraordinary' equitable remedy that is 'never awarded as of right.'"  *Id.* at 345–46 (quoting *Winter*, 555 U.S. at 24).

Of these factors, irreparable harm is the most important, for if there is no finding of irreparable harm, an injunction cannot issue.  *See USA Recycling, Inc. v. Town of Babylon,* 66

F.3d 1272, 1294–95 (2d Cir. 1995) ("We have described a showing of irreparable harm as the *sine qua non* for preliminary injunctive relief." (citation omitted)). "To satisfy the irreparable harm requirement, Plaintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (cleaned up). "[I]f a party fails to show irreparable harm, a court need not even address the remaining elements." *Coscarelli v. ESquared Hosp. LLC*, 364 F. Supp. 3d 207, 221 (S.D.N.Y. 2019) (citation omitted).

### B.  *Application*[3]

Plaintiff alleges that "JAMS has engaged in systemic misconduct," including improperly arbitrating certain claims, against certain parties, and without jurisdiction, and other misconduct such as fraud, obstruction of justice, and collusion. (Doc. 44 ("Mot.") at 1.) Plaintiff requests a nationwide injunction enjoining JAMS from any arbitration proceeding, including Plaintiff's arbitration scheduled to occur sometime in May 2025. (*Id.* at 3.) Because Plaintiff fails to demonstrate irreparable harm, his request for injunctive relief must be denied.

#### 1. Irreparable Harm

It is well settled that the irreparable-harm requirement is "the single most important prerequisite for the issuance of a preliminary injunction" and "must therefore be satisfied before the other requirements for an injunction can be considered." *St. Joseph's Hosp. Health Ctr. v. Am. Anesthesiology of Syracuse, P.C.*, 131 F.4th 102, 106 (2d Cir. 2025) (internal quotation marks omitted). In the arbitration context, "[a] party suffers irreparable harm when it is 'forced

---

[3] I note that Plaintiff's instant motion lacks factual support and clarity. Therefore, where needed, I consult with other filings by Plaintiff to piece together the facts and the relief being sought in an effort to construe pro se Plaintiff's submissions "liberally" and interpret them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks omitted).

to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable.'" *In re Citigroup Inc. Sec. Litig.*, No. 07-CV-9901, 2014 WL 3610988, at *8 (S.D.N.Y. July 21, 2014) (quoting *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003)), *aff'd sub nom. Burgess v. Citigroup Inc.*, 624 F. App'x 6 (2d Cir. 2015).

Plaintiff states that his May 2025 arbitration will occur "despite acknowledged time-barred claims and lack of contractual privity." (Mot. 3.) However, Plaintiff fails to present any more details about the arbitration, what the underlying claims are or why they are time barred, who the other parties in the arbitration are, what issues the arbitration agreement covers, or why there is no contractual privity.

Because I construe pro se Plaintiff's filings liberally, however, I look to other relevant documents. *See Robert Smalls Inc. v. Hamilton*, No. 09-CV-7171, 2010 WL 2541177, at *2 n.2 (S.D.N.Y. June 10, 2010) ("In construing Defendants' pro se filings liberally, the Court looks to all relevant documents, even if filed in support of other motions, in determining this [pending motion]."). According to the complaint in the Lead Case, Plaintiff seeks an injunction enjoining the pending arbitration pursuant to a contract in 2014 that was allegedly breached in 2016. (Doc. 1 ("Compl.") at 3.) Plaintiff contends that the statute of limitations had run because Defendant Tenet Healthcare's demand for arbitration was made in 2024. (*Id.*) Further, Plaintiff states that he was "not even a party" to the contract, which itself lacked an arbitration clause. (*Id.*) However, the complaint does not clearly provide additional details about the underlying contract, its purported breach, or any demand for arbitration, and instead attaches approximately 1,743 pages of documents as exhibits. I therefore look to the original petition in one of the consolidated cases against JAMS—*De Oliveira v. JAMS*, No. 25-CV-1868 (S.D.N.Y. filed

6

Mar. 6, 2025) (the "JAMS Action")—for information related to the contracts. In doing so, because Plaintiff appears pro se, I construe his submissions "liberally" and interpret them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks omitted).

The petition in the JAMS Action describes two contracts that form the basis of an arbitration proceeding before JAMS. (No. 25-CV-1868, Doc. 1 ("JAMS Action Pet.") at 4–6.)[4] In short, Plaintiff's motion for nationwide injunction seems to be predicated on the arguments that the upcoming May 2025 arbitration is improper because (1) the claims based on the VHS Contract are time barred and (2) Plaintiff is not a party to the Valley Baptist Contract, which does not even contain an arbitration provision.[5]

 a. VHS Contract

According to Plaintiff, the VHS Contract (1) contains an arbitration clause, (2) to which both Defendant VHS Harlingen Hospital Company, LLC and Plaintiff are parties, and (3) was "signed in 2014 and expired in 2018," such that the statute of limitations expired in 2020. (JAMS Action Pet. 4–5.) Therefore, Plaintiff contends, the 2024 breach of-contract claims were time barred.

Under the Federal Arbitration Act ("FAA"), which Plaintiff asserts as the basis for subject-matter jurisdiction,[6] courts must resolve two questions: (1) "whether a valid agreement

---

[4] The petition in the JAMS Action (the "JAMS Action Pet.") is 100 pages long, which includes the body of the complaint and its numerous exhibits. Pincites to paragraph numbers refer to paragraphs in the complaint. Pincites to page numbers refer to the PDF page number of the 100-page document.

[5] Under the section regarding VHS Harlingen Hospital Company, Plaintiff states that "Valley Baptist Hospital waived arbitration by litigating instead of invoking arbitration in 2019." (JAMS Action Pet. ¶ 7(a).) Because the Valley Baptist Contract did not include an arbitration clause, I presume Plaintiff made a typographical error by citing Valley Baptist Hospital and construe Plaintiff's argument to be that VHS Harlingen Hospital Company waived arbitration by litigating.

[6] (*See* JAMS Action Pet. ¶ 5.)

7

or obligation to arbitrate exists," and if so, (2) "whether one party to the agreement has failed, neglected, or refused to arbitrate." *PaineWebber, Inc. v. Bybyk*, 81 F.3d 1193, 1198 (2d Cir. 1996). The FAA creates a presumption that "any doubts concerning the scope of arbitrable issues be resolved in favor of arbitration." *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)). "[B]road arbitration clauses . . . have been held to indicate the parties' intention to submit all questions of arbitrability, including timeliness, to arbitration." *R.J. Wilson & Assocs., Ltd. v. Underwriters at Lloyd's London*, No. 08-CV-322, 2009 WL 3055292, at *7 (E.D.N.Y. Sept. 21, 2009) (collecting cases and concluding that the issue of timeliness should be heard in arbitration because a broad arbitration clause stated that "[a]ll matters . . . arising under, out of or in connection with the agreement . . . shall be referred to an arbitration tribunal"); *see also Unis Grp., Inc. v. Compagnie Financiere de CIC et de L'Union Europeene*, No. 00-CV-1563, 2001 WL 487427, at *1 (S.D.N.Y. May 7, 2001) ("The Court finds that, given the breadth of the [arbitration] Clause, a timeliness claim should be addressed to the arbitrators. The law in this Circuit holds that timeliness defenses are to be decided by arbitrators, not by the courts.").

Plaintiff attaches the VHS Contract as an exhibit to his motion for a nationwide injunction. (Doc. 44-1 at 44–67.) The VHS Contract is a relocation agreement between VHS Harlingen Hospital Company, L.L.C. and Plaintiff, where Plaintiff agrees to relocate his cardiothoracic surgery practice from Cleveland, Ohio to the State of Texas. (*Id.*) In exchange, VHS Harlingen Hospital agreed to provide Plaintiff with certain benefits, including a guarantee against net income, a sign-on bonus, relocation expenses, and malpractice insurance. (*Id.* at 45, 55–59.) Section 5 of the VHS Contract covers arbitration and provides: "Any dispute or controversy arising under, out of or in connection with, or in relation to this Agreement or the

8

breach hereof, shall be determined and settled by binding arbitration in the county in which the Hospital is located in accordance with the Commercial Rules of Arbitration" of JAMS. (*Id.* at 49.) Further, Section 8(c) of the VHS Contract provides that it "shall be construed in accordance with the laws of [Texas]." (*Id.* at 50.)

The question of which issues are subject to arbitration "is determined by state law." *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 120 (2d Cir. 2003). This means that the question of whether the statute-of-limitations issue is arbitrable is determined by Texas law. Under Texas law, the question of arbitrability "'is a question of the parties' intent as expressed in their written agreement.'" *APC Home Health Servs., Inc. v. Martinez*, 600 S.W.3d 381, 399 (Tex. App. 2019) (quoting *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 519 (Tex. 2015)). The Texas Supreme Court has looked to United States Supreme Court precedent distinguishing substantive arbitrability questions—which relate to "the existence, enforceability, and scope of an agreement to arbitrate"—from procedural arbitrability questions—which relate to "the construction and application of limits on that agreement." *G.T. Leach*, 458 S.W.3d at 520 (citing *BG Grp., PLC v. Republic of Argentina*, 572 U.S. 25, 34–35 (2014)). "Procedural questions, such as whether a claim is barred by a statute of limitations, are generally to be reviewed by the arbitrator." *Cooper v. WestEnd Cap. Mgmt., L.L.C.*, 832 F.3d 534, 546 (5th Cir. 2016) (internal quotation marks omitted); *accord G.T. Leach*, 458 S.W.3d at 520.

The VHS Contract clearly uses broad language in stating that "[a]ny dispute or controversy arising under, out of or in connection with, or in relation to" the VHS Contract will be determined in arbitration. (Doc. 44-1 at 49.) The VHS Contract contains no limiting language that would take a timeliness issue outside the realm of arbitration. Indeed, the statute of limitations is the type of "issue requiring the adjudicator to decide if a party has satisfied the

9

prerequisites to compelling arbitration . . . involve procedural arbitrability," which "is the province of the arbitrator." *In re Glob. Const. Co., L.L.C.*, 166 S.W.3d 795, 798 (Tex. App. 2005). Because Plaintiff's anticipated timeliness defense is an issue before the arbitrator, Plaintiff fails to demonstrate that he would be "forced to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable.'" *In re Citigroup*, 2014 WL 3610988, at *8 (internal quotation marks omitted). Plaintiff thus fails to establish irreparable harm regarding the VHS Contract.

### b. Valley Baptist Contract

According to Plaintiff, the Valley Baptist Contract (1) does not contain an arbitration clause, and (2) Defendant Valley Baptist Realty Company, LLC—but not Plaintiff—is a party to the Valley Baptist Contract, and therefore there is no contractual privity. (JAMS Action Pet. 5–6.)

"[T]he Second Circuit has held that '[b]eing forced to arbitrate a claim one did not agree to arbitrate constitutes an irreparable harm for which there is no adequate remedy at law.'" *UBS Sec. LLC v. Leitner*, No. 17-CV-1365, 2017 WL 5054739, at *2 (S.D.N.Y. May 12, 2017) (quoting *UBS Sec., LLC v. Voegeli*, 405 F. App'x. 550, 551 (2d Cir. 2011) (summary order)).

Plaintiff likewise attaches the Valley Baptist Contract as an exhibit to his motion for a nationwide injunction. (Doc. 44-1 at 16–36.) The Valley Baptist Contract is a lease agreement between Valley Baptist Realty Company, LLC as landlord and Valley Heart & Vascular Institute, PLLC as tenant. (*Id*.) Plaintiff signed the agreement as "sole member" of and on behalf of Valley Heart & Vascular Institute, PLLC. (*Id.* at 28.) Section 23 of the Valley Baptist Contract covers legal proceedings and provides: "This Lease shall be governed by the laws of the State [of Texas]. In any legal or equitable action or bankruptcy proceeding arising out of this

Lease, including any appeal or supplemental proceedings in connection therewith, the prevailing party shall be entitled to recover all fees, costs and expenses, including reasonable attorney's fees, incurred in connection with such action or proceeding and any efforts to collect or enforce any resulting judgment." (*Id.* at 26–27.) Plaintiff is correct that he is not a party to the Valley Baptist Contract, since he signed in his capacity as the "sole member" of Valley Heart & Vascular Institute, PLLC. Plaintiff is also correct that the contract does not include an arbitration provision.

Crucially, however, Plaintiff fails to mention that he agreed, in his individual capacity, to arbitration during the ensuing litigation in Texas state court. Indeed, Plaintiff's motion for a nationwide injunction included an exhibit of JAMS' original answer and plea to the jurisdiction in Texas state court (Cause No. D-1-GN-24-005603), dated September 27, 2024, which indicates Plaintiff's consent to arbitration. (Doc. 44-1 at 1–2.) Specifically, JAMS' answer stated that, even though only the VHS Contract included an arbitration clause, "the parties to those suits" involving VHS and Valley Baptist, "including Plaintiff" in his individual capacity, "jointly moved to refer the disputes to arbitration, and the Cameron County court issued an Order on Oct. 14, 2019, granting that agreed motion based on the underlying arbitration agreement." (*Id.*) Plaintiff also included a copy of that October 14, 2019 order granting the parties' "Joint Motion for Referral to Arbitration," which included signatures from Plaintiff's counsel Pakis, Giotes, Page & Burleson, P.C. (*Id.* at 69–70.) That October 14, 2019 order included both lawsuits, one involving Valley Baptist Realty Company, LLC and the other involving VHS Harlingen Hospital Company, LLC. (*Id.*) In addition to referring the parties to binding arbitration, the October 14, 2019 order stated that "if there is no agreement reached as to any matter, then the parties in accordance with the arbitration agreement in the relocation contract and pursuant to agreement

11

and the Court's authority under Chapter 152 of the Texas Civil Practice and Remedies Code are to be bound by the Commercial Rules of Arbitration of the Judicial Arbitration and Mediation Services ("JAMS") before one arbitrator applying the laws of the State of Texas." (*Id.*)  It is clear that, although the Valley Baptist Contract did not include an arbitration provision, and although Plaintiff himself was not a party to the Valley Baptist Contract, Plaintiff agreed to arbitration.

Plaintiff cannot argue to the contrary because he is bound by his attorneys' signature on the joint motion for referral to arbitration.  Under Texas law, "[t]he general rule is that the relationship of attorney and client is one of agency" such that "the omissions, as well as the commissions, of an attorney are to be regarded as the acts of the client whom he represents; and his neglect is equivalent to the neglect of the client himself." *Texas Emp. Ins. Ass'n v. Wermske*, 349 S.W.2d 90, 93 (Tex. 1961).  "The client may also be bound by the attorney's actions done in the good faith belief that he continued to represent the client." *In re Users Sys. Servs., Inc.*, 22 S.W.3d 331, 335 (Tex. 1999) (citation omitted).

Plaintiff has not demonstrated that his attorneys have not acted in good faith in their consent to arbitration, so their consent binds Plaintiff to arbitration.  *See Biggs v. U. S. Fire Ins. Co.*, 611 S.W.2d 624, 629 (Tex. 1981) ("When an agent acts within the scope of this apparent authority, the acts bind the principal as though the agent actually possessed such authority.").  In a related case (the "PakisLaw Action"), Plaintiff sues his prior counsel Pakis, Giotes, Burleson & Deaconson, P.C. ("PakisLaw") and attorneys Marcus Mataga, Michael Cosby, and David N. Deaconson for malpractice, negligence, breach of fiduciary, and violations of the Federal Arbitration Act and the due process clauses of the Fifth and Fourteenth Amendments to the U.S. Constitution.  (*See* No. 25-CV-1692, Doc. 1 ("PakisLaw Action Complaint" or "PakisLaw

Action Compl.").) The PakisLaw Action Complaint argues, in relevant part, that PakisLaw refused Plaintiff's request to file a motion to dismiss in the Texas state court case and instead recommended mediation. (*Id.* ¶¶ 15–17.)[7] However, this barebones allegation in the complaint is insufficient to show that Plaintiff's attorneys did not act in good faith in consenting to arbitration. Plaintiff does not include any details about when he made this request, including whether it was before or after he consented to arbitration, or why they refused to file a motion to dismiss.

Plaintiff's complaint in the PakisLaw Action attached two partial email chains between Plaintiff and Defendant Marcus Mataga of PakisLaw regarding this topic. (PakisLaw Action Compl. 122–23.) In the first email chain, with the subject line "Re: Valley Baptist Lawsuits – Reply 07-25-2023 Agree with Walk away – Summary of case points," Plaintiff does not include the entire email chain, but the earliest email that Plaintiff included is from Mr. Mataga to Plaintiff on July 27, 2023 at 6:11 p.m. regarding potential dates for mediation. (*Id.* at 123.) On July 28, 2023 at 6:41 a.m., Plaintiff replied:

> Regardless of what will happen I am asking you to file a motion to dismiss the lawsuit regarding the lease against me. It was file [sic] against me but the contract is between the two corporations. I really don't care if that could be used as leverage. It's my opinion it does not affect the contractual disputes between Tenet and I. I would like that out of the way!

(*Id.*) The complaint does not include what response, if any, was given.

In the second partial email chain, with the subject line "RE: Valley Baptist Lawsuits – Follow up 08/14/2023," Mr. Mataga emailed Plaintiff on September 2, 2023 at 3:44 p.m. describing potential mediation dates and explaining why a motion to notify the court that

---

[7] The PakisLaw Action Complaint is 128 pages long, which includes the body of the complaint and its numerous exhibits as one document. Pincites to paragraph numbers refer to paragraphs in the complaint. Pincites to page numbers refer to the PDF page number of the 128-page document.

13

PakisLaw is representing Plaintiff individually and not the corporation is not "necessary." (*Id.* at 122.) Regarding the motion to dismiss, Mr. Mataga also explains:

> As for a motion to dismiss based on the grounds that the wrong party was sued, I do not advise doing this before mediation. For one, because the parties have agreed that the case is subject to arbitration, the argument you refer to is likely something the Court cannot even rule on and therefore the Court may withhold making any decision or may deny the motion, which could weaken our position in mediation and set a bad precedent for similar arguments in the arbitration. All of this would also require a significant expenditure of funds (particularly because this Court prefers in person hearings, so we would have to travel to Brownsville).

(*Id.*) The complaint does not include what response, if any, Plaintiff gave. Nor does the complaint include any other email exchanges or communication between Plaintiff and his attorneys regarding his consent to arbitration.

The email exchanges could be interpreted as demonstrating that Plaintiff wanted to file a motion to dismiss in the Texas state court case after he had already consented to arbitration. However, they do not establish any facts showing that his attorneys did not act in good faith in consenting to arbitration. Indeed, Plaintiff seems to have already agreed to arbitration prior to the earliest email in the email chains. Plaintiff does not describe in his complaint or attach any exhibits that provide any information about the events leading up to his consent to arbitrate, or his purported opposition to arbitration. In short, Plaintiff fails to demonstrate that his attorneys did not act in good faith in consenting to arbitrate. Nor has Plaintiff established any other reason why he did not consent to arbitrate.

In sum, Plaintiff's own filings indicate that he agreed to arbitrate, despite (1) his not being a signatory to the Valley Baptist Contract and (2) a recognition that the lease agreement did not include an arbitration clause. Plaintiff fails to establish irreparable harm with regard to the Valley Baptist Contract to warrant a preliminary injunction here.

Because Plaintiff fails to establish irreparable harm, which "must be satisfied before the

other requirements for an injunction can be considered," *St. Joseph's Hosp. Health Ctr.*, 131 F.4th at 106, I do not consider the other requirements. Plaintiff also fails to demonstrate why a nationwide injunction enjoining JAMS from administering any arbitration should issue.

### III.    Conclusion

Because Plaintiff fails to demonstrate irreparable harm, the motion for a nationwide injunction is DENIED.

The Clerk of Court is respectfully directed to terminate Document 44 (emergency motion for nationwide injunction against JAMS, Inc.).

Plaintiff is warned that if he continues to file unsupported motions without regard to the timing strictures provided for under the Federal Rules of Civil Procedure and this District's Local Rules, in any of the five consolidated actions, he risks being sanctioned. *See, e.g.*, *In re Taneja*, No. 17-CV-5618, 2018 WL 1831853, at *5 (S.D.N.Y. Apr. 16, 2018) (admonishing plaintiff "to refrain from making further frivolous filings" and imposing sanctions). As demonstrated above, in the instant motion Plaintiff failed to present a basis for his request for a nationwide injunction enjoining JAMS from administering any arbitrations nationwide "until a full regulatory review is completed by federal authorities." (Mot. 4.) Plaintiff, of course, has the right to pursue his claims, and is afforded great solicitude in doing so in light of his status as a pro se litigant. However, Plaintiff is warned that his serial filing of motions—such as 11 motions in one day on April 18, 2025, (Docs. 112–123) and three motions for sanctions, (Docs. 17, 20, 71)—suggests potential repetitive, vexatious, and frivolous litigation. Indeed, I have "the authority to dismiss a complaint, even when the plaintiff has paid the filing fee, if [I] determine[] that the action is frivolous." *Uppal v. Indest*, No. 17-CV-7072, 2017 WL 6405660, at *1 (S.D.N.Y. Oct. 12, 2017) (citing *Fitzgerald v. First E. Seventh Tenants Corp.*, 221 F.3d 362,

363–64 (2d Cir. 2000) (per curiam)).

SO ORDERED.

Dated: April 30, 2025
      New York, New York

Vernon S. Broderick
United States District Judge