# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

DANIEL DE OLIVEIRA, MD,                        :
                                               :        Case No. 25-cv-01683-VSB-GS
                              Plaintiff,        :
                                               :
              -against-                         :
                                               :
TENET HEALTHCARE et al.,                        :
                                               :
                              Defendants.       :
                                               :
------------------------------------------------------------------X
DANIEL DE OLIVEIRA, MD,                         :
                                               :        Case No. 25-cv-01868-VSB-GS
                              Plaintiff,        :
                                               :
              -against-                         :
                                               :
JAMS,                                           :
                                               :
                              Defendant.        :
                                               :
------------------------------------------------------------------X

## NOTICE OF MOTION TO DISMISS THE COMPLAINT

PLEASE TAKE NOTICE that upon the accompanying declaration of Howard I. Elman,

dated May 2, 2025, and the exhibits attached thereto, and upon the memorandum of law of

defendant JAMS, Inc. ("JAMS") in support of its motion to dismiss the Complaint, JAMS will

move this Court, before The Honorable Vernon S. Broderick, United States District Judge for the

Southern District of New York, at the Thurgood Marshall United States Courthouse for the

Southern District of New York, 40 Foley Square, Courtroom 518, New York, New York 10007,

at a date and time to be set by the Court, for an order, pursuant to Federal Rules of Civil

Procedure 12(b)(1), 12(b)(2), and 12(b)(6), dismissing the Complaints in the above-captioned

consolidated actions as against it, in their entirety and with prejudice, and granting such other and further relief as this Court may deem just and proper.

PLEASE TAKE FURTHER NOTICE that, pursuant to Local Civil Rule 6.1(b) of the United States District Courts for the Southern and Eastern Districts of New York, any opposing or response papers must be served within 14 days after service of these moving papers, and any reply papers must be served within seven days after service of the answering papers.

Dated:  May 2, 2025
    New York, New York

Respectfully submitted,

ELMAN FREIBERG PLLC

By:  */s/ Howard I. Elman*
    Howard I. Elman
    Mioko C. Tajika
950 Third Avenue, Suite 1600
New York, New York 10022
(646) 780-8100
helman@ef-law.com
mtajika@ef-law.com

*Attorneys for Defendant JAMS, Inc.*

cc:  *Pro se* plaintiff (via ECF, and case law by mail)

All counsel of record (via ECF)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

DANIEL DE OLIVEIRA, MD,

                            Plaintiff,

            -against-

TENET HEALTHCARE et al.,

                         Defendants.

                                Case No. 25-cv-01683-VSB-GS

-----------------------------------------------------------------X

DANIEL DE OLIVEIRA, MD,

                            Plaintiff,

            -against-

JAMS,

                         Defendant.

                                Case No. 25-cv-01868-VSB-GS

-----------------------------------------------------------------X

## <u>DECLARATION OF HOWARD I. ELMAN</u>

I, Howard I. Elman, declare as follows:

1.      I am an attorney and counselor at law admitted to practice in the courts of the State of New York and in this Court.

2.      I am a member of Elman Freiberg PLLC, attorneys in this action for defendant JAMS, Inc. ("JAMS"), incorrectly sued herein as JAMS. I make this declaration in support of JAMS's motion to dismiss the Complaint filed by plaintiff Daniel De Oliveira, MD ("Plaintiff").

3.      Annexed to this declaration as Exhibit A is a true and correct copy of the "Order on Defendant's Plea to the Jurisdiction" dated October 24, 2024, rendered in *Daniel De Oliveira,*

*MD v. JAMS, Inc.*, Cause No. D-1-GN-24-005603, in the District Court of Travis County, Texas, 459th Judicial District.

4.      Plaintiff appealed the above order in the Third Court of Appeals in Austin, Texas. Annexed to this declaration as Exhibit B is a true and correct copy of JAMS's appellee's brief, dated and filed on March 24, 2025.

5.      Annexed to this declaration as Exhibit C is a true and correct copy of Plaintiff's reply brief in the appeal, dated and filed on March 26, 2025.

6.      On April 24, 2025, JAMS received by mail at its California headquarters copies of the summons and "petition" in the 24-cv-01868-VSB-GS action. This mailing appears to be plaintiff's first attempt at service of process against JAMS in that action.

7.      Rather than dispute validity of service (which JAMS believes to be improper), because the allegations in the 01868 action are essentially the same as the 01683 action (and the 01868 petition's allegations are even more of a rehash of his underlying Texas state court action against JAMS), JAMS respectfully requests that its motion to dismiss be deemed directed at the 01868 action as well, and that the Court dismiss both actions with prejudice.

8.      I declare under penalty of perjury that the foregoing is true and correct.

Dated:  May 2, 2025
        New York, New York

                                        /s/ *Howard I. Elman*
                                        Howard I. Elman

# EXHIBIT A

## CAUSE NO. D-1-GN-24-005603

| | | |
|---|---|---|
| **Daniel De Oliveira, MD,** | § | **IN THE DISTRICT COURT** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **OF TRAVIS COUNTY, TEXAS** |
| | § | |
| **JAMS, Inc.,** | § | |
| | § | |
| **Defendant.** | § | **459th JUDICIAL DISTRICT** |

### ORDER ON DEFENDANT'S PLEA TO THE JURISDICTION

On _____ this day _____, this Court ~~considered~~ heard Defendant JAMS, Inc.'s

Plea to the Jurisdiction. After reviewing Plaintiff's Original Petition, Defendant's Plea to the

Jurisdiction and the exhibits attached thereto, and any response filed thereto, the Court is of the

opinion and finds that this Court has no subject-matter jurisdiction in this case. Therefore,

**IT IS SO ORDERED** that Defendant's Plea to the Jurisdiction is sustained, and this case

is dismissed with prejudice to its refiling.

Dated: _____ October 24 _____, 2024

JUDGE PRESIDING

# EXHIBIT B

ACCEPTED
03-24-00759-CV
98821879
THIRD COURT OF APPEALS
AUSTIN, TEXAS
3/24/2025 4:37 PM
JEFFREY D. KYLE
CLERK

No. 03-24-00759-CV

# In The Court of Appeals for The Third District of Texas

---

DANIEL DE OLIVEIRA, MD,

*Appellant,*

v.

JAMS, INC.,

*Appellee.*

---

On Appeal from the 459th Judicial
District Court of Travis County, Texas
Trial Court Cause No. D-1-GN-24-005603

---

## APPELLEE'S BRIEF

---

Anthony N. Kaim
State Bar No. 24065532
akaim@gibbsbruns.com
Peter J. McDonald
State Bar No. 24116738
pmcdonald@gibbsbruns.com
**GIBBS & BRUNS LLP**
1100 Louisiana Street, Suite 5300
Houston, Texas 77002
Telephone: (713) 650-8805
Facsimile: (713) 750-0903

*Counsel for Appellee*

# <u>IDENTITY OF PARTIES AND COUNSEL</u>

**Appellant**: Daniel De Oliveira, MD

Appellant is pro se in this appeal and in the trial court.

872 Bettina Court, Apt 223
Houston, Texas 77024
Telephone: (979) 373-4933
Fax: (906) 366-8234
Email: danieldeoliveira@me.com


**Appellee**: JAMS, Inc.

**Trial and Appellate Counsel**

Anthony N. Kaim
State Bar No. 24065532
akaim@gibbsbruns.com
Peter J. McDonald
State Bar No. 24116738
pmcdonald@gibbsbruns.com
**GIBBS & BRUNS LLP**
1100 Louisiana Street, Suite 5300
Houston, Texas 77002
Telephone: (713) 650-8805
Facsimile: (713) 750-0903

# TABLE OF CONTENTS

**Page**

Identity of Parties and Counsel ................................................................. i

Table of Authorities................................................................................. iii

Record References ................................................................................... v

Glossary ................................................................................................. v

Statement of the Case............................................................................. vi

Statement Regarding Oral Argument ..................................................... vii

Issues Presented.................................................................................... viii

Statement of Facts ................................................................................... 1

Summary of Argument............................................................................. 5

Argument................................................................................................. 7

I.    The Trial Court Properly Dismissed the Case for Lack of Subject Matter Jurisdiction. .......................................................................... 7

    A.    Standard of Review. ................................................................... 7

    B.    Appellant Cannot Seek Review of Issues Never Considered By the Trial Court and Unnecessary to the Disposition of JAMS's Plea to the Jurisdiction. ..................... 7

    C.    The Trial Court Properly Dismissed the Case for Lack of Subject Matter Jurisdiction. ............................................. 10

    D.    The Trial Court Was Not Required to Issue Findings of Fact and Conclusions of Law. ....................................... 13

Prayer ................................................................................................... 15

Certificate of Compliance...................................................................... 16

Certificate of Service ............................................................................ 17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*BG Group, PLC v. Republic of Argentina*,
   572 U.S. 25 (2014)..............................................................6, 12

*Blue Cross Blue Shield of Tex. v. Juneau*,
   114 S.W.3d 126 (Tex. App.—Austin 2003, no pet.) ......................10, 11

*City of Austin v. Savetownlake.Org*,
   No. 03-07-00410-CV, 2008 WL 3877683 (Tex. App.—
   Austin Aug. 22, 2008, no pet.) .............................................7

*Daughety v. Nat'l Ass'n of Homebuilders of U.S.*,
   970 S.W.2d 178 (Tex. App.—Dallas 1998, no pet.)
   ......................................................................5, 7, 8, 10

*Howsam v. Dean Witter Reynolds, Inc.*,
   537 U.S. 79 (2002)...............................................................12

*IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp.*,
   938 S.W.2d 440 (Tex. 1997) ..................................................13

*J.G. v. Tex. Dep't of Family & Protective Services*,
   592 S.W.3d 515 (Tex. App.—Austin 2019, no pet.) ..........................8

*Lupe Holdings, LP v. Sanchez*,
   No. 01-21-00351-CV, 2022 WL 2837331 (Tex. App.—
   Houston [1st Dist.] July 21, 2022, no pet.) ................................12

*Miranda v. Byles*,
   390 S.W.3d 543 (Tex. App.—Houston [1st Dist.] 2012, pet.
   denied)..........................................................................8, 12

*Patten v. Johnson*,
   429 S.W.3d 767 (Tex. App.—Dallas 2014, pet. denied)......................11

*Rao v. Am. Arbitration Ass'n*,
    No. 05-13-00462-CV, 2014 WL 3513258 (Tex. App.—
    Dallas July 15, 2014, pet. denied) .................................................. 6, 10

*Tex. Dep't of Transp. v. City of Sunset Valley*,
    8 S.W.3d 727 (Tex. App.—Austin 1999, no pet.) ................................. 7

*Tex. Health & Human Services Comm'n v. Pope*,
    674 S.W.3d 273 (Tex. 2023), reh'g denied (Sept. 29, 2023) ................. 7

*U. Lawrence Boze' & Assoc. v. Harris Cnty. Appraisal Dist.*,
    368 S.W.3d 17 (Tex. App.—Houston [1st Dist.], 2011) ...................... 13

*Valley Baptist Realty Company, LLC v. De Oliveira*,
    Cause No. 2018-CCL-01401, in the County Court of
    Cameron County, Texas ........................................................................ 1

*VHS Harlingen Hospital Company, LLC, D.B.A. Valley
    Baptist Medical Center – Harlingen v. De Oliveira*,
    Cause No. 2019-CCL-01342, in the County Court of
    Cameron County, Texas ........................................................................ 1

*Watson v. City of San Marcos*,
    No. 03-22-00307-CV, 2023 WL 3010938 (Tex. App.—
    Austin Apr. 20, 2023, pet. denied) ................................................... 6, 14

## Other Authorities

Tex. R. Civ. P. 296 .................................................................................. 13

## RECORD REFERENCES

| Record Reference | Abbreviation |
|---|---|
| Clerk's Record | CR.__ |
| Reporter's Record | RR.__ |

## GLOSSARY

| Term | Definition |
|---|---|
| "Appellant" | Plaintiff-Appellant Daniel De Oliveira, MD |
| "JAMS" | Defendant-Appellee JAMS, Inc. |
| the "Cameron County Lawsuits" | *Valley Baptist Realty Company, LLC v. De Oliveira*, Cause No. 2018-CCL-01401, in the County Court of Cameron County, Texas, and *VHS Harlingen Hospital Company, LLC, D.B.A. Valley Baptist Medical Center – Harlingen v. De Oliveira*, Cause No. 2019-CCL-01342, in the County Court of Cameron County, Texas |
| the "Order" | signed Order on Defendant's Plea to the Jurisdiction dismissing Appellant's claims with prejudice for lack of subject matter jurisdiction |
| the *Hospital Company* lawsuit | *VHS Harlingen Hospital Company, LLC, D.B.A. Valley Baptist Medical Center – Harlingen v. De Oliveira*, Cause No. 2019-CCL-01342, in the County Court of Cameron County, Texas |

## <u>STATEMENT OF THE CASE</u>

| | |
|---|---|
| *Nature of the case:* | Petition for (a) declaratory judgment and (b) injunctive relief to prevent Appellee JAMS, Inc. from administering a court-ordered arbitration. |
| *Course of proceedings:* | Appellant was sued by two entities in 2018 and 2019 for breach of contract. CR.31; CR.59.  One of the underlying contracts had an arbitration clause, and those parties—Appellant included—jointly moved a Cameron County court to refer the disputes to arbitration. CR.90.  Appellant then filed this lawsuit against JAMS on August 30, 2024, to prevent JAMS from administering the same arbitration. CR.4.  JAMS filed its Original Answer and Plea to the Jurisdiction on September 27, 2024 based on arbitral immunity. CR.22.  The trial court heard oral argument on the jurisdictional issue on October 24, 2024, granted JAMS's Plea from the bench, RR.16:3-4, and issued an order dismissing Appellant's claims on the same day, on the grounds that it "has no subject-matter jurisdiction in this case." CR.211.  The trial court declined to issue findings of fact and conclusions of law. CR.228. This appeal followed. |
| *Trial court:* | The 459th District Court, Travis County, Texas. Argument on JAMS's Plea to the Jurisdiction was heard by the Honorable Jan Soifer of the 345th District Court. |
| *Trial court's disposition:* | On October 24, 2024, after hearing oral argument, the trial court granted JAMS's Plea to the Jurisdiction, finding that it lacked subject matter jurisdiction for Appellant's claims against JAMS, and dismissed Appellant's claims with prejudice. CR.211. |

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellee does not believe that oral argument will aid the Court's disposition of this appeal, which concerns a single, well-settled jurisdictional issue—arbitral immunity—which may adequately be decided on the papers.

## <u>ISSUES PRESENTED</u>

1. Whether the trial court properly dismissed Appellant's claims against Appellee JAMS, Inc. for lack of subject matter jurisdiction, where JAMS, a provider of alternative dispute resolution services, is immune from suit under well-settled principles of arbitral immunity.

## STATEMENT OF FACTS

This lawsuit arose from two underlying lawsuits against Plaintiff-Appellant Daniel De Oliveira, MD ("Appellant") in 2018 and 2019, to which Defendant-Appellee JAMS, Inc. ("JAMS") was not a party: (i) *Valley Baptist Realty Company, LLC v. De Oliveira*, Cause No. 2018-CCL-01401, in the County Court of Cameron County, Texas, and (ii) *VHS Harlingen Hospital Company, LLC, D.B.A. Valley Baptist Medical Center – Harlingen v. De Oliveira*, Cause No. 2019-CCL-01342, in the County Court of Cameron County, Texas (together, the "Cameron County Lawsuits"). CR.31-57; CR.59-88.

In the Cameron County Lawsuits, the plaintiffs asserted claims for breach of a lease agreement and breach of a relocation agreement against Appellant. CR.33; CR.61. The underlying relocation agreement in the *Hospital Company* lawsuit included an arbitration provision, requiring arbitration "in accordance with the Commercial Rules of Arbitration . . . of the Judicial Arbitration and Mediation Services ('JAMS')." CR.70. As a result, the parties to those suits, *including Appellant*, jointly moved to refer those disputes to arbitration, and a Cameron County court issued

an order on October 14, 2019, granting that agreed motion based on that arbitration agreement. CR.90-91; RR.4:24-5:8; RR.12:25-13:5.

Despite agreeing in October 2019 to send the Cameron County Lawsuits to arbitration, on August 30, 2024, Appellant filed an Original Petition in Travis County against JAMS, requesting a declaratory judgment that JAMS *cannot* conduct the same arbitration, and an injunction preventing JAMS from doing so, on the grounds that the statute of limitations had expired on the claims in arbitration. CR.4-8.

On September 27, 2024, JAMS filed its Original Answer and Plea to the Jurisdiction, requesting that the trial court dismiss Appellant's suit for lack of jurisdiction because: (i) JAMS is immune from suit under arbitral immunity, (ii) whether a statute of limitations applies to bar the underlying claims against Appellant is a question for the arbitrator, not JAMS as the arbitration administrator and not the trial court, and (iii) Appellant sought no financial relief and therefore did not meet the district court's minimum amount in controversy. CR.23.

Appellant filed a Response to the Plea to the Jurisdiction on September 28, which purported to amend the amount in controversy to an amount within the jurisdictional limits of the trial court, but did not

address the other grounds for dismissal. CR.94-95.  On October 11, JAMS properly noticed its Plea to the Jurisdiction for oral hearing on October 24, 2024. CR.197-98.

Appellant filed several other motions and notices of various kinds before the date of the hearing, all of which requested relief that was either procedurally improper, not relevant to the case, or both. *See, e.g.*, CR.98-101; CR.102-35; CR.136-80; CR.181-86; CR.187-90; CR.191-96. For example, Appellant filed a motion to compel documents and purported to serve interrogatories before the discovery period had begun, CR.18-20, filed a "motion for declaratory judgment" that he was not a party to one of the underlying contracts in the Cameron County Lawsuits, CR.102-06, and filed a "motion for declaratory judgment" that the Cameron County court lacked subject matter jurisdiction in those cases, CR.136-40.

JAMS's counsel exchanged emails with Appellant on October 7 and 9, 2024, instructing Appellant as to how to notice his various motions for hearing on October 24, to be heard along with the Plea to the Jurisdiction. RR.7:19-23.  But Appellant chose not to notice his motions. RR.7:23-25. JAMS's Plea to the Jurisdiction was the only issue heard by the trial

court on October 24. RR.1-18.  Regardless, as explained by JAMS's counsel at the hearing, the jurisdictional question raised by the Plea to the Jurisdiction had to be heard first anyway, and if the Plea were granted, all other issues would be moot. RR 8:1-6.  In other words, whether Appellant's other motions were noticed or addressed at the October 24 hearing makes no difference to the question now on appeal.

After hearing oral argument on the Plea to the Jurisdiction, the trial court granted the Plea from the bench and, on the same day, issued a signed Order on Defendant's Plea to the Jurisdiction (the "Order") dismissing Appellant's claims with prejudice for lack of subject matter jurisdiction:

---

**ORDER ON DEFENDANT'S PLEA TO THE JURISDICTION**

On _____ this day _____, this Court ~~considered~~ heard Defendant JAMS, Inc.'s Plea to the Jurisdiction. After reviewing Plaintiff's Original Petition, Defendant's Plea to the Jurisdiction and the exhibits attached thereto, and any response filed thereto, the Court is of the opinion and finds that this Court has no subject-matter jurisdiction in this case. Therefore,

   **IT IS SO ORDERED** that Defendant's Plea to the Jurisdiction is sustained, and this case is dismissed with prejudice to its refiling.

Dated: _____ October 24 _____, 2024

_____
JUDGE PRESIDING

---

4

RR.16:3-4; CR.211.  This was the only Order issued by the trial court.

After the argument, Appellant filed a request for findings of fact and conclusions of law. CR.212-16.  The trial court requested a response from JAMS via email. CR.257. JAMS's counsel responded, citing applicable caselaw, that where—as here—a court dismisses a case on the pleadings for lack of jurisdiction, findings of fact and conclusions of law "have no purpose and should not be requested or considered on appeal." CR.256. After reviewing all correspondence and caselaw, including Appellant's subsequent reply, the trial court "agree[d] that a response to the request for findings of fact and conclusions of law is not proper and w[ould] not be provided." CR.254.  This appeal followed.

## SUMMARY OF ARGUMENT

The Court should affirm the trial court's straightforward October 24, 2024 Order, which properly dismissed Appellant's claims for lack of subject matter jurisdiction.

Appellate courts only review issues that were considered and decided by the trial court. *Daughety v. Nat'l Ass'n of Homebuilders of U.S.*, 970 S.W.2d 178, 182 (Tex. App.—Dallas 1998, no pet.) (emphasis in original).  Here, the trial court only considered JAMS's Plea to the

Jurisdiction and issued a single ruling: that it lacked subject matter jurisdiction. This was proper—the trial court considers jurisdictional issues first. As a result, this Court need not (and cannot) review or consider any of Appellant's additional, irrelevant, and merits-based arguments that do not relate to the trial court's Order on the Plea to the Jurisdiction.

The trial court properly dismissed the claims against JAMS for lack of subject matter jurisdiction. Like judges and arbitrators, organizations that administer arbitrations are immune from suit for acts within the scope of their duties. *Rao v. Am. Arbitration Ass'n*, No. 05-13-00462-CV, 2014 WL 3513258, at *2 (Tex. App.—Dallas July 15, 2014, pet. denied). Independent of arbitral immunity, whether claims in arbitration are time-barred is a question of procedural arbitrability to be decided by an arbitrator—not by JAMS and not by the trial court. *See BG Group, PLC v. Republic of Argentina*, 572 U.S. 25, 34-35 (2014).

Finally, a trial court is not required to issue findings of fact and conclusions of law when it dismisses a case on a plea to the jurisdiction. *Watson v. City of San Marcos*, No. 03-22-00307-CV, 2023 WL 3010938, at *2 (Tex. App.—Austin Apr. 20, 2023, pet. denied).

## **ARGUMENT**

## I.    **The Trial Court Properly Dismissed the Case for Lack of Subject Matter Jurisdiction.**

### A. **Standard of Review.**

A trial court's ruling on a plea to the jurisdiction is reviewed *de novo*. *Tex. Health & Human Services Comm'n v. Pope*, 674 S.W.3d 273, 280 (Tex. 2023), reh'g denied (Sept. 29, 2023); *City of Austin v. Savetownlake.Org*, No. 03-07-00410-CV, 2008 WL 3877683, at *2 (Tex. App.—Austin Aug. 22, 2008, no pet.).

In a plea to the jurisdiction, the defendant "contends that, even if all the allegations in a plaintiff's pleadings are taken as true, there is an incurable jurisdictional defect apparent from the face of the pleadings." *Tex. Dep't of Transp. v. City of Sunset Valley*, 8 S.W.3d 727, 729 (Tex. App.—Austin 1999, no pet.).  As such, "[i]n reviewing the grant or denial of a plea to the jurisdiction," the appellate court "do[es] not look at the merits of the case." *Id.* at 730.

### B. **Appellant Cannot Seek Review of Issues Never Considered By the Trial Court and Unnecessary to the Disposition of JAMS's Plea to the Jurisdiction.**

The "issues to be reviewed by an appellate court must have been actually presented to *and* considered by the trial court." *Daughety*, 970

S.W.2d at 182 (emphasis in original). "Addressing matters not specifically presented to the trial court usurps the trial court's authority to evaluate and rule on issues before it and denies the appellate court the benefit of the trial court's discretion." *Id.* Likewise, "appellate courts should not address issues unnecessary to the disposition of an appeal." *J.G. v. Tex. Dep't of Family & Protective Services*, 592 S.W.3d 515, 523 (Tex. App.—Austin 2019, no pet.).

In the trial court, jurisdictional issues must be "heard first and the trial court's jurisdiction to proceed to trial on the merits determined preliminarily." *Miranda v. Byles*, 390 S.W.3d 543, 566-67 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). As such, the trial court properly considered and addressed JAMS's Plea to the Jurisdiction—and *only* the Plea to the Jurisdiction—at the October 2024 hearing. CR.210-11; RR.1-18. After granting the Plea, Appellant's claims against JAMS were properly dismissed and all other issues were moot.

As a result, the only Order from which Appellant may appeal is the trial court's Order finding that it "has no subject-matter jurisdiction in this case." CR.211. Whether the trial court lacked subject matter

jurisdiction is the only issue properly addressed by and necessary to the disposition of this appeal.

Nonetheless, Appellant seeks rulings on numerous issues from this Court for the first time—issues that were either never considered by the trial court, not relevant to the Plea to the Jurisdiction, merits issues, or all the above, including:

(i)   a declaration that statutes of limitations apply to arbitration agreements, contracts, and judicial orders (Op. Br. at 9, 13, 19, 21, 23-25, 28, 32);

(ii)  a declaration that JAMS lacks jurisdiction over claims that are time-barred or claims on contracts without arbitration clauses (Op. Br. at 10, 19, 23, 28-29, 31);

(iii) judicial interpretations of the two underlying contracts in the Cameron County Lawsuits that are the subject of the arbitration (Op Br. at 10, 13, 19, 21, 23, 27, 29-30, 32);

(iv)  a ruling that one of Appellant's arbitration counterparties waived arbitration (Op. Br. at 10, 30);

(v)   a ruling that JAMS acted negligently in administering the arbitration (Op. Br. at 11);

(vi)  a declaration that the Cameron County court's October 2019 order referring the Cameron County Lawsuits to arbitration was invalid (Op. Br. at 12, 21, 25-26); and

(vii) a declaration that the Cameron County court lacks personal jurisdiction over Appellant (Op. Br. at 32).

9

None of these issues were considered by the trial court and none are necessary for this disposition of this appeal, which is limited solely to whether the trial court properly dismissed Appellant's claims against JAMS for lack of subject matter jurisdiction. *Daughety*, 970 S.W.2d at 182.

## C. The Trial Court Properly Dismissed the Case for Lack of Subject Matter Jurisdiction.

"Because Texas encourages arbitration and arbitrators are essential actors in furtherance of that policy . . . ***immunity [is] extended to arbitrators for acts within the scope of their duties***." *Blue Cross Blue Shield of Tex. v. Juneau*, 114 S.W.3d 126, 133 (Tex. App.—Austin 2003, no pet.) (affirming dismissal of claims against AAA arbitrator on arbitral immunity grounds on plea to the jurisdiction).[1] *See also Rao*, 2014 WL 3513258, at *2-3 ("The doctrine of arbitral immunity, which confers immunity on arbitrators from litigation, has been uniformly recognized by state and federal courts and applies to individual arbitrators ***as well as to organizations that . . . administer arbitrations.***").

---

[1] Unless otherwise noted, all emphasis herein is added.

JAMS, as a provider of alternative dispute resolution services, administers arbitrations and provides qualified arbitrators for the same. RR.4:13-14; CR.24. *Appellant himself* consented to, sought, and received a Cameron County court order sending his underlying disputes to a JAMS arbitration in the first place. CR.90-91; RR.4:24-5:8; RR.12:25-13:5; RR.15:13-23. Appellant's claims now arise directly from those "arbitration proceedings initiated by Defendant JAMS." CR.5 (Orig. Pet. ¶18). Those arbitration proceedings were initiated pursuant to an arbitration agreement, *see* CR.90, which required arbitration "in accordance with the Commercial Rules of Arbitration . . . of the Judicial Arbitration and Mediation Services ('JAMS')," CR.70.

As such, JAMS is immune from suit and the trial court was without jurisdiction to hear Appellant's claims. *See Patten v. Johnson*, 429 S.W.3d 767, 775, 780-81 (Tex. App.—Dallas 2014, pet. denied) (affirming dismissal of claims ***against JAMS on arbitral immunity grounds on a plea to the jurisdiction***); *Blue Cross Blue Shield*, 114 S.W.3d at 133 (same).

Having dismissed Appellant's claims on jurisdictional grounds, the trial court did not reach the merits of Appellant's claims—that the

11

statute of limitations barred the claims against him in his Cameron County Lawsuits. *See Miranda*, 390 S.W.3d at 566-67.  And nor could it.

Whether a statute of limitations applies to claims in arbitration is a question of procedural arbitrability, which is to be decided by an arbitrator—not by JAMS as the arbitration administrator, and not by the trial court. *See, e.g.*, *BG Group,* 572 U.S. at 34-35 ("[C]ourts presume that the parties intend arbitrators, not courts, to decide disputes about . . . procedural preconditions for the use of arbitration . . . .  These procedural matters include . . . the satisfaction of 'prerequisites such as time limits . . . .'") (quoting *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 88 (2002)); *Lupe Holdings, LP v. Sanchez*, No. 01-21-00351-CV, 2022 WL 2837331, at *7-8 (Tex. App.—Houston [1st Dist.] July 21, 2022, no pet.) ("[T]he parties' dispute over the meaning and effect of the statute-of-limitations deadline . . . presents questions of procedural arbitrability, which both the United States Supreme Court and the Supreme Court of Texas have held are for the arbitrator, not the courts, to decide.").

In other words, the issue of procedural arbitrability was a separate and independent ground preventing the trial court from exercising subject-matter jurisdiction.  Even if JAMS were *not* immune from suit—

*which it is*—the trial court had no jurisdiction to decide Appellant's claims in any event.

### D. The Trial Court Was Not Required to Issue Findings of Fact and Conclusions of Law.

Finally, Appellant argues that the trial court erred in declining to issue findings of fact and conclusions of law. *See* Op. Br. at 8-9, 13, 18, 22.  This was not in error.

Rule 296 of the Texas Rules of Civil Procedure provides for findings of fact and conclusions of law in cases "tried to the district court . . . without a jury." TEX. R. CIV. P. 296.  "The purpose of Rule 296 is to give a party a right to findings of fact and conclusions of law finally adjudicated *after a conventional trial on the merits before the court*." *IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 442 (Tex. 1997).

Instead, where the trial court dismisses the case on the pleadings for lack of jurisdiction, findings of fact and conclusions of law "have no purpose and should not be requested or considered on appeal." *U. Lawrence Boze' & Assoc. v. Harris Cnty. Appraisal Dist.*, 368 S.W.3d 17, 33 (Tex. App.—Houston [1st Dist.], 2011).  "[W]hen a trial court decides a plea to the jurisdiction as a matter of law without hearing evidence, . . . there is no disputed fact issue for resolution by the trial court, and

13

findings of fact and conclusions of law are not required and serve no purpose." *Watson*, 2023 WL 3010938, at *2 (Tex. App.—Austin Apr. 20, 2023, pet. denied) (holding "trial court properly refused to issue" findings and conclusions after dismissing the case based on immunity).

Here, the trial court signed an Order dismissing the case on the pleadings after finding that it had "no subject-matter jurisdiction in this case." CR.211.  As a result, findings of fact and conclusions of law were "not required" and "serve no purpose" in this case, and the trial court did not err by declining to issue them.

# PRAYER

Appellee JAMS, Inc. respectfully asks this Court to affirm the trial court's Order dismissing the case for lack of subject matter jurisdiction. JAMS respectfully asks for all other relief to which it may be entitled.

Dated: March 24, 2025        Respectfully submitted,

/s/ *Anthony N. Kaim*
Anthony N. Kaim
State Bar No. 24065532
akaim@gibbsbruns.com
Peter J. McDonald
State Bar No. 24116738
pmcdonald@gibbsbruns.com
**GIBBS & BRUNS LLP**
1100 Louisiana Street
Suite 5300
Houston, Texas 77002
Telephone: (713) 650-8805
Facsimile: (713) 750-0903

***Counsel for Appellee***

## **Certificate of Compliance**

Appellee's Brief complies with the type-volume limits of Texas Rule of Appellate Procedure 9.4, as it contains 2,631 words, excluding parts of the brief exempted by Rule 9.4(i)(1). This Brief complies with the typeface requirements of Texas Rule of Appellate Procedure 9.4(e) because it has been prepared in Microsoft Word using a proportionally spaced, 14-point Century Schoolbook typeface, except for footnotes, which are 12-point Century Schoolbook typeface.

/s/ *Peter J. McDonald*
Peter J. McDonald

## Certificate of Service

I certify that on March 24, 2025, a true and correct copy of the foregoing brief was served on Appellant via eFileTexas electronic notification system email to danieldeoliveira@me.com.

<u>/s/ *Peter J. McDonald*</u>
Peter J. McDonald

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Rosa Brennan on behalf of Anthony Kaim
Bar No. 24065532
rbrennan@gibbsbruns.com
Envelope ID: 98821879
Filing Code Description: Brief Not Requesting Oral Argument
Filing Description: Appellees Brief
Status as of 3/25/2025 8:49 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|---------------------|--------|
| Rosa Brennan | | rbrennan@gibbsbruns.com | 3/24/2025 4:37:27 PM | SENT |
| Sara Z.Smith | | ssmith@gibbsbruns.com | 3/24/2025 4:37:27 PM | SENT |
| Daniel De Oliveira | | danieldeoliveira@me.com | 3/24/2025 4:37:27 PM | SENT |
| Anthony Kain | | akaim@gibbsbruns.com | 3/24/2025 4:37:27 PM | SENT |
| Velva L.Price | | districtclerkhelp@traviscountytx.gov | 3/24/2025 4:37:27 PM | SENT |
| Pete McDonald | | pmcdonald@gibbsbruns.com | 3/24/2025 4:37:27 PM | SENT |

# EXHIBIT C

Case 1:25-cv-01683-VSB-GS   Document 36-13   Filed 05/01/25   Page 37 of 84

ACCEPTED
03-24-00759-CV
98889205
THIRD COURT OF APPEALS
AUSTIN, TEXAS
3/26/2025 7:30 AM
JEFFREY D. KYLE
CLERK

**CAUSE # 03-24-00759-CV**

| | | |
|---|---|---|
| **DANIEL DE OLIVEIRA, MD** | § | **IN THE 3rd COURT OF APPEALS** |
| **Appellant** | § | |
| | § | |
| **V.** | § | **OF** |
| | § | |
| **JAMS, INC.** | § | |
| **Appellee** | § | **TRAVIS COUNTY, TEXAS** |
| | § | |
| | § | |
| | § | |

# APPELLANT'S REPLY BRIEF

March 26, 2025

# I. RELIEF REQUESTED

Appellant respectfully requests that this Court:

1. **REVERT** the case to the Travis County District Court under a different judge, as Judge Jan Soifer is now a named defendant in related federal litigation (1:25-cv-01683-VSB);

2. **VACATE** the trial court's order dismissing the case, as JAMS failed to establish the essential conditions for arbitral immunity; and

3. **Issue an expedited opinion**, pursuant to the due process standards set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), in light of the ongoing harm caused by unauthorized arbitration.

## II. JAMS MUST PROVE JURISDICTION BEFORE CLAIMING IMMUNITY

Arbitral immunity does not exist in a vacuum. It arises only where:

- There is a valid agreement to arbitrate,

- The parties consented, and

- The arbitrator or sponsoring organization has jurisdiction.

As held in *AT&T Technologies, Inc. v. CWA*, 475 U.S. 643 (1986), **arbitration is a matter of contract**, and a party cannot be compelled to arbitrate a dispute it has not agreed to arbitrate. JAMS never established jurisdiction in either of the underlying contract disputes.

## III. TWO CONTRACTS. TWO DISTINCT JURISDICTIONAL FAILURES.

# 1. VHS HARLINGEN HOSPITAL COMPANY v. DANIEL DE OLIVEIRA, MD

(*The Relocation Agreement Dispute*)

- This contract contains an arbitration clause.

- By filing suit in Cameron County in 2019—**without invoking arbitration**—the hospital waived the clause under *Perry Homes v. Cull*, 258 S.W.3d 580 (Tex. 2008).

- The statute of limitations expired before any demand for arbitration was made.

- Cameron Court at Law 1 lacked **subject matter jurisdiction**— and thus, also lacked **personal jurisdiction**.

**Result**: No jurisdiction = no arbitration = no immunity for JAMS.

# 2. VALLEY BAPTIST REALTY COMPANY v. DANIEL DE OLIVEIRA, MD

(*The Lease Agreement Dispute*)

- The contract is between **Valley Baptist Realty Company, LLC** and **Valley Heart and Vascular Institute, PLLC**.

- **Appellant is not a party** to this contract in his individual capacity.

- The lease **contains no arbitration clause**.

- No valid claim can be brought against Appellant based on a contract he is not party to.

**Result**: No contract. No consent. No arbitration. No immunity.

## IV. JAMS' POSITION IGNORES TENET'S OWN ADMISSIONS

In Cameron County, **Tenet Healthcare has admitted**:

- Appellant is not a party to the lease agreement;

- The lease agreement does not contain an arbitration clause;

- The Cameron County Court lacked jurisdiction at the time of filing;

- No payments were ever made under the relocation agreement;

- The statute of limitations had expired before arbitration was initiated.

These deemed admissions bind the parties and confirm that JAMS lacks a legal foundation to claim immunity.

## V. JUDGE SOIFER'S UNCONSTITUTIONAL "PAUSE"

Judge Soifer's intervention—pausing the arbitration clause to allow Cameron County to assert jurisdiction, only to reactivate the clause in 2024—undermines constitutional principles of due process and fairness. Her action created a procedural trap that stripped Appellant of legal protections while protecting Tenet's interests.

Affirming that maneuver would create precedent for **courts to modulate contract terms mid-litigation**, selectively favoring private enterprises. That is **not compatible with due process** under Texas or federal law.

## VI. EXPEDITED OPINION REQUEST UNDER MATHEWS v. ELDRIDGE

Under *Mathews v. Eldridge*, 424 U.S. 319 (1976), courts must weigh:

1. The **private interest** affected;

2. The **risk of erroneous deprivation** under current procedures; and

3. The **government's interest**, including efficiency and avoiding

further harm.

Appellant is currently:

- Facing arbitration without a valid contract,

- Litigating in a system where jurisdiction has been forfeited or was

never present,

- And enduring ongoing harm due to improper consolidation,

expired claims, and denied rights.

These facts justify an **expedited opinion** to prevent further prejudice,

legal error, and constitutional violations.

## VII. CONCLUSION

JAMS cannot claim arbitral immunity where:

- No contract authorizes arbitration,

- No consent exists,

- The claims are time-barred,

- And immunity is being used to **shield misconduct**, not to protect a neutral process.

Appellant has met the legal and procedural standards for relief. JAMS has not.

---

**PRAYER**

Appellant respectfully prays that this Court:

- **Revert** the case to the Travis County District Court, but under a different judge;

- **Vacate** the trial court's dismissal order;

- And issue an **expedited opinion** to prevent continued harm under *Mathews v. Eldridge.*

Respectfully submitted,

**Daniel De Oliveira, MD**
**Pro See**
374 East Meadow Av., Apt C
East Meadow, NY 11554
Cell: (979) 373-4933
Fax: (906) 366-8234
Email: danieldeoliveira@me.com

Cause: 03-24-00759-CV
# IN THE 3rd COURT OF APPEALS OF TRAVIS COUNTY, TEXAS

### Daniel De Oliveira, MD Appellant v. JAMS, INC Appellee

**March 26, 2025**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the:

**APPELLANT'S REPLY BRIEF**

has been served on all counsel of record and interested parties on this day, via the EFileTX system in accordance with the Texas Rules of Civil Procedure.


**Daniel De Oliveira, MD**
**Pro See**
374 East Meadow Av., Apt C
East Meadow, NY 11554
Cell: (979) 373-4933
Fax: (906) 366-8234
Email: danieldeoliveira@me.com

CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), I certify that this document complies with the type-volume limitation of Rule 9.4(i)(2)(D).

This document contains 831 words, as calculated by the word-count function of the computer program used to prepare the document, including footnotes and excluding any exempted sections. It has been prepared in a proportionally spaced typeface using 14-point Century Schoolbook font.

Dated: March 26th, 2025

Respectfully submitted,

**Daniel De Oliveira, MD**
**Pro See**
374 East Meadow Av., Apt C
East Meadow, NY 11554
Cell: (979) 373-4933
Fax: (906) 366-8234
Email: danieldeoliveira@me.com

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 98889205
Filing Code Description: Other Brief
Filing Description: APPELLANT REPLY BRIEFING
Status as of 3/26/2025 9:46 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Rosa Brennan | | rbrennan@gibbsbruns.com | 3/26/2025 7:30:41 AM | SENT |
| Sara Z.Smith | | ssmith@gibbsbruns.com | 3/26/2025 7:30:41 AM | SENT |
| Daniel De Oliveira | | danieldeoliveira@me.com | 3/26/2025 7:30:41 AM | SENT |
| Anthony Kain | | akaim@gibbsbruns.com | 3/26/2025 7:30:41 AM | SENT |
| Velva L.Price | | districtclerkhelp@traviscountytx.gov | 3/26/2025 7:30:41 AM | SENT |
| Pete McDonald | | pmcdonald@gibbsbruns.com | 3/26/2025 7:30:41 AM | SENT |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

DANIEL DE OLIVEIRA, MD,  :

                         :   Case No. 25-cv-01683-VSB-GS

              Plaintiff,  :

                         :

     -against-        :

                         :

TENET HEALTHCARE et al.,  :

                         :

             Defendants.  :

                         :

---------------------------------------------------------------- X

DANIEL DE OLIVEIRA, MD,  :

                         :   Case No. 25-cv-01868-VSB-GS

              Plaintiff,  :

                         :

     -against-        :

                         :

JAMS,  :

                         :

             Defendant.  :

                         :

---------------------------------------------------------------- X

**DEFENDANT JAMS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................... iii

PRELIMINARY STATEMENT ........................................................................1

STATEMENT OF FACTS ...............................................................................1

    A.    The Original Proceedings Against Plaintiff in Cameron County, Texas .................1

    B.    Plaintiff Sues JAMS for Declaratory Judgment in Travis County, Texas ..............3

    C.    Plaintiff Seeks to Recuse Various Judges, and Sues Some of Them .......................5

    D.    Plaintiff Commenced Five Actions in this Court and Attempts to Avenge his State Court Defeat by Alleging Claims for Civil RICO Violations .....6

    E.    The Allegations in the Complaint ...........................................................7

ARGUMENT ................................................................................................8

I.    THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THE INJUNCTIVE AND DECLARATORY JUDGMENT CLAIMS UNDER THE *YOUNGER* ABSTENTION DOCTRINE. ...............................10

II.    THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER ALL CLAIMS UNDER THE *COLORADO RIVER* DOCTRINE ........................12

III.    THIS COURT LACKS PERSONAL JURISDICTION OVER JAMS. ...........................15

IV.    THE COMPLAINT IS BARRED BY *RES JUDICATA*. ....................................17

V.    THE CLAIMS AGAINST JAMS ARE BARRED BY ARBITRAL IMMUNITY. .........19

VI.    THE COMPLAINT FAILS TO STATE A VALID RICO CLAIM. ................................22

    A.    Plaintiff Fails to Allege Any Viable RICO Predicate Acts ....................................22

    B.    Plaintiff Fails to Plead a Pattern of Racketeering Activity. ...................................26

    C.    Plaintiff Fails to Plead, and Cannot Establish, the Existence of an Enterprise ......27

CONCLUSION ..............................................................................................28

CERTIFICATION ............................................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Allen v McCurry*,
    449 U.S. 90 (1980)......................................................................................17

*Amstadt v. U.S. Brass Corp.*,
    919 S.W.2d 644 (Tex. 1996)...............................................................17, 18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................9

*Austern v. Chicago Bd. Options Exch., Inc.*,
    898 F.2d 886 (2d Cir. 1990)........................................................................20

*Barkai v. Mendez*,
    629 F. Supp. 3d 166 (S.D.N.Y. 2022)......................................................9, 17

*Bland Indep. Sch. Dist. v. Blue*,
    34 S.W.3d 547 (Tex. 2000).......................................................................4, 11

*Blue Cross Blue Shield of Texas v. Juneau*,
    114 S.W.3d 126 (Tex. 2003)....................................................................11, 19

*Chao v. City of Plano, Texas*,
    Civil Action No. 4:21-CV-00312-ALM-CAN, 2022 WL 4281606 (E.D. Tex. Aug. 16, 2022),
    *report and recommendation adopted*,
    Civil Action No. 4:21-CV-312, 2022 WL 4281355 (E.D. Tex. Sept. 15, 2022)..............17, 19

*Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*,
    187 F.3d 229 (2d Cir. 1999).......................................................................27

*Colorado River Water Conservation Dist. v. U.S.*,
    424 U.S. 800 (1976)...................................................................................12

*Cullum v. Wyndham Hotels & Resorts Corp.*,
    1:22-CV-09700-LTS-SN, 2024 WL 552494 (S.D.N.Y. Feb. 12, 2024) .............................8, 9

*Great South Bay Medical Care, P.C. v. Allstate Ins. Co.*,
    204 F. Supp. 2d 492 (E.D.N.Y. 2002) ..........................................................13

*Faulkner v. Verizon Commc'ns, Inc.*,
    156 F. Supp. 2d 384 (S.D.N.Y. 2001) ....................................................................17

*Festinger v. Snitow Kaminetsky Rosner & Snitow, LLP*,
    20 Civ. 9784 (PGG) (JW), 2022 WL 901660 (S.D.N.Y. Mar. 28, 2022)..............................10

*First Cap. Mgmt., Inc. v. Satinwood, Inc.*,
    385 F.3d 159 (2d Cir. 2004).............................................................................26, 27, 28

*Galanova v. Adam Leitman Bailey, P.C.*,
    17-CV-4915 (VSB), 2020 WL 2489068 (S.D.N.Y. May 13, 2020).........................................9

*Gristina v. Merchan*,
    131 F.4th 82 (2d Cir. 2025) ..............................................................................10

*Hecht v. Com. Clearing House, Inc.*,
    897 F.2d 21 (2d Cir. 1990)...............................................................................25

*Hudnall v. Smith*,
    EP-21-CV-00106-FM, 2021 WL 3744580 (W.D. Tex. Aug. 10, 2021)............................ 20-21

*Imbruce v. Am. Arb. Ass'n., Inc.*,
    15 Civ. 7508 (NRB), 2016 WL 5339551 (S.D.N.Y. Sept. 22, 2016).....................................20

*Kashelkar v. Rubin & Rothman*,
    97 F. Supp. 2d 383 (S.D.N.Y. 2000).....................................................................24

*Katzman v. Victoria's Secret Catalogue*,
    167 F.R.D. 649 (S.D.N.Y. 1996) .........................................................................22

*Kim v. Kimm*,
    884 F.3d 98 (2d Cir. 2018)...............................................................................23

*Klein v. Walker*,
    708 Fed. Appx. 158 (5th Cir. 2017).....................................................................19

*Krondes v. Nationstar Mortg., LLC*,
    17cv4974, 2018 WL 2943774 (S.D.N.Y. June 12, 2018).............................................13, 14

*Lawrence Moskowitz CLU. Ltd. v. ALP, Inc*.,
    19 Civ. 3868 (ER), 2020 WL 1503558 (S.D.N.Y. Mar. 30, 2020)........................8, 12, 13, 15

*Matter of Marriage of Brown*,
    870 S.W.2d 600 (Tex. App. 1993, writ denied).................................................18, 19

*Moss v. Morgan Stanley Inc.*,
719 F.2d 5 (2d Cir. 1983)...................................................................................22

*Nat'l Grp. for Commc'ns and Comput. Ltd. v. Lucent Techs. Inc.*,
420 F. Supp. 2d 253 (S.D.N.Y. 2006)..................................................................25

*O'Malley v. New York City Transit Auth.*,
896 F.2d 704 (2d Cir. 1990)................................................................................25

*Rao v. Am. Arb. Ass'n*,
No. 05-13-00462-CV, 2014 WL 3513258 (Tex. App. July 15, 2014, pet. denied).................11

*Roy v. Bank of New York Mellon*,
17-CV-6729 (MKB) (LB), 2018 WL 4771898 (E.D.N.Y. Sept. 30, 2018)................13, 14, 15

*Scheidler v. Nat'l Org. for Women, Inc.*,
537 U.S. 393 (2003).............................................................................................24

*Sonera Holding B.V. v. Cukurova Holding A.S.*,
750 F.3d 221 (2d Cir. 2014).........................................................................15, 16

*Sprint Commc'ns, Inc. v. Jacobs*,
571 U.S. 69 (2013)...............................................................................................10

*Tafflin v. Levitt*,
493 U.S. 455 (1990).....................................................................................15, 18

*Tejas Motel, L.L.C. v. City of Mesquite by and through Bd. of Adjustment*,
63 F.4th 323 (5th Cir. 2023) .........................................................................18-19

*Teva Pharms. Indus. Ltd. v. Deutsche Bank Secs. Inc.*,
No. 09 Civ. 6025 (AKH), 2010 WL 6864006 (S.D.N.Y. Dec. 14, 2010) ................9

*Texas Dept. of Parks and Wildlife v. Miranda*,
133 S.W.3d 217 (Tex. 2004)...............................................................................11

*Vossbrinck v. Accredited Home Lenders, Inc.*
774 F.3d 423 (2d Cir. 2014) ...............................................................................5

*Weinstock v. Cleary, Gottlieb, Steen & Hamilton*,
815 F. Supp. 127 (S.D.N.Y. 1993) ..............................................................12, 14, 15

*Williams v. Affinion Grp., LLC*,
889 F.3d 116 (2d Cir. 2018).........................................................................22, 23

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995).................................................................................................13

*Younger v. Harris*,
    401 U.S. 37 (1971)...................................................................................................10

**STATUTES AND RULES**

18 U.S.C. § 1341..............................................................................................................22

18 U.S.C. § 1343..............................................................................................................22

18 U.S.C. § 1503.........................................................................................................24-25

18 U.S.C. § 1951..............................................................................................................23

18 U.S.C. § 1951(b)(2).....................................................................................................24

18 U.S.C. § 1962(c)....................................................................................................22, 25

18 U.S.C. § 1962(d)..........................................................................................................25

CPLR § 302......................................................................................................................16

Fed. R. Civ. P. 9(b)...........................................................................................................23

Fed. R. Civ. P. 12(b)(1)......................................................................................................8

Fed. R. Civ. P. 12(b)(2)......................................................................................................8

Fed. R. Civ. P. 12(b)(6)..............................................................................................8, 9, 17

**OTHER AUTHORITIES**

JAMS Comprehensive Arbitration Rules & Procedures, Rule 11(b)..............................23

JAMS Comprehensive Arbitration Rules & Procedures, Rule 30(c)..............................21

## PRELIMINARY STATEMENT

In this action, *pro se* physician plaintiff, Daniel De Oliveira ("Plaintiff"), misguidedly sues defendant JAMS, Inc. ("JAMS") for administering an arbitration which he expressly agreed to via a signed arbitration agreement and a stipulated Texas court order signed by his attorney (and orally affirmed by Plaintiff in open court). All that JAMS has done is provide alternative dispute resolution services to which Plaintiff agreed, by administering the arbitration and appointing a qualified arbitrator. Just as required by Plaintiff's underlying contract, court order, and JAMS's rules, to which Plaintiff agreed to be bound. Whatever complaint Plaintiff now has about arbitrability, or the expiration of the statute of limitations, are issues to be determined by the arbitrator, and not by JAMS or the courts. Nevertheless, Plaintiff sued JAMS in Texas to stop the arbitration. He lost there—and now hopes for a different outcome in this Court by recasting the claim as one under RICO.

As against JAMS, this action is barred by abstention principles, lack of personal jurisdiction, *res judicata*, as well as arbitral immunity, to say nothing of the doomed RICO claim lacking any of the requisite elements, coherence, or common sense. The Court should not hesitate to dismiss this action, with prejudice, on any one or more of those grounds.

## STATEMENT OF FACTS

The following statement of facts is taken from the Complaint's allegations and the voluminous exhibits attached to the Complaint.

### A.  The Original Proceedings Against Plaintiff in Cameron County, Texas.

The genesis of this dispute lies with two proceedings commenced in Cameron County, Texas, against Plaintiff by VHS Harlingen Hospital Company, LLC, d/b/a Valley Baptist Medical Center-Harlingen ("VHS") and Valley Baptist Realty Company, LLC ("VBRC," together, the

"Valley Baptist Parties"), both alleged to be subsidiaries of defendant Tenet Healthcare ("Tenet"). (ECF Doc. 1, Compl. at 18.)[1] The VHS proceeding arises from a certain relocation agreement, entered into between VHS and Plaintiff that contained an arbitration clause requiring "[a]ny dispute or controversy arising under, out of or in connection with, or in relation to this Agreement or the breach hereof, [to] be determined and settled by binding arbitration . . . in accordance with the Commercial Rules of Arbitration ('Rules')" of JAMS. (Compl. Ex. 1 at 9 (petition), Ex. 1 at 20 (relocation agreement).) VHS sued Plaintiff for $448,451.61, claiming a breach of the relocation agreement. (Compl. Ex. 1 at 13.) The VBRC proceeding arises from a certain lease agreement, which does not contain an arbitration clause. (Compl. Ex. 2 at 11 (petition), Ex. 2 at 18 (lease agreement).) VBRC sued Plaintiff for $28,134.24, claiming a breach of the lease agreement. (Compl. Ex. 2 at 15.) The VBRC petition alleges that Plaintiff was the sole member of the tenant entity on whose behalf Plaintiff signed the lease agreement, and as such, VBRC was suing Plaintiff individually under an alter ego theory. (Compl. Ex. 2 at 14, ¶ IX.)

At the time of these litigations, Plaintiff was represented by the Pakis, Giotes, Page & Burleson, P.C. law firm, which is a named defendant in this action. The two cases were consolidated by the parties' September 23, 2019 "Agreed Order to Consolidate" (Compl. Ex. 3-1 at 155). Pursuant to "the parties' Joint Motion for Referral to Arbitration and to Stay Proceedings," the proceeding as consolidated was "STAYED so the parties can arbitrate this dispute in Cameron County which is the county in which the hospital is located" under the Order Granting Joint Motion for Referral to Arbitration and Staying Proceedings, dated October 14,

---

[1] Because the Complaint and its exhibits are not page-numbered, pincites to page numbers refer to the PDF page number of the cited documents.

2019 (the "2019 Order"). (Compl. Ex. 3-1 at 156.) One of the attorneys at the Pakis firm,

Michael Cosby, signed the 2019 Order on behalf of Plaintiff.

In 2023, the Valley Baptist Parties and Plaintiff mediated to no avail. (Compl. Ex. 3-1 at

10, ¶ 3 (motion to withdraw as counsel).) On March 28, 2024, the Texas court signed an order

granting the Pakis firm's motion to withdraw as counsel, thereby rendering Plaintiff a *pro se*

defendant. (Compl. Ex. 3-1 at 16.) Subsequently, the Valley Baptist Parties moved to rescind the

2019 Order referring the case to arbitration "[b]ecause the defendant is unrepresented." (Compl.

Ex. 3-1 at 36.) A status hearing was held on April 30, 2024, in which Judge Robert Garza asked

Plaintiff whether he was willing to proceed with the arbitration *pro se*, and he responded in the

affirmative. (Compl. Ex. 3-1 at 96-102.) Given Plaintiff's assent, the court directed the parties to

obtain an arbitrator within 30 days and conduct the arbitration within 60 days. (Compl. Ex. 3-1 at

102.) (Both judges from that proceeding, Judge McDonald and Judge Garza, are named as

defendants in this action.)

**B.   Plaintiff Sues JAMS for Declaratory Judgment in Travis County, Texas.**

After the April 30 status hearing, the Valley Baptist Parties commenced an arbitration

with JAMS pursuant to the 2019 Order. (Compl. Ex. 11.) Notwithstanding his written and verbal

agreement, Plaintiff refused to participate in the arbitration, citing the same objections he asserts

in this action about statute of limitations and arbitrability. (*See*, *e.g*., Compl. Ex. 11 at 19 (August

15, 2024 email from Plaintiff).) JAMS explained to Plaintiff on more than one occasion that

"[j]urisdictional and arbitrability objections should be raised with the arbitrator as a preliminary

matter pursuant to JAMS Rule 11(b)" and that it was proceeding with the administration of the

matter. (Compl. Ex. 11 at 19 (August 15, 2024 email from JAMS's Sara Nevins).)

On August 30, 2024, Plaintiff filed a petition against JAMS in the District Court of Travis County, Texas, seeking declaratory judgment and injunctive relief on the basis that JAMS was violating Texas law by proceeding with the arbitration, because according to Plaintiff, "[t]he statute of limitations applicable to the underlying claim expired in 2020." (Compl. Ex. 6 at 49, ¶ 24.) He also filed "a number of other motions on the docket." (Compl. Ex. 6 at 176 (October 24, 2024 hearing transcript).) JAMS filed an answer and "plea to the jurisdiction"[2] seeking a dismissal by asserting, among other grounds, that JAMS was immune from suit under principles of arbitral immunity, and that the issue of whether the statute of limitations barred the claims was a question for the arbitrator, not JAMS or the court. (Compl. Ex. 6 at 58, ¶¶ 4-12.)

On October 24, 2024, Plaintiff appeared for a hearing before Judge Jan Soifer, and in addition to his claimed statute of limitations defense, argued that one of the subject contracts did not contain an arbitration clause, that he did not sign it in his personal capacity, and that the 2019 Order was not validly signed by the Court.[3] (Compl. Ex. 6 at 177-184.) After confirming that the 2019 Order was signed by the Pakis law firm, which Plaintiff conceded was acting as his counsel at the time (Compl. Ex. 6 at 184-185), the court granted relief to JAMS, and on the same day, issued an order dismissing the case with prejudice (the "2024 Order"). (Elman Decl. Ex. A.)

Dissatisfied with the outcome, Plaintiff filed several motions for "clarification of paradoxical ruling," "findings of fact and conclusions of law past due," and "to vacate order granting plea to jurisdiction," and requested a hearing. (Compl. Ex. 6 at 196, 226, 238.) When those motions did not result in his favor, Plaintiff filed an appeal in the Third Court of Appeals of

---

[2] A plea to the jurisdiction is a Texas procedure challenging jurisdiction, "the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000).

[3] A copy of the signed 2019 Order is annexed as Exhibit 3-1 to the Complaint, page 157.

Texas, which is currently pending. (Compl. Ex. 6 at 9 (Plaintiff's appellate brief); *see also* Elman Decl. ¶ 4, Exs. B and C.)[4]

Meanwhile, the arbitration is moving forward. A hearing is scheduled for May 14, 2025, with Plaintiff (presumably) in absentia.

### C. Plaintiff Seeks to Recuse Various Judges, and Sues Some of Them.

Once Plaintiff obtained *pro se* status, and apparently discontent with the referral of the case to arbitration which *he himself consented to twice*, Plaintiff began an endless campaign of attacking the Texas judges. Counsel for the Valley Baptist Parties describes it as follows: "since appearing pro se, the defendant [i.e., Plaintiff here] has now generated in excess of 100 filings with this Court. Additionally, [Plaintiff] has approximately 30 filings with the 13th Court of Appeals. When a Writ of Mandamus asking the 13th Court of Appeals to compel the trial court to rule on jurisdiction was denied, [Plaintiff] filed a Motion for Reconsideration and Motion for Recusal of All Judges in the 13th Court of Appeals." (Compl. Ex. 3-2, at 235; *see also* Ex. 5 at 120-123.)

Indeed, according to the exhibits to Plaintiff's Complaint in this action, Plaintiff has filed a cascade of recusal motions and other complaints against various judges. (*See* Compl. Ex. 3-1 at 222 (motion to recuse Judge Garza); Ex. 3-1 at 244 (complaint filed with State Commission on Judicial Conduct against Judge Garza); Ex 3-1 at 258 (motion to recuse Judges Molina and Medary); Ex. 3-2 at 19 (motion to recuse Judges Molina and Medary); Ex. 3-2 at 30 (motion to recuse Judge Harle); Ex. 3-2 at 35 (motion to recuse Supreme Court Chief Justice); Ex. 3-2 at 58

---

[4] If the state proceedings were not still ongoing, this action will also be barred under the *Rooker-Feldman* doctrine, which provides that "federal district courts lack jurisdiction over cases that essentially amount to appeals of state court judgments." *Vossbrinck v. Accredited Home Lenders, Inc.*, 774 F.3d 423, 426 (2d Cir. 2014).

(motion to recuse "all judges"); Ex. 3-2 at 214 (motion to disqualify Judge Evans); Ex. 3-2 at

276 (emergency motion to address abuse of power, criminal activity, and systematic violation of

rights by Judge Evans).) Plaintiff sought mandamus review against the judges (*see* Compl. Ex.

13 at 7 (mandamus in Texas Appeals Court against Judges Longoria, Molina, and Medary); Ex. 4

at 13 (mandamus in Texas Supreme Court against Judges Aceves and Garza); Ex. 5 at 6

(mandamus in Texas Supreme Court against Judges Collier and Garza and a court clerk)); and

commenced a federal court action in the Western District of Texas (*see* Compl. Ex. 8 at 4

(lawsuit against Judges Hecht, Harle, and Medary)). He then moved to disqualify the Texas

Attorney General from defending the judges sued in federal court. (Compl. Ex. 12 at 11 (motion

to disqualify).) All of these judges so-implicated (and more), and the Texas Attorney General,

have been named as defendants in this action.

### D. Plaintiff Commenced Five Actions in this Court and Attempts to Avenge his State Court Defeat by Alleging Claims for Civil RICO Violations.

From February to March 2025, Plaintiff filed *five* actions in this Court, even though the

underlying disputes all occurred in Texas, alleging a variety of claims against different groups of

defendants, including JAMS. One of them is the present action asserting RICO claims against the

entire groups of defendants. Another is a complaint solely against JAMS, Case No. 25-cv-

01868,[5] arising from the same nucleus of facts, and seeking, among other remedies, $250 million

in punitive damages, injunction, and declaratory judgment. Pursuant to the Court's March 17,

2025 Order, the five actions were consolidated under 25-cv-01683 for pre-trial purposes.

---

[5] The "petition" in the 01868 action was mailed to JAMS on April 24, 2025 (Elman Decl. ¶ 6), which appears to be Plaintiff's first attempt at service of process against JAMS in that action. Rather than dispute validity of service, and because the allegations in that action are essentially the same as this action (and the petition's allegations are even more of a rehash of his Texas state court action against JAMS), JAMS respectfully requests that this motion to dismiss be deemed directed at the 01868 petition as well, and that the Court dismiss both actions with prejudice.

### E.  The Allegations in the Complaint.

As best as JAMS can tell, the "original sins" alleged in the Complaint in this action are as follows: first, that Tenet (in reality, VHS) wrongfully commenced a lawsuit in Texas, despite the existence of an arbitration clause in the relocation agreement; and second, that Tenet (in reality, VBRC) wrongfully (i) commenced arbitration on a lease agreement that contained no arbitration clause, and (ii) misrepresented the signatory to the lease agreement, since Plaintiff was not the lessee; his entity was. (Compl. at 2.) Plaintiff alleges that the consolidation of the two cases in Texas "compound[ed] the fraud," and also alleges that Tenet concealed financial records, misrepresented jurisdictional facts, and engaged in procedural obstruction, thereby denying him due process. (Compl. at 2-3.) Plaintiff alleges that the underlying claims are now time-barred because the arbitration was not commenced until 2024. (Compl. at 3.)

As to JAMS, Plaintiff alleges that it "facilitated and furthered" Tenet's scheme by "bending its own rules to favor" Tenet by agreeing to sponsor the arbitration of time-barred claims, and by agreeing to arbitrate under a contract to which Plaintiff not only was not a party, but which lacked an arbitration clause. (Compl. at 3, 11, 20-21, 35-36.) This, Plaintiff alleges, was "a fraudulent legal maneuver designed to harass Plaintiff rather than engage in legitimate dispute resolution." (Compl. at 3.) Plaintiff alleges the Texas courts were "in" on this alleged scheme to act in service of Tenet's "fraudulent litigation strategy," and alleges that "JAMS further engaged in collusion by advising Judge Soifer to deny findings of fact, obstructing justice and preventing a proper appeal." (Compl. at 11, 21, 28.) According to Plaintiff, this coordination "is the very definition of a RICO conspiracy. It is a coordinated effort between private and state actors to violate constitutional law for financial and legal gain." (Compl. 11-12.) Plaintiff also alleges JAMS wrongfully relied on the 2019 Order "to justify arbitration despite no signed order

existing in EfileTX, proving an intent to deceive the [Plaintiff] into an unfair legal process"; and was wrongful for "repeatedly sen[ding] fraudulent billing demands, extorting [Plaintiff] into paying for an arbitration he never consented to." (Compl. at 36.)

Based on these allegations, Plaintiff charges JAMS with committing RICO violations based on the predicate acts of mail and wire fraud, extortion and coercion, and obstruction of justice, and alleges the existence of a RICO conspiracy. (Compl. at 35.) He seeks, among other relief, $500 million in compensatory damages, $5 billion in punitive damages, a declaratory judgment that JAMS lacks jurisdiction, an injunction prohibiting JAMS from proceeding with the arbitration, and imposition of sanctions. (Compl. at 54-56.)

## **ARGUMENT**

On a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction (which includes application of abstention doctrines), the plaintiff carries the burden of establishing that subject matter jurisdiction exists by a preponderance of the evidence. *Lawrence Moskowitz CLU. Ltd. v. ALP, Inc*., 19 Civ. 3868 (ER), 2020 WL 1503558, at *2 (S.D.N.Y. Mar. 30, 2020). "[E]vidence outside of the pleadings may be considered by the court to resolve the disputed jurisdictional fact issues." *Id*. The Court "accepts all material factual allegations in the complaint as true 'unless contradicted by more specific allegations or documentary evidence.'" *Id.* (citation omitted). And where, as here, a jurisdictional Rule 12(b)(1) motion is brought with a Rule 12(b)(6) motion, the Court must consider the 12(b)(1) motion first, because a ruling under 12(b)(6) is a decision on the merits that, by definition, requires the exercise of jurisdiction. *Id*.

Similarly, on a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff carries the burden of demonstrating personal jurisdiction over the defendant. *Cullum v. Wyndham Hotels & Resorts Corp*., 1:22-CV-09700-LTS-SN, 2024 WL 552494, at *7 (S.D.N.Y.

Feb. 12, 2024). Although plaintiff need only make a prima facie showing where the Court relies

only on the pleadings and affidavits, the allegations "must include some 'factual specificity and a

plaintiff cannot establish jurisdiction through conclusory assertions alone.'" *Id.* (brackets,

quotation marks, and citation omitted).

On a Rule 12(b)(6) motion to dismiss, this Court must "accept[] as true all factual

allegations in the complaint and draw[] all reasonable inferences in [plaintiff's] favor." *Teva*

*Pharms. Indus. Ltd. v. Deutsche Bank Secs. Inc*., No. 09 Civ. 6025 (AKH), 2010 WL 6864006, at

*2 (S.D.N.Y. Dec. 14, 2010). "To survive dismissal," however, "'a complaint must contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"

*Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)).  Because the "plausibility standard . . .

asks for more than a sheer possibility that a defendant has acted unlawfully," this Court is "free

to disregard legal conclusions and conclusory statements."  *Id.* (citing *Iqbal*, 556 U.S. at 678,

680-81). The Court may consider the voluminous exhibits attached to the Complaint in

determining the motion. *Barkai v. Mendez*, 629 F. Supp. 3d 166, 175 (S.D.N.Y. 2022).

Finally, a *pro se* complaint is "held to less stringent standards than formal pleadings

drafted by lawyers" and are "read 'to raise the strongest arguments that they suggest.'" *Galanova*

*v. Adam Leitman Bailey, P.C.*, 17-CV-4915 (VSB), 2020 WL 2489068, at *3 (S.D.N.Y. May 13,

2020) (Broderick, J.) (citation omitted). But even for a *pro se* complaint, dismissal "is

appropriate where a plaintiff fails to state a plausible claim supported by more than conclusory

allegations." *Id*.

# I.

## THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THE INJUNCTIVE AND DECLARATORY JUDGMENT CLAIMS UNDER THE *YOUNGER* ABSTENTION DOCTRINE.

"The *Younger* abstention doctrine embodies the 'longstanding public policy against federal court interference with state court proceedings.'" *Gristina v. Merchan*, 131 F.4th 82, 86 (2d Cir. 2025) (quoting *Younger v. Harris*, 401 U.S. 37, 43 (1971)). Though federal courts are generally obliged to hear cases within its scope of jurisdiction, "there are some classes of cases in which the withholding of authorized equitable relief because of undue interference with state proceedings is "the normal thing to do." *Id.* (internal quotation marks and citation omitted). The abstention applies "only to claims for declaratory and injunctive relief and 'is not appropriate with respect to [a] claim for money damages.'" *Festinger v. Snitow Kaminetsky Rosner & Snitow, LLP*, 20 Civ. 9784 (PGG) (JW), 2022 WL 901660, at *14 (S.D.N.Y. Mar. 28, 2022) (citation omitted).

The doctrine applies in three categories of cases: "(1) where there is a pending state criminal prosecution; (2) where there is a pending civil enforcement proceeding; or (3) where there is a pending civil proceeding 'uniquely in furtherance of the state courts' ability to perform their judicial functions.'" *Gristina*, 131 F.4th at 87 (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013)). This case falls in the third category.

There is no dispute that the appeal from the Travis County litigation against JAMS is currently pending. (Compl. Ex. 6 at 6; Elman Dec. ¶ 4.) And "when an order involves the '*way*' that a state court manages its proceedings in a 'subject[-area] in which the state[] ha[s] an especially strong interest, it is 'integral to the State court's ability to perform its judicial function.'" *Gristina*, 131 F.4th at *90 (citation omitted) (emphasis in original).

10

Here, the relevant state interest is that of the Texas state courts, insofar as the 2024 Order was issued by a Texas court and the appeal is pending in Texas. Texas strongly favors arbitration of disputes, which interest "is so strong in Texas that courts are to resolve any doubts in favor of arbitration." *Rao v. Am. Arb. Ass'n*, No. 05-13-00462-CV, 2014 WL 3513258, at *2 (Tex. App. July 15, 2014, pet. denied). Texas thus recognizes arbitral immunity to individual arbitrators, who "have roles that are functionally equivalent to judges," as well as to organizations such as JAMS that sponsor arbitrations, because "the failure to extend immunity to the AAA or similar organizations could discourage them from sponsoring future arbitrations, which would impede the implementation of policy favoring arbitration." *Id*. at *2-3. "Arbitrators have no interest in the outcome of the dispute and should not be compelled to become parties to it." *Blue Cross Blue Shield of Texas v. Juneau*, 114 S.W.3d 126, 133 (Tex. 2003). Likewise, JAMS has no interest in the outcome of the dispute and should not be compelled to be a party either, as "'it would be of little value to the whole arbitral procedure to merely shift the liability to the sponsoring association.'" *Rao*, 2014 WL 3513258, at *3 (citation omitted).

Further, the 2024 Order was issued as a result of JAMS's "plea to the jurisdiction," which, as noted above, is an application "to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Independent School*, 34 S.W.3d at 554. "When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Texas Dept. of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). In other words, the 2024 Order and the pending Texas appeal concern the Texas courts' *way* of managing its proceedings by determining jurisdictional issues.

Under these circumstances, *Younger* abstention should apply to the extent Plaintiff seeks declaratory and injunctive relief against JAMS. This is because: (i) this Court should decline to interfere with how the Texas courts manage their own judicial function of making jurisdictional determinations; (ii) especially in an area involving arbitral immunity, which arises from Texas's strong public policy interest in favor of conducting dispute resolution through arbitration.

## II.

## THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER ALL CLAIMS UNDER THE *COLORADO RIVER* DOCTRINE.

Under the *Colorado River* doctrine, "considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation'" require a federal court to abstain from exercising jurisdiction where there is a pending "parallel state court proceeding," and certain other factors favor abstention. *Weinstock v. Cleary, Gottlieb, Steen & Hamilton*, 815 F. Supp. 127, 131 (S.D.N.Y. 1993) (internal quotation marks omitted) (quoting *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800 (1976)). A parallel state proceeding is found if "'substantially the same parties are contemporaneously litigating substantially the same issue in another forum.'" *Lawrence Moskowitz*, 2020 WL 1503558, at *5 (citation omitted).

If parallel proceedings exist, the Court may then proceed to consider the other factors:

> (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction, (2) whether the federal forum is less inconvenient than the other for the parties, (3) whether staying or dismissing the federal actions will avoid piecemeal litigation, (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other, (5) whether federal law provides the rule of decision, and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

*Id.* at *6 (citation omitted). No single factor is determinative, and where a factor is neutral, that is

a basis for retention, not abstention. *Id*.

Here, parallel proceedings plainly exist. Both Plaintiff and JAMS are parties to the Texas litigation. That this action names dozens of additional defendants is no impediment, as "'perfect symmetry' is not required." *Roy v. Bank of New York Mellon*, 17-CV-6729 (MKB) (LB), 2018 WL 4771898, at *4 (E.D.N.Y. Sept. 30, 2018) (parallel proceedings found even though sixteen defendants not named in state action). "'If the rule were otherwise the Colorado River doctrine could be entirely avoided by the simple expedient of naming additional parties.'" *Lawrence Moskowitz*, 2020 WL 1503558, at *7 (citation omitted).

"Although [Plaintiff] asserts federal claims in this action, 'the two proceedings are essentially the same.'" *Krondes v. Nationstar Mortg., LLC*, 17cv4974, 2018 WL 2943774, at *3 (S.D.N.Y. June 12, 2018) (citation omitted). Plaintiff is complaining about JAMS's "initiat[ion]" of the arbitration (Compl. at 35, 55), which he alleges in both actions is unlawful because the underlying claims are time-barred, and one of the contracts has no arbitration clause and was not signed by him in his personal capacity. That this action is dressed as a RICO claim does not change the fundamental identity in the two cases. *Id*. at *3 (finding parallel proceedings even though federal action contained five additional federal claims including RICO); *Great South Bay Medical Care, P.C. v. Allstate Ins. Co.*, 204 F. Supp. 2d 492, 497 (E.D.N.Y. 2002) (addition of RICO claim did not change factually identical nature of two cases). The relief being sought also overlaps to the extent Plaintiff is seeking injunctive and declaratory relief—and the fact that declaratory relief is being sought places greater weight in favor of abstention. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).

Weighing the six factors, the Court should abstain under *Colorado River*.

The first factor, whether the controversy involves a res, weighs against dismissal as no res is involved.

The second factor, which asks whether the federal forum is less convenient, weighs in favor of dismissal, as the only party for whom this Court is convenient is Plaintiff, who resides in New York (Compl. at 17), whereas the forum is inconvenient for most of the defendants, including the 17 Texas judges and the Texas Attorney General, who are based in Texas.

The third factor weighs heavily in favor of dismissal since the risk of piecemeal litigation is significant. This factor is a "'paramount consideration,' especially when a failure to abstain may result in 'inconsistent disposition[s]' which 'would breed additional litigation on assertions of claim and issue preclusion.'" *Krondes*, 2018 WL 2943774, at *4 (citation omitted). If this Court finds that it may exercise jurisdiction and conclude that JAMS erred in sponsoring the arbitration, or rules in favor of Plaintiff's RICO claim, that outcome will conflict with the Texas court's determination that it has no jurisdiction to hear the underlying dispute between Plaintiff and the Valley Baptist Parties, resulting in "'inconsistent and mutually contradictory determinations.'" *Id*. (citation omitted). Such parallel proceedings would "'waste judicial resources and invite duplicative effort.'" *Roy*, 2018 WL 4771898, at *5.

The fourth factor, the order in which the actions were filed, also weighs in favor of dismissal, as the Texas litigation was filed before this action, and has progressed to an appeal. This action, in contrast, was just filed.

The fifth factor, whether federal law provides the rule of decision, may, at first blush, seem to favor exercising jurisdiction as federal law provides the "rule of decision" in this RICO action, but this does not necessarily "shift the balance toward retaining jurisdiction." *Weinstock*, 815 F. Supp. at 132. That is all the more so here, where, as shown below, Plaintiff's RICO claim

does not come close to stating a colorable claim, and therefore not worth retaining jurisdiction over. *Roy*, 2018 WL 4771898, at *6.

The sixth factor, whether state court procedures are adequate to protect Plaintiff's federal rights, also favors dismissal, as RICO claims may be brought in state courts. *Tafflin v. Levitt*, 493 U.S. 455, 467 (1990) ("state courts have concurrent jurisdiction to consider civil claims arising under RICO"). If the Texas Court of Appeals reverses the lower court, Plaintiff can amend his pleading to assert the RICO claim there. *Weinstock*, 815 F. Supp. at 132.

Finally, and though not listed among the six factors, what significantly favors abstention is the "'vexatious or reactive nature' of the Federal Action." *Lawrence Moskowitz*, 2020 WL 1503558, at *9 (citation omitted). Plaintiff has been suing every single person or entity that "violates" his perceived sense of justice in multiple judicial fora and harassing courts, judges, adversaries, and JAMS alike with numerous frivolous filings, to a potentially sanctionable degree. (ECF Doc. 145, Opinion & Order, at 15; ECF Doc. 146, Order, at 3-4.) The Court should decline to reward Plaintiff's vexatious behavior by abstaining from exercising jurisdiction.

### III.

### THIS COURT LACKS PERSONAL JURISDICTION OVER JAMS.

Lack of personal jurisdiction provides another basis for dismissal. The question of personal jurisdiction involves a two-step inquiry: (i) whether the defendant is subject to jurisdiction under the forum state's law (here, New York); and (ii) whether the exercise of personal jurisdiction comports with the Due Process Clause of the U.S. Constitution. *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014). Personal jurisdiction can be either specific or general: Specific jurisdiction involves a relationship between the forum state and the underlying dispute, while general jurisdiction, which collapses into the due process test, "exists only when a corporation's contacts with a state are "so 'continuous and systematic'

as to render [it] essentially at home in the forum State." *Id.* at 225 (citation omitted). The "paradigm bases" for general jurisdiction—i.e., where a corporation can be deemed to be "at home"—are "the place of incorporation and the principal place of business." *Id.*

Here, Plaintiff comes nowhere close to meeting any of the required test, much less all of them. First, Plaintiff fails to allege any basis to find specific jurisdiction under CPLR § 302. Indeed, none of the events he complains about is alleged to have occurred in New York; rather, they are all obviously Texas-based, with an arbitration to be held "in Cameron County [Texas] which is the county in which the [VHS] hospital is located." (Compl. Ex. 3-1 at 156 (2019 Order).) Plaintiff's alleged basis for suing JAMS here is, instead, the "nationwide scope of the alleged misconduct," "*Plaintiff's* residence" in New York, and the allegations that *Tenet* "operates nationally," "engages in commerce that affects multiple states," and has "business dealings that extend into New York." (Compl. at 6-7 (emphasis added).) These allegations are plainly insufficient to establish specific jurisdiction over JAMS, as they do not even remotely suggest that Plaintiff's claims against JAMS have anything to do with New York.

Second, Plaintiff alleges exactly zero facts to support general jurisdiction that will comport with due process. He fails to allege that JAMS is either incorporated in, or maintains a principal place of business in, and therefore "at home"—in New York. To the contrary, Plaintiff lists JAMS's address as being in California. (Compl. at 20.) Nor does Plaintiff allege any other facts to show that JAMS's contacts in this state are so "continuous and systematic" to support a finding that New York is essentially its home.[6] For any of these reasons, and certainly for all of

---

[6] Plaintiff's jurisdictional allegations in the 01868 action fare no better, as he merely alleges that JAMS conducts arbitrations nationwide, including in New York, but critically, alleges that JAMS is "headquartered in Irvine, California." (ECF Doc. 1, at 3-4.)

them, this Court also should dismiss this action on account of the total lack of personal jurisdiction over JAMS.

## IV.

### THE COMPLAINT IS BARRED BY *RES JUDICATA*.

*Res judicata* also bars this action. The law of the state where the prior judgment was rendered—here, Texas—applies to determine whether the complaint is barred by *res judicata*. *Allen v McCurry*, 449 U.S. 90, 96 (1980).

*Res judicata* "'relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication.'" *Chao v. City of Plano, Texas*, Civil Action No. 4:21-CV-00312-ALM-CAN, 2022 WL 4281606, at *5 (E.D. Tex. Aug. 16, 2022), *report and recommendation adopted*, Civil Action No. 4:21-CV-312, 2022 WL 4281355 (E.D. Tex. Sept. 15, 2022) (citation omitted). For the doctrine to apply, three elements must be met: "(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action." *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996).

Here, the 2024 Order is *res judicata* on this action. Judge Soifer ruled that:

> **IT IS SO ORDERED** that Defendant's Plea to the Jurisdiction is sustained, and this case is dismissed with prejudice to its refiling.

(Elman Decl. Ex. A).[7]

---

[7] The 2024 Order, "[a]s a matter of public record" and a document "'integral' to plaintiff's claims" (*see* Compl. at 27-28, 40), can be construed on a Rule 12(b)(6) motion. *Faulkner v. Verizon Commc'ns, Inc*., 156 F. Supp. 2d 384, 391 (S.D.N.Y. 2001) (citations omitted). *See also Barkai*, 629 F. Supp. 3d at 182 (materials outside *pro se* complaint can be considered if consistent with complaint's allegations).

Starting with the second element, the identity of parties, both Plaintiff and JAMS are parties to this action and the Texas litigation. Plaintiff's addition of dozens of new defendants who were not parties to the Texas litigation does not preclude the ban on relitigation. *Matter of Marriage of Brown*, 870 S.W.2d 600, 604 (Tex. App. 1993, writ denied) ("Since Terry and Emma are adversary parties both in this cause and in the Oklahoma suit, there is an identity of parties, and the fact that there were other parties to the Oklahoma suit does not prevent the application of the doctrine of res judicata.").

On the third element, *res judicata* precludes relitigation not only of claims finally adjudicated but those "that arise out of the same subject matter and that could have been litigated in the prior action." *Amstadt*, 919 S.W.2d at 652. "If the second plaintiffs seek to relitigate the matter which was the subject of the earlier litigation, res judicata bars the suit even if the second plaintiffs do not allege causes of action identical to those asserted by the first." *Id.* at 653. Here, although his grievance is dressed up as a RICO claim, the issues in both actions concern Plaintiff's complaint with JAMS's administration of the arbitration notwithstanding Plaintiff's arguments concerning statute of limitations and arbitrability. Indeed, Plaintiff expressly seeks injunctive and declaratory relief in this regard (Compl. at 54-55), which are the same remedies he sought in the Travis County litigation. Dressing the claim under RICO is no impediment to *res judicata* as Plaintiff could have brought the RICO claim in the Travis County litigation. *Tafflin*, 493 U.S. at 467.

Finally, as to the first element, whether there is a prior final judgment, the 2024 Order is a final judgment on the merits, insofar as it was rendered after a hearing and the court dismissed the case "with prejudice to its refiling." "'[A] dismissal with prejudice functions as a final determination' and is preclusive." *Tejas Motel, L.L.C. v. City of Mesquite by and through Bd. of*

*Adjustment*, 63 F.4th 323, 331 (5th Cir. 2023). Additionally, "a plea to the jurisdiction under Texas law has preclusive effects and subjects a later-filed lawsuit to preclusion under *res judicata*." *Chao*, 2022 WL 4281606, at *7 (collecting cases). Similarly, "a dismissal on immunity grounds under Texas law is a dismissal on the merits for purposes of res judicata." *Klein v. Walker*, 708 Fed. Appx. 158, 160 (5th Cir. 2017) (state court grant of plea to the jurisdiction on judicial and sovereign immunity grounds was *res judicata* on new federal action). Though *Klein v. Walker* involved judicial immunity, the same result should obtain with arbitral immunity, which "is derived from judicial immunity." *Juneau*, 114 S.W.3d at 131.

The District Court of Travis County is a court of competent jurisdiction. "State court judgments are given their full effect under the Full Faith and Credit Clause, and therefore, are also considered in the *res judicata* analysis." *Chao*, 2022 WL 4281606, at *7. And to be sure, the pending appeal of the 2024 Order does not alter its finality, because under Texas law, "a judgment is final for the purposes of issue and claim preclusion 'despite the taking of an appeal unless what is called an appeal actually consists of a trial de novo.'" *Marriage of Brown*, 870 S.W.2d at 604 (internal quotation marks and citation omitted).

The 2024 Order is *res judicata* on this action.

## V.

## THE CLAIMS AGAINST JAMS ARE BARRED BY ARBITRAL IMMUNITY.

Arbitral immunity also applies to bar this action. Preliminarily, the question of which law governs has been complicated by Plaintiff's improper filing of this action in this Court, even though the underlying dispute involved a Texas litigation and arbitration, and allegations that JAMS violated "federal and Texas law." (Compl. at 21.) But under either law, JAMS is immune from these lawsuits.

19

Arbitral immunity protects arbitrators from civil liability for all acts performed in their arbitral capacity, *Austern v. Chicago Bd. Options Exch., Inc.*, 898 F.2d 886, 886 (2d Cir. 1990), and the immunity attaches equally to entities sponsoring arbitrations. *Imbruce v. Am. Arb. Ass'n., Inc.*, 15 Civ. 7508 (NRB), 2016 WL 5339551, at *3 (S.D.N.Y. Sept. 22, 2016). As demonstrated in Point I above, Texas law also provides arbitral immunity to arbitrators and entities sponsoring arbitrations. Courts have held that this immunity is essential "to protect the decision-maker from undue influence and protect the decision-making process from reprisals by dissatisfied litigants." *Austern*, 898 F.2d at 886 (internal quotation marks and citation omitted). The immunity extends to administrative tasks that are integrally related to the arbitration, such as "'selecting arbitrator, billing for services, and scheduling hearing.'" *Imbruce*, 2016 WL 5339551, at *3 (citation omitted); *see also Rao*, 2014 WL 3513258, at *3 (arbitration service organizations are "protected by the doctrine of arbitral immunity for all acts within the scope of their duties.").

In this action, Plaintiff complains of JAMS's "unlawfully accept[ing] an arbitration demand" despite the supposed expiration of statute of limitations; "initiat[ing] arbitration on contracts that do not contain arbitration clauses"; "continuing arbitration without a valid contractual basis and ignoring legal objections"; "rel[ying] on a 2019 judicial order to justify arbitration"; and "repeatedly sen[ding] fraudulent billing demands." (*See* Compl. at 21, 35-36.) These complaints go to the heart of JAMS's functions that are integrally related to the arbitral process of commencing the arbitration, scheduling the hearing, and sending billing statements.

Additionally, "[w]here parties have agreed to be bound by the rules of an arbitral organization, courts have enforced similar rules to bar claims against arbitrators and sponsoring organizations." *Imbruce*, 2016 WL 5339551, at *3; *Hudnall v. Smith*, EP-21-CV-00106-FM, 2021 WL 3744580, at *3-4 (W.D. Tex. Aug. 10, 2021) (where arbitration agreement incorporated

the rules of AAA limiting its liability, plaintiff, "[a]s a party to the arbitration agreement . . . is contractually obligated to accept the AAA limitations on civil liability."). Here, the underlying relocation agreement provides that Plaintiff agreed to be bound by JAMS's rules. (Compl. Ex. 1 at 20 (relocation agreement) ¶ 5.) Rule 30(c) of JAMS Comprehensive Arbitration Rules & Procedures ("JAMS Rules") provides that "neither the Arbitrator, nor the Case Manager, nor JAMS, including its employees or agents, shall be liable to any Party for any act or omission in connection with any Arbitration conducted under these Rules." (*See* Rule 30(c) of JAMS Rules, available at https://www.jamsadr.com/rules-comprehensive-arbitration/#Rule-30.) Plaintiff is accordingly barred contractually from raising claims against JAMS with respect to acts within the scope of its duties.

And there can be no dispute that arbitral immunity attaches to JAMS in this case, even if the underlying lease agreement contains no arbitration clause or Plaintiff did not sign it in his personal capacity. Critically, it is *Plaintiff himself* who jointly stipulated to stay the Valley Baptist Parties' proceedings in favor of arbitration. That stipulation culminated in the 2019 Order, which provides, among other things:

> IT IS FURTHER ORDERED, that . . . the parties in accordance with the arbitration agreement in the relocation contract and pursuant to agreement and the Court's authority under Chapter 152 of the Texas Civil Practice and Remedies Code are to be bound by the Commercial Rules of Arbitration of the Judicial Arbitration Mediation Services ("JAMS") before one arbitrator applying the laws of the State of Texas.

(Compl. Ex. 3-1 at 156-157.)

Plaintiff signed this Order via his then-attorney, which is an admitted fact. (Compl. Ex. 6 at 184-185, whereby Plaintiff responded "[y]es, he was" in response to Judge Soifer's question, "was Mr. Cosby representing you?" (October 24, 2024 hearing transcript).) This Court has

examined this issue in its recent Opinion & Order denying Plaintiff's motion for a nationwide injunction and stated that Plaintiff is bound by his attorney's signature. (ECF Doc. 145 at 11-14.) Accordingly, the 2019 Order is the functional equivalent of an arbitration agreement that incorporates the JAMS Rules, by which Plaintiff agreed that he would be bound to Rule 30(c) of those Rules.

This lawsuit, on its face, falls squarely within the scope of arbitral immunity, and should be dismissed.

## VI.

## THE COMPLAINT FAILS TO STATE A VALID RICO CLAIM.

To state a RICO claim under 18 U.S.C. § 1962(c), a plaintiff must show "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983). Plaintiff here fails to adequately plead any, let alone "two or more" viable predicate acts, or a "pattern of racketeering activity," or the existence of an "enterprise." This case is precisely the type of RICO complaint that should be "flush[ed] out" at this "early stage of the litigation." *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996).

### A.  Plaintiff Fails to Allege Any Viable RICO Predicate Acts.

None of the three purported "predicate acts" that Plaintiff alleges in support of his substantive RICO claim are viable.

The first predicate act alleged is for mail and wire fraud in violation of 18 U.S.C. §§ 1341, 1343. "'The elements of mail or wire fraud are (i) a scheme to defraud (ii) to get money or property (iii) furthered by the use of interstate mail or wires.'" *Williams v. Affinion Grp., LLC*,

22

889 F.3d 116, 124 (2d Cir. 2018) (citation omitted). To adequately allege a "scheme to defraud," which "is 'a plan to deprive a person of something of value by trick, deceit, chicane or overreaching' . . . a plaintiff must provide proof of a material misrepresentation." *Id*. (quotations omitted). These elements must be pled with particularity under Rule 9(b), requiring Plaintiff to "detail the specific statements that are false or fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Id*.

Plaintiff does exactly the opposite of what is required under Rule 9(b). He fails to plead, with any particularity, the use of mail or wire by JAMS to further a scheme to defraud. He fails to allege fraudulent intent. He fails to specify the allegedly false or fraudulent statements or its speaker. He fails to allege any dates or locations of when the alleged misrepresentations took place. Rather, he relies on wholly conclusory assertions about JAMS's "unlawful[]" initiation of the arbitration (Compl. at 35), or JAMS's filing of allegedly "fraudulent legal documents" with the Texas court (Compl. at 5), as constituting predicate acts. But, and as it has been articulated numerous times, Plaintiff agreed to the JAMS Rules, pursuant to which arguments about arbitrability are made *solely* to the arbitrator. JAMS Rule 11(b). Additionally, "Plaintiff's anticipated timeliness defense is an issue before the arbitrator." (ECF Doc. 145, Opinion & Order, at 10.)

Moreover, to the extent that Plaintiff is attempting to make out a mail and wire fraud claim by asserting that JAMS submitted false filings in the Texas litigation, he will be unable to state a claim. "Allegations of frivolous, fraudulent, or baseless litigation activities—without more—cannot constitute a RICO predicate act." *Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018).

The second alleged predicate act is for "extortion and coercion" in violation of 18 U.S.C. § 1951 (the Hobbs Act). The term "extortion" is defined as "the obtaining of property from

another, with his consent, induced by wrongful use of actual or threatened force, violence, or

fear, or under color of official right." 18 U.S.C. § 1951(b)(2). Courts "have construed the

extortion provision of the Hobbs Act at issue . . . to require not only the deprivation but also the

acquisition of property." *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 404 (2003).

Here, Plaintiff does not allege anywhere that he paid JAMS anything, so he does not

allege that JAMS obtained any "property" of his and thus fails to state an extortion claim. *Id.* ("a

person must 'obtain' property from another party to commit extortion"). What he instead alleges

is that "JAMS repeatedly sent fraudulent billing demands, extorting Dr. De Oliveira into paying

for an arbitration he never consented to." (Compl. at 36.) But sending billing statements is not an

act of "force, violence, or [cause for] fear." "[A] claim for extortion does not lie when the

Defendant had a good faith claim of right to the money sought." *Kashelkar v. Rubin & Rothman*,

97 F. Supp. 2d 383, 392 (S.D.N.Y. 2000). JAMS has a good faith expectation to be paid for its

arbitration services that Plaintiff himself consented to. The sending of bills is unremarkable and

uncontroversial.

The term "coercion" is not defined under the Hobbs Act, but "involves the use of force or

threat of force to restrict another's freedom of action." *Scheidler*, 537 U.S. at 405. Again,

nowhere does Plaintiff allege that JAMS used, or threatened to use, any force to restrict his

freedom. To the contrary, Plaintiff has been acting with the utmost freedom, as can be seen from

his repeated announcement to JAMS that he "will not participate in an arbitration process

concerning time-barred claims, especially in light of the fact that the court orders involved are

unsigned" and the like. (*See*, *e.g.*, Compl. Ex. 11 at 19 (Plaintiff's August 14, 2024 email); *see

also* Ex. 11 at 20-27.) Plaintiff has hardly been coerced into arbitrating or paying for anything.

The third alleged predicate act is for obstruction of justice in violation of 18 U.S.C.

§ 1503. A violation of this provision requires, on its face, misconduct in a U.S. federal court. *O'Malley v. New York City Transit Auth.*, 896 F.2d 704, 708 (2d Cir. 1990) (given "clear indicia of congressional intent to limit RICO's obstruction of justice to federal court proceedings," plaintiff's obstruction of justice claim "had no chance" because alleged obstructions were all made in state courts). Plaintiff only alleges purported misconduct by JAMS in a Texas state court.

Lastly, Plaintiff offers "RICO conspiracy" as another predicate act—but that is not a predicate act, it is an independent claim. Since Plaintiff's substantive RICO claim pursuant to 18 U.S.C. § 1962(c) fails, his additional claim for conspiracy to violate RICO pursuant to 18 U.S.C. § 1962(d) necessarily fails. *Nat'l Grp. for Commc'ns and Comput. Ltd. v. Lucent Techs. Inc.*, 420 F. Supp. 2d 253, 272 (S.D.N.Y. 2006) ("Case law in this Circuit confirms that a 1962(d) conspiracy claim must be dismissed where the substantive RICO claim is deficient."). Moreover, Plaintiff fails to allege the "core of a RICO civil conspiracy" because he does not allege "an agreement to commit predicate acts" among the various defendants. *Hecht v. Com. Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990).

And to be sure, the conclusory alleged collusion between JAMS and Tenet, whereby JAMS accepted the commencement of arbitration (Compl. at 3, 11, 20, 35) is no collusion at all, but JAMS simply effectuating the parties' arbitration agreement and the 2019 Order. Similarly, the alleged collusion between JAMS and Judge Soifer, in which the Judge declined to issue findings of fact and conclusions of law in connection with her 2024 Order (Compl. at 21, 27, 28, 40), is again, not collusion, but the court simply following the letter of the law. (Compl. Ex. 6 at 209 (JAMS's counsel's October 28, 2024 email citing Texas law stating that findings of fact and conclusions of law should not arise from rulings from a plea to jurisdiction); Ex. 6 at 208 (Judge

Soifer's October 28, 2024 response, in which she "agrees that a response to the request for findings of fact and conclusions of law is not proper and will not be provided.").)

### B. Plaintiff Fails to Plead a Pattern of Racketeering Activity.

The failure to allege two or more predicate acts, alone, warrants the dismissal of Plaintiff's RICO claim. But the claim fails additionally because Plaintiff is unable to allege a "pattern of racketeering activity," defined as "at least two predicate acts of racketeering activity committed in a ten-year period, which amount to or pose a threat of continued criminal activity." *First Cap. Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004) (citations, brackets, and quotation marks omitted).

To satisfy the continuity requirement, "a plaintiff in a RICO action must allege either an open-ended pattern of racketeering activity (i.e., past criminal conduct coupled with a threat of future criminal conduct) or a closed-ended pattern of racketeering activity (i.e., past criminal conduct extending over a substantial period of time)." *Id.* at 180. Plaintiff alleges neither.

Plaintiff unequivocally cannot show closed-ended continuity. To satisfy closed-end continuity, Plaintiff must prove a series of related predicates "'extending over a substantial period of time,'" and the Second Circuit "has never found a closed-ended pattern where the predicate acts spanned fewer than two years." *Id.* at 181 (citation omitted).

Here, with respect to JAMS, the alleged predicate acts commenced in 2024, so Plaintiff has only alleged a period of less than a year. Further, the other relevant factors—"the number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes"—likewise "cuts against a finding of closed-ended continuity in this case." *Id.* at 181-82 (no closed-ended continuity when, "[a]t bottom, Plaintiffs have alleged that [defendant] engaged in a single scheme" involving only two victims). Here, Plaintiff only alleges

a single scheme with a single victim.

To satisfy open-ended continuity, Plaintiff must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed. *Cofacredit*, *S.A. v. Windsor Plumbing Supply Co., Inc*., 187 F.3d 229, 242 (2d Cir. 1999). "[W]here the enterprise primarily conducts a legitimate business, there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity." *Id*. at 243. Here, there is zero allegation to raise an inference that the alleged predicate acts were the regular way of JAMS operating its business. And the nature of the predicate acts alleged are such that there can be no threat of ongoing criminal activity, since the conduct of initiating and proceeding with the arbitration are "'inherently terminable'" once the arbitration ends. *First Capital*, 385 F.3d at 180 (citation omitted). Moreover, the purported mail and wire fraud or obstruction of justice appear to be complete, as Plaintiff only complains of JAMS's litigation conduct in the Travis County litigation.

### C.  Plaintiff Fails to Plead, and Cannot Establish, the Existence of an Enterprise.

To adequately plead the existence of a RICO enterprise, a plaintiff must also allege that the purported enterprise was "'an ongoing organization, formal or informal,'" including via reference to "'evidence that the various associates function as a continuing unit'" and were "'associated together for a common purpose of engaging in a course of conduct.'" *Id.* at 173 (citation omitted).  Such evidence can include, for example, "solid information regarding the hierarchy, organization, and activities of th[e] alleged association-in-fact enterprise." *Id.* at 174 (quotation marks omitted). To qualify, "[t]he enterprise must be separate from the pattern of racketeering activity . . . and distinct from the person conducting the affairs of the enterprise." *Id*. at 173.

Here, Plaintiff does not even try to allege the existence of an enterprise. Even if the pleading can be stretched to infer one, the allegations amount to an argument that the enterprise alleged *is* the pattern of racketeering activity. Plaintiff fails "to detail any *course* of fraudulent or illegal conduct separate and distinct from the alleged predicate racketeering acts themselves—a requirement in this Circuit." *Id.* at 174 (emphasis in original). Plaintiff further fails to allege each participant's role in the course of fraudulent conduct. The "'conclusory naming of a string of entities does not adequately allege an enterprise.'" *Id*. at 175 (citation omitted).

## CONCLUSION

For the reasons set forth above, JAMS respectfully requests that the Complaint be dismissed against it, with prejudice.

Dated: May 2, 2025
      New York, New York

          ELMAN FREIBERG PLLC

          By: _____
             Howard I. Elman
             Mioko C. Tajika
          950 Third Avenue 16th Floor
          New York, New York 10022
          (646) 780-8100
          helman@ef-law.com
          mtajika@ef-law.com

          *Attorneys for Defendant Jams, Inc.*

## <u>CERTIFICATION</u>

This memorandum of law contains 8,748 words, not including its cover, table of contents, table of authorities, and signature block, as counted by the Microsoft Word word-processing system on which it was prepared, and therefore complies with the 8,750-word limit set by Rule 4.B. of the Court's Individual Rules & Practices in Civil Cases.

*/s/ Howard J. Elman*
Howard J. Elman
