UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X

DANIEL DE OLIVEIRA,

                               Plaintiff,

                  - against -                      Lead Case:
                                            25-CV-1683 (VSB) (GS)

TENET HEALTHCARE, *et al.*,

                           Defendants.

---------------------------------------------------------X

DANIEL DE OLIVEIRA,

                               Plaintiff,

                  - against -              Member Case:
                                              25-CV-1692 (VSB) (GS)

PAKIS, GIOTES, BURLESON &
DEACONSON, P.C., *et al.*,

                           Defendants.

---------------------------------------------------------X

DANIEL DE OLIVEIRA,

                                 Plaintiff,

                  - against -              Member Case:
                                            25-CV-1753 (VSB) (GS)

VALLEY BAPTIST REALTY COMPANY,
LLC, *et al.*,

                           Defendants.

---------------------------------------------------------X

DANIEL DE OLIVEIRA,                                :
                                                   :
                          Plaintiff,               :
                                                   :
          - against -                              :
                                                   :                    Member Case:
                                                   :                    25-CV-1754 (VSB) (GS)
VHS HARLINGEN HOSPITAL COMPANY,                    :
L.L.C., *et al.*,                                  :
                                                   :
                          Defendants.              :
                                                   :
                                                   :
                                                   :
------------------------------------------------------X
                                                   :
DANIEL DE OLIVEIRA,                                :
                                                   :
                          Plaintiff,               :
                                                   :                    Member Case:
          - against -                              :                    25-CV-1868 (VSB) (GS)
                                                   :
                                                   :           **<u>OPINION & ORDER</u>**
JAMS,                                              :
                                                   :
                          Defendant.               :
                                                   :
------------------------------------------------------X

<u>Appearances</u>:

Daniel De Oliveira
East Meadow, NY
*Pro Se Plaintiff*

Alexandra Nicole Nieto
Gregg Douglas Weinstock
Barker Patterson Nichols, LLP
300 Garden City Plaza, Suite 100
Garden City, NY

Amanda Laurel Gayer
Leslie C. Thorne
Haynes and Boone, LLP
New York, NY & Austin, TX

2

*Counsel for Defendants Tenet Healthcare, Valley Baptist Realty Company, LLC, and VHS Harlingen Hospital Company, L.L.C.*

Howard Ian Elman
Mioko Catherine Tajika
Elman Freiberg PLLC
New York, NY
*Counsel for Defendants JAMS, Kimberly Taylor, Esq., Michael Massengale, and Sheri Flame Eisner*

Andrew Loren Harris
Office of the Attorney General
PO Box 12548 Capitol Station, Ste Mc019
Austin, TX
*Counsel for Defendants David L. Evans and Maria Aceves*

Tyler Maulsby
Kristen Gabriela Niven
Frankfurt Kurnit Klein & Selz P.C.
28 Liberty Street
New York, NY 10005
*Counsel for Defendants Pakis, Giotes, Burleson & Deaconson, P.C., Marcus Mataga, Michael Cosby, David N. Deaconson*

<u>VERNON S. BRODERICK, United States District Judge</u>:

This is a consolidated action of five cases filed by pro se Plaintiff.[1]  Before me are motions to dismiss filed by Defendants:  (1) JAMS, Inc. ("JAMS"), (Docs. 157, 158, 159); (2) Pakis, Giotes, Burleson & Deaconson, P.C., Michael Cosby, Marcus Mataga, and David N. Deaconson (collectively, the "Pakis Defendants"), (Docs. 179, 180, 181); (3) Texas state court judges Maria Aceves and David L. Evans, (Docs. 211, 212); (4) Defendants Michael Massengale, Kimberly Taylor, and Sheri Flame Eisner (collectively, the "JAMS Individual Defendants"), (Docs. 310, 311, 366, 367); and (5) Tenet Healthcare Corporation ("Tenet"), Valley Baptist Realty Company, LLC ("Valley Baptist"), and VHS Harlingen Hospital

[1] Unless otherwise noted, record citations refer to the Lead Case of *De Oliveira v. Tenet Healthcare*, No. 25-CV-1683 (S.D.N.Y. filed February 22, 2025).

Company, LLC ("VHS") (collectively, the "Valley Baptist Defendants"), (Docs. 330, 331). Also before me is JAMS' motion for sanctions. (Doc. 294.)

For the reasons below, Defendants' motions to dismiss are GRANTED and JAMS' motion for sanctions is GRANTED IN PART AND DENIED IN PART. Plaintiff's claims in all five cases are DISMISSED with prejudice.[2]

## I.    __Background__[3]

Pro se Plaintiff filed five actions in this District, all relating either to a JAMS arbitration or litigation in Texas state court in connection with Plaintiff's contracts with VHS ("VHS Contract") and Valley Baptist ("Valley Baptist Contract"), subsidiaries of Defendant Tenet.

Pro se Plaintiff is a "licensed medical doctor," who seeks an injunction enjoining the pending arbitration pursuant to a contract in 2014 that was allegedly breached in 2016 and related damages. (Doc. 1 ("Lead Compl.") at 3, 17[4]; *see also id.* at 54–60 (describing the relief sought).) Plaintiff contends that the statute of limitations had run because Defendant Tenet's demand for arbitration was made in 2024. (*Id.* at 3.) Furthermore, Plaintiff states that he was

---

[2] I am also in receipt of Plaintiff's various other motions that he has filed in the Lead Case—totaling to over 60 different motions at the time of the filing of this Opinion & Order—which include motions for severance, (Docs. 228, 440, 445), motions for summary judgment, (Docs. 112–14, 120), and motions for sanctions, (Docs. 20, 71), among other requests for relief. Since Defendants' motions to dismiss are granted, Plaintiff's various other motions are denied as moot and will be terminated.

[3] The following factual summary is drawn from the allegations contained in pro se Plaintiff's complaints and petitions in all five actions, as well as the documents "incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks omitted). In accordance with the mandate to read a pro se plaintiff's papers liberally, I look to other relevant documents. *See Robert Smalls Inc. v. Hamilton*, No. 09-CV-7171, 2010 WL 2541177, at *2 n.2 (S.D.N.Y. June 10, 2010) ("In construing Defendants' *pro se* filings liberally, the Court looks to all relevant documents, even if filed in support of other motions, in determining this [pending motion].").

I assume the allegations in the various complaints and petitions to be true in considering the motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). My reference to these allegations should not be construed as a finding as to their veracity, and I make no such finding.

[4] All pincites to page numbers in the Lead Complaint, (No. 25-cv-1683, Doc. 1) refer to the PDF page number of the 1803-page document. Pincites to paragraph numbers refer to paragraphs in the complaint.

"not even a party" to the contract, which itself lacked an arbitration clause. (*Id.*)

The complaint in the Lead Case, however, does not clearly provide additional details about the underlying contract, its purported breach, or any demand for arbitration, and instead attaches approximately 1,743 pages of documents as exhibits. I therefore look to the original petition in one of the consolidated cases against JAMS—*De Oliveira v. JAMS*, No. 25-CV-1868 (S.D.N.Y. filed Mar. 6, 2025) (the "JAMS Action")—for information related to the contracts.

The petition in the JAMS Action describes two contracts that form the basis of an arbitration proceeding before JAMS. (No. 25-CV-1868, Doc. 1 ("JAMS Pet.") at 4–6.)[5] The first is the VHS Contract, which Plaintiff claims (1) contains an arbitration clause, (2) to which both Defendant VHS and Plaintiff are parties, and (3) was "signed in 2014 and expired in 2018," such that the statute of limitations expired in 2020.[6] (*Id.* at 4–5.) The second is the Valley Baptist Contract, which Plaintiff claims (1) does not contain an arbitration clause, and (2) that Defendant Valley Baptist—but not Plaintiff—is a party to the Valley Baptist Contract, and therefore there is no contractual privity. (*Id.* at 5–6.)

Based on these contracts, Tenet brought lawsuits in Texas state court, which were then consolidated under case number 2018-CCL-01401 (the "Texas Actions"). (Lead Compl. 2.) At some point during the litigation, the actions were sent to arbitration with JAMS. (*Id.* at 20–28.) The Pakis Defendants represented Plaintiff in these Texas state court actions, for at least part of

---

[5] The petition in the JAMS Action (the "JAMS Pet.") is 100 pages long, which includes the body of the complaint and its numerous exhibits. Pincites to paragraph numbers refer to paragraphs in the complaint. Pincites to page numbers refer to the PDF page number of the 100-page document.

[6] Among the approximately 1,700 pages Plaintiff attaches to the complaint in the Lead Case, he includes the 2019 petition that VHS filed in Cameron County, Texas against Plaintiff, which discusses a "[r]elocation agreement" that parties entered into on June 1, 2024. (Lead Compl. at 70.) VHS allege in this petition that Plaintiff breached the 2014 relocation agreement in 2016 when "he ceased to engage in full time practice of medicine the Hospital's Service Area as required under the contract." (*Id.* at 71–72.)

the time.  (*Id.* at 28–29.)[7]

Having discussed the significant factual overlap among the five actions, I now turn to each action's specific factual allegations.

### A.  *Case No. 25-CV-1683 (the "Lead Case")*

The Lead Case involves alleged violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962, by Defendants Tenet, JAMS, the "Texas Judiciary," former Chief Justice Nathan Hecht of the Texas Supreme Court, and Texas State Attorney General Ken Paxton.  (Lead Compl. at 1 (naming Defendants in the case caption).) Plaintiff also names in the body of the complaint as defendants:  Hughes Health Law, as an agent of Tenet, seventeen Texas state court judges, an attorney working in the Office of the Texas State Attorney General, and Pakis Defendants.  (*Id.* at 18–30.)  Plaintiff lists seven RICO predicates: (1) mail and wire fraud; (2) obstruction of justice; (3) fraud upon the court; (4) judicial collusion and corrupt influence; (5) extortion through arbitration; (6) unlawful debt collection; and (7) misuse of judicial office.  (*Id.* at 51–54.)

Plaintiff makes several, vague allegations regarding each Defendant.  *First*, Plaintiff alleges that Tenet, through its subsidiary VHS, (1) filed a lawsuit against Plaintiff despite the VHS Contract's inclusion of an arbitration agreement, (2) misrepresented that agreement to the Texas state court, and (3) conspired with attorneys and judges to illegally subject Plaintiff to arbitration and litigation.  (Lead Compl. 33–35.)  *Second*, Plaintiff alleges that JAMS improperly conducted arbitration proceedings, colluded with Tenet in doing so, and fraudulently billed

---

[7] *See also* No. 25-CV-1692, Doc. 1 at 4 ("Plaintiff retained Pakislaw and its attorneys to represent him in two state court lawsuits in Cameron County Court at Law 1:

- VHS Harlingen Hospital Company, LLC v. Daniel De Oliveira, M.D.
- Valley Baptist Realty Company, LLC v. Daniel De Oliveira, M.D.").

arbitration fees to Plaintiff. (*Id.* at 35–36.) *Third*, Plaintiff alleges that various Texas state judges refused to rule on various jurisdictional motions, improperly reassigned cases to different judges, colluded with JAMS and Tenet, sanctioned Plaintiff, obstructed the appeals process, were biased against Plaintiff, conspired to deprive Plaintiff of his due process rights, and improperly denied recusal motions. (*Id.* at 36–43.) *Fourth*, Plaintiff alleges that the Texas State Attorney General improperly defended the Texas state judges, committed fraud in legal proceedings, used public funds to defend illegal judicial acts, and denied Plaintiff's due process rights. (*Id.* at 43–47.) *Fifth*, Plaintiff alleges that Pakis Defendants failed to make certain arguments in the Texas proceedings, fraudulently consolidated the two contract disputes, and otherwise failed to adequately represent Plaintiff despite collecting legal fees. (*Id.* at 48–51.)

### B. Case No. 25-CV-1692 (the "Pakis Action")

In the Pakis Action, Plaintiff claims legal malpractice, negligence, breach of fiduciary duty, and violations of the Federal Arbitration Act ("FAA") and Plaintiff's due process rights. (No. 25-CV-1692, Doc. 1 ("Pakis Compl.") ¶ 1.)[8] Defendants are the law firm Pakis, Giotes, Burleson & Deaconson, P.C. ("Pakis Law") and several attorneys, Michael Cosby, Marcus Mataga, and David N. Deaconson —all of whom are based in Texas. (*Id.* ¶ 8.) Specifically, Pakis Law is headquartered in Waco, Texas, and Cosby, Mataga, and Deaconson are all "attorney[s] licensed in Texas." (*Id.*)

Plaintiff alleges that Pakis Defendants failed to cite certain cases and sufficiently argue that the Texas court lacked jurisdiction, failed to file a motion to dismiss, and recommended mediation in a court that lacked jurisdiction instead of moving to dismiss. (Pakis Compl. ¶¶ 9–

[8] The complaint in the Pakis Action (the "Pakis Complaint") is 128 pages long, which includes the body of the complaint and its numerous exhibits. Pincites to paragraph numbers refer to paragraphs in the complaint. Pincites to page numbers refer to the PDF page number of the 128-page document.

17.)  In doing so, Pakis Defendants "allowed unnecessary litigation, increased Plaintiff's legal costs, and enabled a state court to exercise unlawful authority over him."  (*Id.* ¶ 17.)

## C.  *Case No. 25-CV-1753 (the "Valley Baptist Action")*

In the Valley Baptist Action, Plaintiff alleges fraud, misrepresentation, abuse of process, Fifth Amendment violations, and "legal harassment"[9] against Tenet and Valley Baptist.  (No. 25-CV-1753, Doc. 1 ("Valley Baptist Pet.") ¶ 1.)[10]  Defendants are "based in Texas," and "Tenet Healthcare's economic presence in New York, including its listing on the NYSE, establishes business connections relevant to this case."  (*Id.* ¶ 6.)

Plaintiff alleges that he was not a signatory in his personal capacity to the lease agreement with Valley Baptist, which was the Valley Baptist Contract.  (Valley Baptist Pet. ¶¶ 3, 10.)  Rather, Valley Baptist contracted with Valley Heart and Vascular Institute, PLLC ("VHVI").  (*Id.* ¶ 3.)  A copy of the Valley Baptist Contract is attached to the Valley Baptist Petition and shows that Plaintiff signed the contract on behalf of VHVI as a "Sole Member."  (*Id.* at 30–51.)  Plaintiff claims that Valley Baptist misrepresented Plaintiff as a signatory to the contract to Texas courts, and that Tenet colluded to allow Valley Baptist's "continued harassment [of Plaintiff] through the Texas legal system."  (*Id.* ¶¶ 3–4.)

## D.  *Case No. 25-CV-1754 (the "VHS Action")*

In the VHS Action, Plaintiff alleges breach of contract, fraud upon the court, obstruction of justice, "legal harassment," and violation of the FAA against Tenet and VHS.  (No. 25-CV-

---

[9] Plaintiff has not defined what "legal harassment" is, although it may be harassment using the legal system. Research has not revealed a cause of action specifically termed "legal harassment."

[10] The petition in the Valley Baptist Action (the "Valley Baptist Petition") is 62 pages long, which includes the body of the petition and its numerous exhibits.  Pincites to paragraph numbers refer to paragraphs in the petition.  Pincites to page numbers refer to the PDF page number of the 62-page document.

1754, Doc. 1 ("VHS Pet.") ¶ 1.)[11]  Defendants are "based in Texas."  (*Id.* ¶ 5(a).)  "Tenet Healthcare is publicly traded on the New York Stock Exchange," and is a "national healthcare corporation" that "has contractual dealings, insurance agreements, and potential medical operations that impact New York residents and the broader healthcare market."  (*Id.* ¶ 5(f).) Plaintiff claims that both Defendants' "business dealings span multiple states, and their breach of contract directly impacts Plaintiff in New York."  (*Id.* ¶ 5(g).)

Plaintiff alleges that Defendants pursued litigation against Plaintiff, despite a "valid arbitration agreement," misrepresented to the Texas courts that they have jurisdiction, and "engaged in a multi-year campaign of abusive litigation to deprive Plaintiff of his contractual rights and due process."  (*Id.* ¶ 2.)

### E.  *Case No. 25-CV-1868*

In the JAMS Action, Plaintiff alleges that JAMS is improperly conducting arbitration of his contract-related claims in Texas.  (JAMS Pet. ¶ 7.)  Specifically, JAMS is improperly arbitrating claims related to the Valley Baptist Contract and VHS Contract.  (*Id.*)  Plaintiff claims that JAMS lacks jurisdiction over the Valley Baptist Contract because (1) it does not contain an arbitration clause, and (2) Plaintiff was not a signatory to that contract.  (*Id.* ¶ 7(b).)  Plaintiff also claims that JAMS lacks jurisdiction over the VHS Contract because (1) "Valley Baptist waived arbitration by litigating" the case, and (2) the claims are barred by the statute of limitations.  (*Id.* ¶ 7(a).)  Plaintiff alleges, among other things, that JAMS engaged in fraud upon the court, collusion with Tenet, and fraudulent billing.  (*Id.* ¶ 1.)  Plaintiff requests, among other things, an injunction enjoining the arbitration, punitive damages, and a referral of JAMS for

---

[11] The petition in the Valley Baptist Action (the "Valley Baptist Petition") is 96 pages long, which includes the body of the petition and its numerous exhibits.  Pincites to paragraph numbers refer to paragraphs in the petition.  Pincites to page numbers refer to the PDF page number of the 96-page document.

federal investigation for violating RICO Act and the FAA. (*Id.* at 6–7.) Notably, JAMS is headquartered in California, although it "conducts arbitration in New York" generally and the arbitration at issue here "affects a New York resident" (i.e., Plaintiff). (*Id.* ¶¶ 4, 6.)

## II.    **Procedural Background**

Pro se Plaintiff initiated these five actions in this Court between February 22, 2025 and March 6, 2025. On March 17, 2025, I issued an order consolidating all five actions and directing Plaintiff "to make all filings <u>only</u> in Case No. 25-CV-1683" (the "Lead Case") and warning Plaintiff that he "<u>should not</u> make additional filings or submissions in the other four actions." (Doc. 13 at 5 (emphasis in original).) Plaintiff initially ignored that order. (*See, e.g.*, No. 25-CV-1692, Docs. 19 (motion to expedite summary judgment proceedings), 20 (motion to compel); No. 25-CV-1754, Docs. 17–18 (proposed clerk's certificate of default and accompanying affirmation), 24 (motion to compel).) Plaintiff has since generally made his filings in the Lead Case.

### A.  *Plaintiff's Prolific, Excessive, and Unnecessary Filing Behavior*

However, Plaintiff has made an incredible number of filings in the Lead Case. For example, in the span of three days between March 17–20, 2025, Plaintiff filed 12 motions or notices. (*See* Docs. 14–25.) At that time, Plaintiff had not even served any Defendant with any summonses or complaints. As another example, on April 18, 2025, Plaintiff filed 11 motions and one "notice of selective judicial adjudication" in one day. (*See* Docs. 112–123.)

On March 20, 2025, I issued an order referring all five cases to Magistrate Judge Barbara C. Moses for general pretrial purposes. (Doc. 27.) On March 27, 2025, the cases were reassigned to Magistrate Judge Gary Stein. On April 30, 2025, in response to Plaintiff's deluge of motions and documents, Magistrate Judge Stein issued an order stating that "the volume and

pace of Plaintiff's filings has made it impracticable for Defendants to adequately reply to, or the Court to address, those filings in a timely fashion," and that "many of these filings appear to be frivolous, vexatious and/or duplicative on their face." (Doc. 146 at 3.) Judge Stein accordingly stayed each of the consolidated cases pending Defendants' answer, motion to dismiss, or other response to the respectively operative complaints in each action. (*Id.*) Notably, Judge Stein warned Plaintiff that he may face sanctions "should he persist in his abusive litigation conduct." (*Id.* at 3–4.)

However, Plaintiff ignored Magistrate Judge Stein's order, which contained clear instructions and warnings. In the Lead Case, there are now over 400 filings, the vast majority from Plaintiff. Magistrate Judge Stein and I have done our best to address them. These include (1) an emergency motion for a nationwide injunction against JAMS, (Doc. 44), which I denied, (Doc. 145); (2) a motion to disqualify Judge Stein, (Doc. 183), which I denied, (Doc. 258); (3) a motion for certification of interlocutory appeal, (Doc. 270), which I denied, (Doc. 304); and (4) a motion for "clarification" of my "party status" and accusing me of bias, (Doc. 314), which I denied, (Doc. 329). Judge Stein has also issued several orders to resolve Plaintiff's motions. (*See* Docs. 146 (warning Plaintiff that his barrage of motions risks sanctions), 218 (denying motion for recusal), 424 (striking Plaintiff's amended complaint and denying Plaintiff's motion to add parties).)

Plaintiff has also filed numerous motions for sanctions, (Docs. 20, 71), motions to compel, (Docs. 48, 116–18, 208, 231, 246, 253–54, 347, 413), motions for summary judgment, (Docs. 112–14, 120), motions to sever, (Docs. 228, 440, 444, 445), and notices seeking various forms of relief, (Docs. 54–57, 66–67, 119, 128–29, 147–48, 170–72, 185–90, 217, 238–40, 267–68, 290–91, 313, 324–25, 339–41, 353–57, 362–64, 408–12, 418), to name just some examples.

I have warned Plaintiff multiple times that his incessant filings may result in sanctions, including dismissal of this action with prejudice.  (Doc. 145 at 15 ("Plaintiff is warned that if he continues to file unsupported motions without regard to the timing strictures provided for under the Federal Rules of Civil Procedure and this District's Local Rules, in any of the five consolidated actions, he risks being sanctioned."); Doc. 258 at 7 ("Plaintiff is warned again that his incessant filings, unsupported by meritorious arguments, may result in sanctions, including, among other things, the revocation of his e-filing privileges or the dismissal of all his cases."); Doc. 329 at 6 ("Plaintiff is warned again that he should not file frivolous motions, including to re-litigate issues and present arguments that were already addressed.").)  Judge Stein has also warned Plaintiff numerous times.  (Docs. 146 at 3–4 ("Plaintiff is hereby warned that, should he persist in his abusive litigation conduct, he may face sanctions including, among other things, monetary sanctions, the revocation of permission to file documents electronically, or dismissal of his lawsuits."); 218 at 9 (discussing Plaintiff's numerous filings); 425 at 14 ("Plaintiff's pattern of filings evinces a clear disregard, if not disdain, for the Court's orders.").)

On May 27, 2025, Plaintiff filed a "First Amended Complaint," filed purportedly "as a matter of right under Federal Rule of Civil Procedure 15(a)(1)(B)."  (Doc. 251 at 1.)  The next day, Plaintiff filed a "notice" clarifying that the First Amended Complaint "supersedes the original complaint," and therefore supposedly "renders pending motions to dismiss directed at the original complaint—as well as responsive briefing—moot."  (Doc. 256 at 1.)  However, the "First Amended Complaint" merely lists nine individual defendants that Plaintiff seeks to add to this action:  (1) Tenet's Chairman and Chief Executive Officer ("CEO") Saum Sutaria; (2) Tenet's Chief Legal Officer and General Counsel Tom Arnst; (3) JAMS' President and CEO Kimberly Taylor; (4) JAMS' General Counsel Sheri Flame Eisner; (5) JAMS arbitrator Michael

Massengale; (6) counsel for JAMS, including a law firm Gibbs & Bruns LLP and two individual attorneys Pete McDonald and Anthony N. Kaim; and (7) assistant attorney general Drew Harris from the Office of the Texas State Attorney General.  (Doc. 251 at 1–5.)  On September 15, 2025, Judge Stein issued an Opinion & Order striking the "First Amended Complaint" as improper under Federal Rule of Civil Procedure 15(a) and denying Plaintiff's motion to add parties.  (*See* Doc. 424.)

### B. *Motions to Dismiss*

On May 2, 2025, JAMS filed a motion to dismiss and an accompanying memorandum of law and declaration.  (Docs. 157–59.)  On May 4, 2025, Plaintiff opposed JAMS' motion in the form of a "motion to strike."  (Doc. 164.)

On May 19, 2025, Texas state judges Maria Aceves and David L. Evans filed a motion to dismiss and an accompanying memorandum of law.  (Docs. 211–12.)  On May 23, 2025, Plaintiff filed an opposition, (Doc. 232), and on July 13, 2025, Plaintiff filed another opposition brief, (Doc. 372).

On May 8, 2025, Pakis Defendants filed a motion to dismiss and an accompanying memorandum of law and declaration.  (Doc. 179–81.)  On May 26, 2025, Plaintiff filed four separate oppositions to the motion.  (Docs. 241–44.)

On June 24, 2025, the JAMS Individual Defendants filed a motion to dismiss and an accompanying declaration.  (Docs. 310, 311.)  In that declaration, counsel Howard I. Elman states that, in the event this Court allows the First Amended Complaint to "stand," the JAMS Individual Defendants "incorporate by reference JAMS's motion to dismiss."  (Doc. 311 ¶ 4.) On July 11, 2025, the JAMS Individual Defendants filed another motion to dismiss the First Amended Complaint and an accompanying declaration.  (Docs. 366–67.)  The JAMS Individual

Defendants reiterated their desire to "incorporate by reference JAMS's motion to dismiss." (Doc. 367 ¶ 4.)  On July 18, 2025, Plaintiff filed an opposition brief.  (Doc. 377.)

On June 30, 2025, the Valley Baptist Defendants filed a motion to dismiss and an accompanying memorandum of law.  (Docs. 330–31.)  On July 12, 2025, Plaintiff filed three opposition briefs, styled as "first dispositive motions to strike" the Valley Baptist Defendants' "unauthorized filings."  (Docs. 368–70.)  On July 23, 2025, Plaintiff filed four additional opposition briefs, styled as "second dispositive motions to strike" the Valley Baptist Defendants' "unauthorized filings."  (Docs. 384, 386–88.)  Plaintiff has repeatedly failed to comply with Local Civil Rule 7.1, which governs the form and length of briefs, motions, and other papers, and Rule 4 of my Individual Rules & Practices in Civil Cases, which governs motions and memoranda of law.  Nor has Plaintiff ever sought approval for more pages or leave to file additional briefs.

### C. *Motion for Sanctions*

On June 17, 2025, JAMS filed a motion for sanctions under Federal Rule of Civil Procedure 11 and the Court's inherent authority and an accompanying declaration and memorandum of law.  (Docs. 294–96.)  The declaration filed by JAMS includes copies of correspondence with Plaintiff whereby JAMS provided Plaintiff with the draft notice of motion for sanctions and their subsequent correspondence consistent with Rule 11(c)(2)'s safe harbor provision.  (Doc. 295.)  On June 17, 2025, Plaintiff filed a 6-page "opposition" to the motion for sanctions.  (Doc. 297.)  The following day, Plaintiff filed a 6-page "memorandum of law in opposition" to the motion for sanctions.  (Doc. 298.)

On September 4, 2025, counsel to the Valley Baptist Defendants sent an email to this Court requesting, among other things, an "Initial Case Management Conference" and (2)

argument regarding the pending motions.  (Doc. 420-1 at 2.)  Counsel also requested a pre-

motion conference regarding their anticipated motion for sanctions against Plaintiff.  (*Id.*)  That

same day, Plaintiff filed a "judicial notice," attaching that email, and arguing that counsel was

not authorized to appear in this action.  (*See* Doc. 420.)  On September 12, 2025, I issued an

order stating that I would not hold a conference on the pending motions or any anticipated

motion for sanctions.  (Doc. 421.)

### III.    **Legal Standards**

#### A.  *Rule 12(b)(1):  Failure to Establish Subject Matter Jurisdiction*

"Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a

claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the

district court lacks the statutory or constitutional power to adjudicate it."  *Morrison v. Nat'l*

*Austl. Bank Ltd*., 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks omitted), *aff'd*, 561

U.S. 247 (2010).  Although a district court resolving a motion to dismiss under Rule 12(b)(1)

"must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable

inferences in favor of the party asserting jurisdiction," "where jurisdictional facts are placed in

dispute, the court has the power and obligation to decide issues of fact by reference to evidence

outside the pleadings, such as affidavits," in which case "the party asserting subject matter

jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  *Tandon*

*v. Captain's Cove Marina of Bridgeport, Inc*., 752 F.3d 239, 243 (2d Cir. 2014) (citation

modified).  "A district court retains considerable latitude in devising the procedures it will follow

to ferret out the facts pertinent to jurisdiction."  *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir.

2003) (internal quotation marks omitted).

"Subject matter jurisdiction is a threshold issue and, thus, when a party moves to dismiss

under Rule 12(b)(1) and 12(b)(6), the court must address the 12(b)(1) motion first." *Coniglio v. Garland*, 556 F. Supp. 3d 187, 194 (E.D.N.Y. 2021) (citation modified); *see also Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990) ("[T]he court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." (internal quotation marks omitted)). Further, a court may dismiss an action sua sponte for lack of subject-matter jurisdiction. *Oscar Gruss & Son., Inc. v. Hollander*, 337 F. 3d 186, 193 (2d Cir. 2003); *see* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

### B.  *Rule 12(b)(2):  Failure to Establish Personal Jurisdiction*

Upon a defendant's "motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction." *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 349 (S.D.N.Y. 2014) (citing *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012)). At this preliminary stage, the plaintiff only needs to make a "*prima facie* showing" of jurisdiction, which "may be established solely by allegations." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013) (internal quotation marks omitted). In deciding the motion, a court may look beyond the pleadings to affidavits and other supporting materials, which are construed in the light most favorable to the plaintiff. *See Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001).

"When a defendant moves to dismiss under Rules 12(b)(2) and 12(b)(6), the court must resolve the Rule 12(b)(2) motion first." *Clean Vehicle Sols. Am. LLC v. Carrollton Exempted Vill. Sch. Dist. Bd. of Educ.*, No. 15-CV-1503, 2015 WL 5459852, at *3 (S.D.N.Y. Sept. 2, 2015)

(citing *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963); *Phillips v. Reed Grp., Ltd.*, 955 F. Supp. 2d 201, 224 (S.D.N.Y. 2013)).

## C.  *Rule 12(b)(6):  Failure to State a Claim*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  This standard demands "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable."  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).  A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).  Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions."  *Id.*

Even after *Twombly* and *Iqbal*, a "document filed *pro se* is to be liberally construed and . . . must be held to less stringent standards than formal pleadings drafted by lawyers."  *Boykin v. KeyCorp.*, 521 F.3d 202, 214 (2d Cir. 2008) (internal quotation marks omitted).  Further, pleadings of a pro se party should be read "to raise the strongest arguments that they suggest."  *Kevilly v. New York*, 410 F. App'x 371, 374 (2d Cir. 2010) (summary order) (internal quotation marks omitted).  "In keeping with these precepts, although Rule 12(b)(6) generally restricts a

court's consideration to the four corners of the complaint, pro se pleadings may be read together to determine whether a plaintiff conceivably could be entitled to relief." *Sathianathan v. Smith Barney, Inc.*, No. 04-CV-7122, 2006 WL 538152, at *13 (S.D.N.Y. Feb. 24, 2006) (collecting cases).

"Nonetheless, a litigant's pro se status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" *Olle v. Columbia Univ.*, 332 F. Supp. 2d 599, 607 (S.D.N.Y. 2004) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983)), *aff'd*, 136 F. App'x 383 (2d Cir. 2005). Indeed, dismissal of a pro se complaint is appropriate where a plaintiff fails to state a plausible claim supported by more than conclusory factual allegations. *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). In other words, the "duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (citation omitted).

### D. *Rule 11: Sanctions*

Federal Rule of Civil Procedure 11(b) provides that:

[b]y presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Fed. R. Civ. P. 11(b).  A pleading or motion violates Rule 11 if it is "frivolous, legally

unreasonable, or factually without foundation, even though not signed in subjective bad faith."

*Wechsler v. Hunt Health Sys., Ltd.*, 216 F. Supp. 2d 347, 356 (S.D.N.Y. 2002).  Rule 11

sanctions may also be imposed where an attorney's "behavior was objectively unreasonable."

*Corsini v. Bloomberg*, 26 F. Supp. 3d 230, 247 (S.D.N.Y. 2014) (internal quotation marks

omitted), *aff'd in part, appeal dismissed in part sub nom. Corsini v. Nast*, 613 F. App'x 1 (2d

Cir. 2015) (summary order).  If a party is found to have violated Rule 11, they may be subject to

sanctions.  Fed. R. Civ. P. 11(c).  Rule 11 sanctions may apply to pro se litigants.  *See*

*Maduakolam v. Columbia Univ.*, 866 F.2d 53, 56 (2d Cir. 1989) ("While it is true that Rule 11

applies both to represented and *pro se* litigants, the court may consider the special circumstances

of litigants who are untutored in the law.").

  Rule 11 also sets forth certain procedural requirements.  Rule 11 requires that "[a] motion

must be served under Rule 5, but it must not be filed or be presented to the court if the

challenged paper . . . is withdrawn or appropriately corrected within 21 days after service."  Fed.

R. Civ. P. 11(c)(2).  This provision is commonly known as the "safe harbor provision."

  Courts have wide discretion in deciding when sanctions are appropriate.  *See Ipcon*

*Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012) ("[S]anctions under

Rule 11 are discretionary, not mandatory.").  Rule 11 sanctions should be granted with caution

and applied only when "a particular allegation is utterly lacking in support."  *In re Highgates*

*Equities, Ltd.*, 279 F.3d 148, 154 (2d Cir. 2002) (internal quotation marks omitted).

  After determining that sanctions are appropriate, courts wield "'significant discretion in

determining what sanctions, if any, should be imposed for a violation,' bearing in mind 'that the

sanctions should not be more severe than reasonably necessary to deter repetition of the conduct

by the offending person or comparable conduct by similarly situated persons.'" *E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 179 (S.D.N.Y. 2008) (quoting Fed. R. Civ. P. 11 Advisory Committee Notes).

IV.    **Discussion**

A.  *Applicable Law*

1.  **The *Colorado River* Abstention Doctrine**

Under *Colorado River*, "a federal court may abstain from exercising jurisdiction when parallel state-court litigation could result in comprehensive disposition of litigation and abstention would conserve judicial resources." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist*., 673 F.3d 84, 100 (2d Cir. 2012) (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817–18 (1976)) (internal quotation marks omitted). "Where a federal court has subject matter jurisdiction, it has a virtually unflagging obligation to exercise that jurisdiction, even if an action concerning the same matter is pending in state court," *Mochary v. Bergstein*, 42 F.4th 80, 84 (2d Cir. 2022) (internal quotation marks omitted), so *Colorado River* abstention applies only in "exceptional circumstances," *Colorado River*, 424 U.S. at 813 (internal quotation marks omitted); *see also Andrea Theatres, Inc. v. Theatre Confections, Inc*., 787 F.2d 59, 62–63 (2d Cir. 1986) ("Absent broad state court jurisdiction that would enable the state court to dispose of the entire matter, including the issues before the federal court, abstention could hardly be justified on grounds of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" (alteration in original) (quoting *Colorado River*, 24 U.S. at 817)).

Under the *Colorado River* doctrine, courts must first make a threshold determination that the federal and state lawsuits are parallel, meaning that they "are essentially the same; that is,

there is an identity of parties, and the issues and relief sought are the same." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Karp*, 108 F.3d 17, 22 (2d Cir. 1997). This means that both actions involve "substantially the same parties . . . contemporaneously litigating substantially the same issue in another forum." *Niagara*, 673 F.3d at 100 (internal quotation marks and citation omitted). However, "[p]erfect symmetry of parties and issues is not required," and exists "where there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Shields v. Murdoch*, 891 F. Supp. 2d 567, 577 (S.D.N.Y. 2012).

After determining that the federal and state actions are parallel, courts then "consider six factors, 'with the balance heavily weighted in favor of the exercise of jurisdiction.'" *Niagara*, 673 F.3d at 100 (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)). These six factors are:

> (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

*Id.* at 100–101 (quoting *Woodford v. Cmty. Action Agency of Greene Cnty., Inc.*, 239 F.3d 517, 522 (2d Cir. 2001)).

In addition to these factors, the Supreme Court has "found 'considerable merit' in the idea 'that the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation under *Colorado River*.'" *Telesco v. Telesco Fuel & Masons' Materials, Inc.*, 765 F.2d 356, 363 (2d Cir. 1985) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 17 n.20). Indeed, courts in this Circuit have considered the vexatious nature of litigation as a factor in the *Colorado River* analysis. *See Abe*

21

*v. New York Univ.*, No. 14-CV-9323, 2016 WL 1275661, at *6 (S.D.N.Y. Mar. 30, 2016)

(collecting cases).

### 2. Personal Jurisdiction

Courts employ a two-step analysis in determining if personal jurisdiction exists.

*Beskrone v. Berlin*, 656 F. Supp. 3d 496, 506 (S.D.N.Y. 2023). In the first step, there must be a

statutory basis for asserting personal jurisdiction over each defendant based on a state's long-arm

statute. *Id.* (citing 31 U.S.C. § 3732(a); *Eades v. Kennedy, PC L. Offs.*, 799 F.3d 161, 168 (2d

Cir. 2015)). Section 301 of the New York Civil Practice Law and Rules, New York's long-arm

statute, can confer general jurisdiction where "a company has engaged in such a continuous and

systematic course of doing business in New York that a finding of its presence in New York is

warranted." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014)

(citation modified). The CPLR also confers specific jurisdiction "depending on the foreign

defendant's contacts with the state in connection with the cause of action." *Beskrone*, 656 F.

Supp. 3d at 506 (citing CPLR § 302(a)(1)). If such a statutory basis is established, a plaintiff

must meet the requirements of step two.

In the second step, plaintiff must "demonstrate that the exercise of personal jurisdiction

comports with due process." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 81–82

(2d Cir. 2018). The due process inquiry involves another two-part inquiry regarding "minimum

contacts" and "whether the assertion of personal jurisdiction would comport with fair play and

substantial justice." *Id.* (citation omitted). Regarding the minimum-contacts analysis, "a

distinction is made between 'specific' jurisdiction and 'general' jurisdiction." *SPV Osus Ltd. v.

UBS AG*, 882 F.3d 333, 343 (2d Cir. 2018) (quoting *Met. Life Ins. Co. v. Robertson–Ceco Corp.*,

84 F.3d 560, 567 (2d Cir. 1996)). "Specific jurisdiction exists when a court exercises personal

jurisdiction over a defendant in a suit arising out of or related to the defendant's contact with the forum, and general jurisdiction is based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts." *In re Platinum & Palladium Antitrust Litig.*, 61 F.4th 242, 269 (2d Cir. 2023) (internal quotation marks omitted).

Once a plaintiff has demonstrated the requisite minimum contacts between the defendant and the forum state, a court is required to continue to whether the assertion of jurisdiction "comports with traditional notions of fair play and substantial justice," i.e., "reasonableness." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 99 (2d Cir. 2000). Whether the exercise of specific jurisdiction is reasonable in a particular case depends on, among other things, "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Salomon Smith Barney, Inc. v. McDonnell*, 201 F.R.D. 297, 305 (S.D.N.Y. 2001) (citing *See Chaiken v. VV Publ'g Corp.*, 119 F.3d 1018, 1028 (2d Cir.1997)).

Notably, the Second Circuit has stated that the plaintiff "must make allegations establishing jurisdiction with some 'factual specificity' and cannot establish jurisdiction through conclusory assertions alone." *Cont'l Indus. Grp. v. Equate Petrochemical Co.*, 586 F. App'x 768, 769 (2d Cir. 2014) (summary order) (quoting *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998)).

### B.  *Application*

Because Plaintiff asserts different factual allegations for each defendant, I address each defendant separately.

### 1.  Pakis Defendants

Plaintiff names the Pakis Defendants—which comprise Pakis, Giotes, Burleson & Deaconson, P.C. ("Pakis Law"), Michael Cosby, Marcus Mataga, and David N. Deaconson—as defendants in both the Lead Case and the Pakis Action.  (*See* Lead Compl. 28–30; *see generally* Pakis Compl.)  In the Lead Case, Plaintiff accuses the Pakis Defendants of various RICO predicates, all stemming from Pakis Defendants' representation of Plaintiff in the Texas Actions.  (*See* Lead Compl. 48–51.)  In the Pakis Action, Plaintiff alleges legal malpractice, negligence, breach of fiduciary duty, and violations of the FAA and Plaintiff's due process rights under 42 U.S.C. § 1983.  (Pakis Compl. 1.)

Pakis Defendants move to dismiss based on Federal Rules of Civil Procedure 12(b)(2), (b)(5), and (b)(6).  (Doc. 180.)  First, Pakis Defendants claim that I lack personal jurisdiction.  (*Id.* at 10–13.)  Second, they argue that service was improper or untimely, at least as of the date of their motion.  (*Id.* at 14–15.)  Finally, they contend that Plaintiff failed to state a claim in both the Lead Case and the Pakis Action.  (*Id.* at 15–22.)  Here, Plaintiff's claims are dismissed for lack of personal jurisdiction and, in the alternative, failure to state a claim.

### a.  Personal Jurisdiction

Plaintiff fails to establish personal jurisdiction over the Pakis Defendants, in either the Lead Case or the Pakis Action, under Rule 12(b)(2).  As an initial matter, Plaintiff alleges no facts to establish general or specific jurisdiction over any of the Pakis Defendants.  Plaintiff, in fact, acknowledges that Pakis Law and its attorneys are located in Waco, Texas.  (Lead Compl.

28; Pakis Compl. ¶ 8; *see also id.* ¶ 5 ("Defendants are Texas-based attorneys and law firms.");

*id.* ¶ 8 (describing Defendants Cosby, Mataga, and Deaconson as attorneys "licensed in Texas").)

Indeed, Plaintiff's allegations all concern Pakis Defendants' representation of Plaintiff in the

Texas Actions and say nothing about any representation or any other conduct in New York.

Plaintiff accordingly fails to establish general or specific jurisdiction.  (*See generally* Pakis

Compl.)  Plaintiff also fails to allege any contacts that the Pakis Defendants had with New York,

let alone "minimum contacts," or that they "purposefully availed themselves of the privilege of"

operating in New York.  *See Newman v. Jewish Agency for Israel*, No. 16-CV-7593, 2017 WL

6628616, at *3 (S.D.N.Y. Dec. 28, 2017); *see also Musial v. Donohue*, 225 A.D.3d 1164, 1165

(4th Dep't 2024) (dismissing legal malpractice action against Texas attorneys where "plaintiffs

failed to show that the [Texas attorney] defendants purposefully availed themselves of the

privilege of conducting activities in New York").  In short, Plaintiff's allegations are devoid of

any facts establishing personal jurisdiction for Pakis Defendants.

Plaintiff's theory for personal jurisdiction and venue is that (1) Plaintiff "resides in this

district" and (2) "due to Defendants' failures" in their representation, he continues to suffer legal

harms "while residing in New York."  (Pakis Compl. ¶ 6.)  Plaintiff continues to assert this

theory in his opposition brief by arguing that personal jurisdiction is proper because the Pakis

Defendants' alleged misconduct "led to ongoing harm while Plaintiff resided in New York."

(Doc. 241 at 3.)  However, harm under Section 302 "does not occur within the state simply

because the plaintiff is a resident."  *Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir. 1990).

Moreover, Plaintiff's "alleged injuries did not occur within New York but, rather, in Texas,

where the [Texas attorney] defendants' alleged legal malpractice occurred."  *Musial*, 225 A.D.3d

at 1165; *see also Eastboro Found. Charitable Tr. v. Penzer*, 950 F. Supp. 2d 648, 665 n.25

(S.D.N.Y. 2013) ("Since any alleged acts of legal malpractice took place in Florida . . . it cannot

be said that injury was sustained in New York." (quoting *Weiss v. Greenburg, Traurig, Askew,*

*Hoffman, Lipoff, Quentel & Wolff, P.A.*, 446 N.Y.S.2d 447, 449 (3d Dep't 1981)).)  In sum,

Plaintiff's allegations, even taken collectively among all the complaints or petitions, are devoid

of any facts establishing personal jurisdiction for the Pakis Defendants.  Therefore, because I

lack personal jurisdiction over the Pakis Defendants, their motion to dismiss Plaintiff's claims in

the Lead Case and the Pakis Action is GRANTED.

### b.  Failure to State a Claim

In the alternative, Plaintiff's claims are dismissed for failure to state a claim under

Rule 12(b)(6).

### 1.  Lead Case

In the Lead Case, Plaintiff accuses Pakis Defendants of violating the civil RICO statute,

specifically 18 U.S.C. § 1962(c) and (d), and alleges five predicate acts:  (1) obstruction of

justice, (2) conspiracy to commit fraud, (3) fraud upon the court, (4) wire fraud, and (5)

fraudulent legal fees.  (Lead Compl. 2, 48.)  However, Plaintiff fails to plead the existence of an

"enterprise," so his civil RICO claim is doomed.

To plead a civil RICO claim, a plaintiff must show:  "(1) a substantive RICO violation

under 18 U.S.C. § 1962, (2) injury to the plaintiff's business or property, and (3) that such injury

was by reason of the substantive RICO violation."  *Sykes v. Mel S. Harris & Assocs. LLC*, 780

F.3d 70, 83 (2d Cir. 2015) (citation modified).  To plead a substantive RICO violation, a plaintiff

must allege:  "(1) that the defendants (2) through the commission of two or more acts (3)

constituting a pattern (4) of racketeering activity (5) directly or indirectly invests in, or maintains

an interest in, or participates in (6) an enterprise (7) the activities of which affect interstate or

foreign commerce." *MinedMap, Inc. v. Northway Mining, LLC*, No. 21-1480-CV, 2022 WL 570082, at *1 (2d Cir. Feb. 25, 2022) (summary order) (internal quotation marks omitted).

Here, Plaintiff fails to plead, at a minimum, the existence of an "enterprise."  Although an enterprise need not be one formal group, an enterprise's individual entities must be "associated together for a common purpose of engaging in a course of conduct" so as to constitute a "continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981).  These members must "share a common purpose to engage in a particular fraudulent course of conduct" and cooperate in furtherance of that goal. *First Cap. Asset Mont. Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004).

Plaintiff's sprawling 60-page complaint (supplemented with approximately 1,743 pages of exhibits) fails to plead the existence of an enterprise.  Instead, the complaint is a hodgepodge of conclusory accusations against a parent company and two of its subsidiaries (and their attorneys), the arbitration body JAMS, members of the Texas Judiciary, the Texas State Attorney General, and Plaintiff's own former counsel.  The complaint contains no information about "the hierarchy, organization, and activities of the alleged enterprise, from which the court could fairly conclude that its members functioned as a unit." *Cont'l Fin. Co. v. Ledwith*, No. 08-CV-7272, 2009 WL 1748875, at *5 (S.D.N.Y. June 22, 2009).  Plaintiff makes vague and conclusory accusations that Defendants worked together or conspired together, but that "is not enough if they merely acted together to commit the wrong." *Wild Edibles Inc. v. Indus. Workers of World Loc. 460/640*, No. 07-CV-9225, 2008 WL 4548392, at *1 (S.D.N.Y. Oct. 9, 2008) (internal quotation marks omitted).  "Lack of proof of such an independently existing separate enterprise dooms a RICO claim." *Id.*  Further, mere descriptions of each defendant's "purported roles in the enterprise does not cure" a deficiency where "there was no plausible basis to infer that its

27

members formed an ongoing organization and acted on its behalf." *Heinrich v. Dean*, 655 F.

Supp. 3d 184, 191 (S.D.N.Y. 2023). Plaintiff's complaint is filled with legal conclusions but

lacks factual allegations to establish a RICO enterprise. *See Lubin v. Dubin*, No. CV 13-6619,

2014 WL 794313, at *7 (E.D.N.Y. Feb. 24, 2014) ("The conclusory pleading that Defendants

each played a part in perpetrating a fraud on Plaintiffs is not enough to satisfy RICO's

requirement of an organized, separate enterprise."). Because I find that Plaintiff has failed to

plead the existence of a RICO enterprise, I need not decide whether he has met the other

elements of a civil RICO claim. Therefore, the motion of the Pakis Defendants to dismiss

Plaintiff's claims in the Lead Case for failure to state a claim is GRANTED. [12]

### 2. Pakis Action

In the Pakis Action, Plaintiff asserts five causes of action against Pakis Defendants:

(1) violation of due process under 42 U.S.C. § 1983, (2) violation of the FAA, (3) breach of

fiduciary duty, (4) negligence, and (5) legal malpractice. (Pakis Compl. at 1.) Each of these

causes of action must be dismissed.

The first four causes of actions are easily dismissed. First, the Pakis Defendants were

Plaintiff's private attorneys, and therefore "cannot be sued under § 1983." *Peterec-Tolino v.*

*New York*, 364 F. App'x 708, 711 (2d Cir. 2010) (summary order) (citing *American Mfrs. Mut.*

*Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)). Second, Plaintiff cannot sue the Pakis

Defendants simply because they "failed to enforce arbitration." (Pakis Compl. ¶ 20.) The FAA

"does not create a cause of action in the relevant sense" because it "'bestows no federal

jurisdiction but rather requires an independent jurisdictional basis' over such petitions" to

---

[12] For the same reasons, the Pakis Defendants' motion to dismiss is also granted as to all other Defendants, and all claims in the Lead Case are DISMISSED.

confirm, vacate, or modify arbitral awards. *See Trs. of New York State Nurses Ass'n Pension Plan v. White Oak Glob. Advisors, LLC*, 102 F.4th 572, 594 (2d Cir. 2024) (quoting *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581–82 (2008)). The FAA does not give this kind of private right of action to a client who is unhappy with his attorney's counsel in relation to arbitration. Finally, the claims for negligence and breach of fiduciary duty—which arise from the same set of facts—are duplicative of the legal malpractice claim and are therefore dismissed. *See, e.g.*, *Schutz v. Kagan Lubic Lepper Finkelstein & Gold LLP*, 552 F. App'x 79, 80 (2d Cir. 2014) (summary order) ("The district court properly dismissed [plaintiff's] claim for breach of fiduciary duty as duplicative of their claim for legal malpractice."); *Nordwind v. Rowland*, 584 F.3d 420, 424 (2d Cir. 2009) (affirming dismissal of negligence claim as duplicative of legal-malpractice claim).

Plaintiff's sole remaining claim for legal malpractice accuses Defendants of failing to "challenge jurisdiction" in the Texas Actions, make certain arguments regarding arbitration waivers and dismissal, use Texas Civil Procedure Rules, and "[p]revent state court rulings without legal authority." (Pakis Comp. ¶ 22.)

A threshold issue is what law applies for the claim of legal malpractice. Because this claim is based on diversity jurisdiction, I "must apply the choice of law analysis of the forum state." *See Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 582 (2d Cir. 2006). "In New York, the forum state in this case, the first question to resolve in determining whether to undertake a choice of law analysis is whether there is an actual conflict of laws." *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998) (citation omitted). Although the Pakis Defendants' representation of Plaintiff occurred in Texas, the Pakis Defendants apply—and Plaintiff does not dispute—New York law. (Doc. 180 at 15 n.3

(applying New York law), Docs. 241–44 (failing to dispute that New York law applies).)

Moreover, there is no conflict between New York and Texas law with respect to legal-

malpractice claims. *Compare Rogers v. Zanetti*, 518 S.W.3d 394, 400 (Tex. 2017) ("To prove a

legal-malpractice claim, the client must establish that: (1) the lawyer owed a duty of care to the

client; (2) the lawyer breached that duty; and (3) the lawyer's breach proximately caused damage

to the client."), *with Buxbaum v. Robert C. Gottlieb & Assocs., PLLC*, No. 25-CV-509, 2025 WL

2161654, at *4 (S.D.N.Y. July 30, 2025). Accordingly, I apply New York law. *Cf. Rubens v.*

*Mason*, 387 F.3d 183, 189 n.6 (2d Cir. 2004) (affirming application of New York law where

"both parties applied New York law" and "no conflict exists between the law of New York and

[other state] with respect to legal malpractice actions"); *see also Fireman's Fund Ins. Co. v.*

*OneBeacon Ins. Co.*, 49 F.4th 105, 112 n.10 (2d Cir. 2022) (applying New York law where

"[t]he district court applied New York law to the present dispute, and on appeal the parties do not

object to that choice of law").

  "To prevail on a legal malpractice claim under New York law, a plaintiff must establish:

'(1) attorney negligence; (2) which is the proximate cause of a loss; and (3) actual damages.'"

*Buxbaum.*, 2025 WL 2161654, at *4 (quoting *Nordwind*, 584 F.3d at 429). With regard to

attorney negligence, a plaintiff must allege "that an attorney's conduct 'fell below the ordinary

and reasonable skill and knowledge commonly possessed by a member of his profession.'"

*Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (quoting *Grago*

*v. Robertson,* 370 N.Y.S.2d 255 (1975)).

  Plaintiff fails to allege attorney negligence because he does not establish that any of the

accused misconduct "fell below the ordinary and reasonable skill and knowledge commonly

possessed by" other members of the bar. *Id.* at 337. Even assuming, in Plaintiff's favor, his

former counsel exhibited an "error of judgment" or chose "one among several reasonable courses of action," such allegations are insufficient to establish attorney negligence. *Id.* In fact, the Complaint undercuts Plaintiff's arguments of negligence. For example, the Complaint includes a judicial order indicating that the parties in the Texas Actions, including Plaintiff, agreed to move for referral to arbitration and to stay the proceedings. (Pakis Compl. 114–15.) The Pakis Defendants, as Plaintiff's attorneys, signed the joint motion to refer the matter to arbitration on Plaintiff's behalf. This was binding on Plaintiff so he cannot claim that the Pakis Defendants "failed to enforce arbitration" when he agreed to it. [13] As another example, the Complaint includes an email from Defendant Mataga at Pakis Law explaining the legal reasons why a motion to dismiss was not advisable. (*Id.* at 122.) Even construing the Complaint liberally, the Pakis Defendants seemed to be making strategic decisions—whether to make certain arguments related to arbitration or jurisdiction, or whether to employ certain discovery tactics.

Plaintiff appears to be unhappy with the results of the representation he received during the Texas Actions. However, such "'dissatisfaction with strategic choices' will not support a malpractice claim as a matter of law." *Stonewell Corp. v. Conestoga Title Ins. Co.*, 678 F. Supp. 2d 203, 209 (S.D.N.Y. 2010) (quoting *Bernstein v. Oppenheim & Co., P.C.*, 554 N.Y.S.2d 487, 490 (1990)). Plaintiff's vague allegations are therefore insufficient to survive dismissal. *See, e.g.*, *Auguste v. Radlin*, No. 24-CV- 921, 2025 WL 795999, at *8 (S.D.N.Y. Feb. 11, 2025) (dismissing legal-malpractice claim where plaintiff failed to allege negligence), *report and*

---

[13] Under Texas law, "[t]he general rule is that the relationship of attorney and client is one of agency" such that "the omissions, as well as the commissions, of an attorney are to be regarded as the acts of the client whom he represents; and his neglect is equivalent to the neglect of the client himself." *Texas Emp. Ins. Ass'n v. Wermske*, 349 S.W.2d 90, 93 (Tex. 1961). "The client may also be bound by the attorney's actions done in the good faith belief that he continued to represent the client." *In re Users Sys. Servs., Inc.*, 22 S.W.3d 331, 335 (Tex. 1999) (citation omitted). Plaintiff is bound by the signature of his attorneys, who signed on his behalf. *Biggs v. U. S. Fire Ins. Co.*, 611 S.W.2d 624, 629 (Tex. 1981) ("When an agent acts within the scope of this apparent authority, the acts bind the principal as though the agent actually possessed such authority.").

*recommendation adopted*, 2025 WL 722712 (S.D.N.Y. Mar. 6, 2025).  Because I find that

Plaintiff has failed to plead attorney negligence, I need not decide whether he has met the other

elements of a legal-malpractice claim.  The Pakis Defendants' motion to dismiss for failure to

state a claim is GRANTED.

The Pakis Defendants' motion to dismiss is GRANTED for lack of personal jurisdiction,

and in the alternative, failure to state a claim.  Plaintiff's claims against the Pakis Defendants in

the Lead Case (No. 25-CV-1683) are DISMISSED.  The Pakis Action (No. 25-CV-1692) is

DISMISSED in its entirety.

### 2. The Valley Baptist Defendants

The Valley Baptist Defendants—which comprise Tenet, VHS, and Valley Baptist—move

to dismiss based on Federal Rules of Civil Procedure 12(b)(1), (b)(2), (b)(3), (b)(5), and (b)(6).

(Doc. 331.)  First, the Valley Baptist Defendants claim that I lack personal jurisdiction.  (*Id.* at 8–

12.)  Second, they argue that venue is improper.  (*Id.* at 12–13.)  Third, they argue that the

complaint in the Lead Case fails to state a RICO claim.  (*Id.* at 13–19.)  Fourth, they contend that

I lack subject-matter jurisdiction under the *Colorado River* and the *Younger* abstention doctrines,

and that Plaintiff lacks standing to assert claims for breach of the FAA and for obstruction of

justice.  (*Id.* at 19–22.)  Fifth, they argue that the complaints in the VHS Action and Valley

Baptist Action fail to state a claim.  (*Id.* at 22–25.)  Finally, the Valley Baptist Defendants claim

that Plaintiff failed to properly serve Tenet with the complaint in the Valley Baptist Action.  (*Id.*

at 25.)

Here, Plaintiff's claims against the Valley Baptist Defendants are dismissed for lack of

personal jurisdiction and under the *Colorado River* abstention doctrine.  Plaintiff's claims in the

Lead Case are also dismissed, in the alternative, for failure to state a claim.

a.  Personal Jurisdiction

Plaintiff's claims against the Valley Baptist Defendants are dismissed for lack of personal jurisdiction under Rule 12(b)(2).  As an initial matter, Plaintiff alleges no facts in any complaint or petition in any of the five consolidated actions regarding VHS or Valley Baptist to establish general or specific jurisdiction.  Plaintiff, in fact, acknowledges that Valley Baptist and VHS are both "based in Texas."  (Valley Baptist Pet. ¶ 6; VHS Pet. ¶ 5(a).)  Indeed, Plaintiff fails to allege any contacts that VHS or Valley Baptist had with New York, let alone "minimum contacts," or that they "purposefully availed themselves of the privilege of" operating in New York.  *See Newman*, 2017 WL 6628616, at *3 (finding no minimum contacts where there were no allegations that defendants "purposefully availed themselves of the privilege of conducting activities within New York" (citation modified)), *aff'd sub nom. Eliahu v. Jewish Agency for Israel*, 919 F.3d 709 (2d Cir. 2019).  In short, Plaintiff's allegations are devoid of any facts establishing personal jurisdiction for VHS or Valley Baptist.

Plaintiff also fails to establish personal jurisdiction over Tenet.  First, Plaintiff presents no such factual allegations regarding general jurisdiction as to Tenet and indeed concedes that Tenet is "based in Texas."  (*See* Valley Baptist Pet. ¶ 6; VHS Pet. ¶ 5(a) (same); *see also* Lead Compl. at 18 (showing Tenet's address to be in Dallas, Texas).)  Plaintiff merely states that Tenet "operates nationally and engages in commerce that affects multiple states," and "has business dealings that extend into New York." (Lead Compl. 6–7.)  However, these vague and conclusory allegations are insufficient to establish that Tenet's connections with New York were "so continuous and systematic as to render [Tenet] essentially at home" in New York.  *See Daimler AG v. Bauman*, 571 U.S. 117, 127, (2014) (internal quotation marks omitted).  Allegations that a corporate defendant merely "do[es] business" in New York is "conclusory and

insufficient for purposes of establishing personal jurisdiction." *Franklin v. X Gear 101, LLC*, No. 17-CV-6452, 2018 WL 4103492, at *4 (S.D.N.Y. Aug. 28, 2018) (collecting cases); *see also Klutz v. Yagoozon, Inc.*, No. 16-CV-4538, 2016 WL 5806902, at *2 (S.D.N.Y. Sept. 20, 2016) (no personal jurisdiction where "plaintiff merely alleges in wholly conclusory fashion that defendant 'does business in New York'"); *SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 168 (S.D.N.Y. 2015) (no personal jurisdiction where plaintiff merely alleges that defendant "has offices in New York, conducts substantial business here, has a registered agent here, and has been the subject of many suits in New York courts"), *aff'd*, 882 F.3d 333 (2d Cir. 2018).

Nor has Plaintiff made any allegations to demonstrate specific jurisdiction, which "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (internal quotation marks omitted).  In New York, "[s]pecific jurisdiction is governed by CPLR § 302(a), which empowers New York courts to exercise jurisdiction over non-domiciliaries when the causes of action in the case 'aris[e] from' one of four specific kinds of contact with New York." *Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792, 801 (S.D.N.Y. 2015), *aff'd*, 660 F. App'x 43 (2d Cir. 2016).  None of Plaintiff's allegations regarding Tenet's conduct arise from any of Tenet's supposed contacts with New York.  Plaintiff acknowledges that all the alleged conduct—such as collusion, judicial misconduct, and fraud— occurred in Texas.  (*See* Valley Baptist Pet. ¶ 4; VHS Pet. ¶ 5(c).)  Instead, Plaintiff argues that the connection to New York is that he "continues to suffer harm" by Defendants "while residing in New York."  (VHS Pet. ¶ 5(b); *see also* Valley Baptist Pet. ¶ 6 (similar).)  As discussed, however, harm under Section 302 "does not occur within the state simply because the plaintiff is a resident."  *Mareno*, 910 F.2d at 1046.  Plaintiff's vague allegations that Tenet "operates nationally" or "has business dealings that extend into New York" are also insufficient to

establish specific jurisdiction. *See Cullum v. Wyndham Hotels & Resorts Corp.*, No. 22-CV-09700, 2024 WL 552494, at *9 (S.D.N.Y. Feb. 12, 2024) ("[T]he vague assertion that [defendant] has businesses in New York is not legally sufficient to satisfy [plaintiff's] burden on the issue of jurisdiction."), *reconsideration denied*, 2024 WL 3104517 (S.D.N.Y. June 24, 2024), *aff'd*, No. 24-1949, 2025 WL 2020942 (2d Cir. Apr. 10, 2025).

Plaintiff's argument that Tenet is listed on the New York Stock Exchange is also unavailing. (Valley Baptist Pet. ¶ 6.) The Second Circuit has made clear that a foreign corporation's "activities necessary to maintain a stock exchange listing . . . without more . . . are insufficient to confer jurisdiction." *Wiwa*, 226 F.3d at 97; *see also Stormhale, Inc. v. Baidu.com, Inc.*, 675 F. Supp. 2d 373, 376 (S.D.N.Y. 2009) (holding that defendant's "mere listing on NASDAQ and ancillary contacts with New York related to [the] listing" do not confer personal jurisdiction).

Plaintiff's allegations, even taken collectively among all the complaints and petitions, fail to establish either general or specific jurisdiction over the Valley Baptist Defendants. In addition, none of Plaintiff's seven opposition briefs, styled as "motions to strike," address his fatal personal-jurisdiction infirmities. (Docs. 368–70, 384, 386–88.) Accordingly, the Valley Baptist Defendants' motion to dismiss is GRANTED for lack of personal jurisdiction. [14]

---

[14] Although I cannot sua sponte dismiss Plaintiff's claims for lack of personal jurisdiction against the other named Defendants who have not been served at this time, *see Sutton v. Tapscott*, 120 F.4th 1115, 1125 (2d Cir. 2024) (holding that the district court erred in sua sponte dismissing Plaintiff's claim against a non-appearing Defendant for lack of personal jurisdiction without giving Plaintiff notice and opportunity to establish the court's personal jurisdiction), Plaintiff also apparently fails to establish personal jurisdiction over the other named Defendants related to the Valley Baptist Defendants, including those named in the original complaint: Hughes Health Law and attorney Will Hughes, both of which have been named as agents of Tenet. (Lead Compl. at 19–20.) Plaintiff fails to assert any factual allegations regarding their connection to New York whatsoever and therefore does not establish personal jurisdiction. However, none have been properly served, and they have not appeared in this action, so I cannot dismiss Plaintiff's claims against them sua sponte for lack of personal jurisdiction. *Id.* Nevertheless, Plaintiff's claims against them are dismissed under the *Colorado River* abstention doctrine and for failure to state a claim.

b.  The *Colorado River* Abstention Doctrine

In the alternative, Plaintiff's claims against Valley Baptist Defendants are dismissed under *Colorado River*.  Plaintiff has notably failed to address Valley Baptist Defendants' arguments under *Colorado River* in any of his numerous opposition briefs.  (Docs. 368–70, 384, 386–88.)

1.  The Federal and State Actions are Parallel

The threshold inquiry is whether the state cases are parallel to the federal action.  Here, the federal cases have longstanding parallel state actions in Texas.  The Valley Baptist Action and the VHS Action each relate respectively to the two actions that were consolidated in the Texas Actions, and the contracts that Plaintiff purportedly had with Valley Baptist and with VHS.  First, the federal and state actions involve "substantially the same parties."  The Texas Actions were suits between Plaintiff and VHS, (Doc. 1-1, at 9), and between Plaintiff and Valley Baptist, (Doc. 1-2 at 11).  The fact that Tenet was not a defendant in the Texas Actions is not dispositive because parallelism does not require the parties to be "strictly identical" because "complete identity of parties is not required."  *Pabco Constr. Corp. v. Allegheny Millwork PBT*, No. 12-CV-7713, 2013 WL 1499402, at *2 (S.D.N.Y. Apr. 10, 2013) (internal quotation marks omitted).

Next, the federal and state cases involve substantially similar claims and issues.  In the federal cases, Plaintiff makes allegations of constitutional violations and fraud and misrepresentation, (Valley Baptist Pet. ¶¶ 17–21), and breach of contract and fraud upon the court, (VHS Pet. ¶ 1), to name a few.  These federal claims are admittedly not identical to those in the Texas Actions.  However, courts look beyond the literal causes of action and look to the "core of the claims" at issue, and whether the state courts "will necessarily have to address" the

36

various issues presented in the federal claim. *See, e.g.*, *Gerschel v. Bank of Am., N.A.*, No. 20-CV-5217, 2022 WL 504229, at *3 (S.D.N.Y. Feb. 18, 2022) (finding federal and state proceedings to be parallel under *Colorado River*). In other words, "[c]ourts have found parallelism where claims in concurrent state and federal proceedings contain similar factual overlap." *Iacovacci v. Brevet Holdings, LLC*, 437 F. Supp. 3d 367, 376 (S.D.N.Y. 2020) (collecting cases).

Here, the federal and state cases are substantially the same because Plaintiff is essentially making the same arguments here—dressed up in these new causes of action—as he did in the Texas Actions—namely, that the Texas courts or JAMS lacked jurisdiction to hear his cases, that he was not a party to a contract, and that certain parties waived arbitration. Plaintiff's attempt to characterize any and all arguments raised against him in the Texas Actions by Defendants as fraud, misrepresentation, fraud upon the court, constitutional violations, and obstruction of justice in this action is unavailing. As an initial matter, Plaintiff's assertion of federal RICO claims in the Lead Case do not preclude a finding of parallelism. *See, e.g.*, *Krondes v. Nationstar Mortg., LLC*, No. 17-CV-4974, 2018 WL 2943774, at *3 (S.D.N.Y. June 12, 2018) (finding parallel proceedings despite addition of RICO claims in federal action), *aff'd*, 789 F. App'x 913 (2d Cir. 2020); *Great S. Bay Med. Care, P.C. v. Allstate Ins. Co.*, 204 F. Supp. 2d 492, 497 (E.D.N.Y. 2002) (same).

Indeed, the "core of the claims" of Plaintiff's causes of action in the Valley Baptist Action and the VHS Action are the same as those in the Texas Actions. In fact, Plaintiff has filed multiple updates with regard to the underlying Texas Actions and arbitration that support this point: (1) a copy of an arbitration award dated August 4, 2025 that was issued by JAMS (the "Arbitration Award"), (Doc. 438-1); (2) a copy of the Cameron County, Texas court order

granting VHS and Valley Baptist's application to confirm the arbitration award, (Doc. 443-1);

(3) a copy of the Texas state court's final judgment entering the approximately $762,000

arbitration award (the "State Court Judgment"), (Doc. 453-1 at 2); and (4) a copy of Plaintiff's

notice of appeal to the Texas Court of Appeals, filed on October 13, 2025 ("Notice of Appeal"),

(Docs. 452-1, 452-2).[15]

The Arbitration Award, which was supported by the state court's confirmation of the

award and the State Court Judgment, found, among other things, that:  (1) Plaintiff breached the

VHS Contract and is liable for approximately $640,000; (2) Plaintiff did not breach the Valley

Baptist Contract because he was not "personally responsible for breach of [the contract] when he

did not sign or agree to the lease terms in his individual capacity"; and (3) Plaintiff owed post-

award interest and approximately $117,000 in attorneys' fees for a total of approximately

$762,000.  (Doc. 438-1 at 14–16.)  Plaintiff argues that the Arbitration Award's finding that he

was not a party to the Valley Baptist Contract conclusively means the Texas courts and

arbitration lacked jurisdiction over his claims.  (*See* Doc. 442.)  Plaintiff repeats the same point

---

[15] The state court's final judgment, (Doc. 453-1), in the Texas Actions does not preclude this Court from reviewing whether the Texas state court actions are parallel to the federal cases under *Colorado River*.  As the Second Circuit has made clear, another abstention doctrine, the *Rooker-Feldman* doctrine—which prevents federal district courts from assuming jurisdiction "over cases that essentially amount to appeals of state court judgment"—does not apply in cases where "the state suit at issue is not yet unequivocally terminated."  *Sterling v. Deutsche Bank Nat'l Tr. Co. as Tr. for Femit Tr. 2006-FF6, Mortg. Pass Through Certificates, Series 2006-F6*, No. 19-cv-205, 2019 WL 4686549, at *3 (S.D.N.Y. Sept. 26, 2019) (internal quotation marks omitted).  In other words, since "there remains a pending appeal filed by Plaintiff . . . the state court proceedings have not yet ended . . . [and because] no final state-court judgment existed at the time that this action commenced, there is no state-court loser inviting district court review and rejection of any such judgment."  *Id.* at 3 (internal quotation marks omitted); *see also Hunter v. McMahon*, 75 F.4th 62, 70 (2d Cir. 2023) ("If a federal-court plaintiff's state-court appeal remains pending when she files her federal suit, the state-court proceedings have not ended and *Rooker-Feldman* does not apply.")  Therefore, I can review whether the Texas Actions and federal cases are parallel under *Colorado River* even though the underlying state court action has issued a final judgment, because a pending appeal means that the state suit is not yet "unequivocally terminated" and "no final state-court judgment existed at the time that this action commenced."  *See Sterling*, 2019 WL 4686549, at *3 (evaluating whether the state and federal action are parallel under *Colorado River* after state court action issued a judgment and while appeal was pending); *see also Team Kennedy v. Berger*, 748 F. Supp. 3d 200, 209 (S.D.N.Y. 2024) (evaluating whether the state and federal action are parallel under *Colorado River* even after state court appeal was dismissed, as *Rooker-Feldman* doctrine did not apply since "state-court case had not ended by the time Plaintiffs filed this action"); *McMahon*, 75 F.4th at (finding that state-court proceedings have not reached "finality" when appeal is pending).

in his October 13, 2025 filing attaching the Cameron County order confirming the Arbitration

Award, (Doc. 443), in his November 17, 2025 filing attaching the State Court Judgment, (Docs.

453, 453-1), and in his November 17, 2025 filing attaching a copy of his state court Notice of

Appeal, which was "accepted and docketed" by the Texas Court of Appeals, (Doc. 452 at 1).

Although Plaintiff is the one that filed the Arbitration Award, the confirmation order, the

State Court Judgment, and the Notice of Appeal, they do not help his claims here. [16]  Plaintiff's

own use of the Arbitration Award, the Texas state court's confirmation of the award, the State

Court Judgment, and his Notice of Appeal as support for his underlying claims here suggests that

the Texas Actions are a parallel action and that the Arbitration Award, the confirmation order,

and the State Court Judgment resolves the core of the claims at issue in this case.  Moreover, the

Texas appeals court "will necessarily have to address" the various issues that Plaintiff raises

here.  *Gerschel*, 2022 WL 504229, at *3.

This further counsels in favor of abstention under *Colorado River*.  I therefore find that

the federal actions here and the Texas Actions are parallel.

## 2. The *Colorado River* Factors Weigh in Favor of Abstention

The next step is weighing the *Colorado River* factors.

The first factor weighs against abstention because no res is involved. [17]

The second factor weighs in favor of abstention because these federal actions would be

highly inconvenient for the Valley Baptist Defendants.  As noted, Plaintiff concedes that the

Valley Baptist Defendants are based in Texas, thereby making litigation in this Court

---

[16] Plaintiff also conveniently makes no reference to the fact that the Arbitration Award and the State Court Judgment found him liable for breaching the VHS Contract and confirmed approximately $762,000 in damages.  (*See* Docs. 438-1, 453-1.)

[17] *See JPMorgan Chase Bank, N.A. v. 29-33 Ninth Ave., LLC*, 710 F. Supp. 3d 259, 270 (S.D.N.Y. 2024) (describing examples of "res" including money, property, stake, or fund (internal quotation marks omitted)).

inconvenient for them.  The Valley Baptist Defendants claim that "[a]ll of the witnesses [they] presently anticipate calling at trial work and live in Texas," and all relevant documents are stored in Texas or are in the possession of Texas courts.  (Doc. 331 at 7.)  Producing those documents here and calling those witnesses to this District would surely inconvenience Valley Baptist Defendants.  Plaintiff does not proffer any details to indicate otherwise.

The third factor, avoiding piecemeal litigation, is "[b]y far the most important factor" and heavily weighs in favor of abstention here.  "Avoiding piecemeal litigation is a 'paramount consideration' when a failure to abstain may result in 'inconsistent dispositions' that 'would breed additional litigation on assertions of claim and issue preclusion.'"  *TD Bank, N.A. v. 202-4 W. 23rd St. Corp.*, 760 F. Supp. 3d 87, 93–94 (S.D.N.Y. 2024) (quoting *Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 211 (2d Cir. 1985)).  This third factor is "[m]ost problematic" in "cases that pose 'a risk of inconsistent outcomes not preventable by' ordinary preclusion principles."  *Riggi v. Charlie Rose Inc.*, 777 F. Supp. 3d 356, 365 (S.D.N.Y. 2025). (citation omitted).  Such is the case here, where the causes of action in the federal cases are similar enough but not identical to those in the Texas Actions to result in ordinary preclusive effects.  A finding that Defendants here engaged in the alleged misconduct may inevitably require an adjudication of Plaintiff's merits-based arguments in the Texas Actions, all raising the possibility of piecemeal litigation and inconsistent dispositions.  So, the third factor weighs in favor of abstention.

The fourth factor also weighs in favor of abstention because the Texas Actions were filed before the federal actions and have greatly progressed.  The Texas Actions were initiated years ago, an Arbitration Award was issued, and the state court even issued a final judgment, which Plaintiff has appealed in the Texas Court of Appeals, whereas, here, "[b]esides the filing of the

[c]omplaint[s] in this Court and the current abstention motion, no significant activity has occurred in the federal action." *Goldentree Asset Mgmt., L.P. v. Longaberger Co.*, 448 F. Supp. 2d 589, 594 (S.D.N.Y. 2006) (granting motion for abstention).  Indeed, these consolidated actions have been stayed since April 30, 2025.  (Docs. 146, 423 (extending stay until resolution of Defendants' motions to dismiss).)

The fifth factor, which concerns whether federal law provides the rule of decision, is more complex.  In the Lead Case, the fifth factor weighs against dismissal because the underlying claim is under the federal RICO statute.  Even so, I note Plaintiff's failure to allege a RICO "enterprise" substantially diminishes the weight of Plaintiff's invocation of federal law. *Cf. Bromfield v. Lend-Mor Mortg. Bankers Corp.*, No. 15-CV-1103, 2016 WL 632443, at *5 (D. Conn. Feb. 17, 2016) (finding fifth *Colorado River* factor to weigh in favor of abstention where, "[a]lthough the Complaint purports to invoke federal law, the allegations do not come close to stating a colorable federal claim").  Moreover, the VHS and Valley Baptist Actions involve a mixture of federal and state law, including allegations of breach of contract, fraud, and intentional infliction of emotional distress.  I find that the fifth factor weighs slightly against abstention.

Finally, the sixth factor also weighs in favor of abstention because the Texas state courts "will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 28 (1983).  The Texas state court and appeals court can adjudicate the substance of Plaintiff's claims against the Valley Baptist Defendants, such as those regarding jurisdiction.

I have carefully considered the *Colorado River* factors and find that they collectively weigh in favor of abstention, and that this constitutes the kind of "exceptional circumstance" that

warrants abstention.

### 3.  The Federal Actions are Vexatious and Reactive[18]

The record is also replete with evidence suggesting Plaintiff's bad faith and vexatious conduct, which also weighs in favor of abstention.  "In this Circuit, a plaintiff who, having failed to obtain the desired relief in its home state forum of choice, brings a second proceeding in order to try again, strongly indicates the vexatious nature of the litigation."  *JPMorgan Chase Bank, N.A. v. Avara US Holdings LLC*, No. 23-CV-7145, 2024 WL 709068, at *8 (S.D.N.Y. Feb. 21, 2024) (internal quotation marks and citation omitted).  In other words, Plaintiff's motivation for filing actions in this District is not to vindicate his rights but rather to harass Defendants.

All of Plaintiff's federal claims are in direct reaction to adverse rulings in the Texas Actions, and the vexatious nature of Plaintiff's claims here are clear.  Plaintiff sued not only the original parties in the Texas Actions (VHS and Valley Baptist), but also their parent company Tenet, JAMS, the entire Texas Judiciary, the Texas State Attorney General who represented the Texas Judiciary, and his own counsel.  (Lead Compl. at 1.)  Plaintiff could have continued to assert his merits-based arguments in the Texas Actions, including through amended pleadings or on appeal.  *Abe*, 2016 WL 1275661, at *10 (finding plaintiff's conduct to be "highly vexatious" where he "could have moved to amend the State Action that had already progressed significantly to add these parallel claims").  Instead, Plaintiff has chosen to bring a series of federal actions and file a barrage of motions against any and all parties, including members of the federal judiciary.  In the Lead Case, Plaintiff attempted to add attorney "Drew Harris" as a defendant in the "First Amended Complaint," (Doc. 251), simply for his representation of certain Texas state

---

[18] "[T]he Second Circuit has never formally cited this factor in its enumeration of the relevant considerations under *Colorado River*."  *Iacovacci*, 437 F. Supp. 3d at 379 n.3 (internal quotation marks omitted).  Although I find that the *Colorado River* factors sufficiently weigh in favor of abstention, I note that the vexatious nature of Plaintiff's conduct further counsels the same.

judges, (Doc. 194 (notice of appearance)).  Plaintiff's conduct is clearly vexatious and retaliatory.

In sum, I find that abstention is warranted under *Colorado River*.  "The decision whether to stay or dismiss a federal suit under the *Colorado River* doctrine is committed to the discretion of the district court."  *Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.*, 800 F.2d 325, 327 (2d Cir. 1986).  Here, dismissal is more appropriate, particularly in light of the vexatious nature of Plaintiff's actions in this District.  Plaintiff's claims are therefore DISMISSED.

The Valley Baptist Defendants' motion to dismiss is GRANTED for lack of personal jurisdiction, and in the alternative, under the *Colorado River* abstention doctrine.  Plaintiff's claims against the Valley Baptist Defendants in the Lead Case (No. 25-CV-1683) are DISMISSED.[19]  The Valley Baptist Action (No. 25-CV-1753) and the VHS Action (No. 25-CV-1754) are DISMISSED in their entirety.

### 3.   JAMS

JAMS moves to dismiss based on Federal Rules of Civil Procedure 12(b)(1), (b)(2), and (b)(6).  (Doc. 159.)  First, JAMS argues that I lack subject-matter jurisdiction over the injunctive and declaratory judgment claims under the *Younger* abstention doctrine and that I lack subject-matter jurisdiction overall under the *Colorado River* doctrine.  (*Id.* at 10–15.)  Second, JAMS contends that I lack personal jurisdiction.  (*Id.* at 15–17.)  Third, JAMS argues that res judicata bars Plaintiff's claims.  (*Id.* at 17–19.)  Fourth, JAMS claims that arbitral immunity bars Plaintiff's claims.  (*Id.* at 19–22.)  Finally, JAMS argues that the complaint fails to state a valid RICO claim.  (*Id.* at 22–28.)  As noted above, the JAMS Individual Defendants—Michael

---

[19] In the alternative, Plaintiff's claims are dismissed for failure to state a claim under Rule 12(b)(6).  *See supra* Section IV.B.1.b.1 (dismissing civil RICO claim for failure to allege "enterprise").  Accordingly, Plaintiff's claims in the Lead Case are dismissed.  *See also Allen v. Stringer*, No. 20-3953, 2021 WL 4472667 (2d Cir. Sept. 30, 2021) (summary order) (affirming dismissal of complaint sua sponte for failure to state a claim).

Massengale, Kimberly Taylor, and Sheri Flame Eisner—adopted JAMS' motion-to-dismiss arguments.  (Docs. 311 (attorney declaration incorporation JAMS' motion to dismiss), 367 (same).)  In any event, the JAMS Individual Defendants are not even a party in this action, because Judge Stein struck the First Amended Complaint, which named them as Defendants. (Doc. 424.)

Plaintiff's claims are dismissed for lack of personal jurisdiction and because of arbitral immunity.  Plaintiff's claims in the Lead Case are also dismissed, in the alternative, for failure to state a claim.

a.  Personal Jurisdiction

Plaintiff fails to establish personal jurisdiction over JAMS under Rule 12(b)(2). [20]  As an initial matter, Plaintiff fails to establish general jurisdiction over JAMS.  Plaintiff presents no factual allegations regarding general jurisdiction as to JAMS, and indeed concedes that JAMS' address is in Irvine, California.  (Lead Compl. 20; *see also* JAMS Pet. ¶ 4 (listing JAMS' headquarters to be in Irvine, California).)  Plaintiff merely alleges that "JAMS conducts arbitration in New York" and that "the disputed arbitration affects a New York resident." (JAMS Pet. ¶ 6.)  However, these vague allegations are insufficient to establish that JAMS' connections with New York were "so continuous and systematic" such that JAMS is essentially "at home" in New York.  *See Daimler*, 571 U.S. at 127 (internal quotation marks omitted).  The

---

[20] As discussed previously, the JAMS Individual Defendants are no longer a party to this action after Judge Stein struck Plaintiff's First Amended Complaint.  (Doc. 424.)  Therefore, I cannot sua sponte dismiss Plaintiff's claims for lack of personal jurisdiction against them at this time.  *See Sutton*, 120 F.4th at 1125.  However, Plaintiff also apparently fails to establish personal jurisdiction over the JAMS Individual Defendants.  Plaintiff fails to assert any factual allegations regarding their connection to New York whatsoever and therefore does not establish personal jurisdiction.  (Doc. 251. 2–3.)  However, as they are no longer parties to this action, I cannot dismiss Plaintiff's claims against them sua sponte for lack of personal jurisdiction.  *Id.*  Nevertheless, Plaintiff's claims against the JAMS Individual Defendants are dismissed under arbitral immunity.

allegation that JAMS "conducts arbitration in New York" is similarly vague and conclusory as the allegation that a corporation "does business in New York," neither of which is sufficient to establish personal jurisdiction.  *See Klutz*, 2016 WL 5806902, at *2 (S.D.N.Y. Sept. 20, 2016).

Nor has Plaintiff established specific jurisdiction over JAMS.  Even assuming Plaintiff's allegations are true, none of the alleged conduct by JAMS arises from any of its supposed contacts with New York.  *See Thackurdeen*, 130 F. Supp. 3d at 801.  Rather, all of JAMS' alleged conduct took place in Texas.  Indeed, the complaint in the Lead Case attaches various documents, including a judicial order from Texas state court stating that the arbitration will take place "in Cameron County which is the county in which the [VHS] hospital is located."  (Doc. 1-3 at 106.)  Plaintiff filed a recent copy of the final arbitration award, which indicates that the arbitration took place in Cameron County, Texas.  (Doc. 438-1 at 1.)  In short, the thrust of Plaintiff's allegations is that JAMS is conducting an unauthorized arbitration in Texas.  Plaintiff's remaining argument that "the disputed arbitration affects a New York resident," i.e., Plaintiff, is also unavailing.  (JAMS Pet. ¶ 6.)  As explained, harm under Section 302 "does not occur within the state simply because the plaintiff is a resident."  *Mareno*, 910 F.2d at 1046.  Further, Plaintiff's vague allegations that "JAMS conducts arbitration in New York" is insufficient to overcome his burden of establishing jurisdiction.  *See Cullum*, 2024 WL 552494, at *9 (citing *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 395 (S.D.N.Y. 2021)); *see also First Cap. Asset Mgmt., Inc. v. Brickellbush, Inc.*, 218 F. Supp. 2d 369, 398 (S.D.N.Y.), *on reconsideration*, 219 F. Supp. 2d 576 (S.D.N.Y. 2002) (finding allegation that defendant had meetings "in connection with the transactions involved in . . . the instant lawsuit" were "vague and conclusory"), *aff'd sub nom. First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004).

Plaintiff's allegations, even taken collectively among all the complaints and petitions, fail to establish either general or specific jurisdiction over JAMS. Plaintiff also failed to respond to JAMS' arguments regarding personal jurisdiction in his opposition brief. (Docs. 164 (addressing other arguments including discovery admissions, summary judgment, and arbitral immunity); 377 (failing to address personal jurisdiction).) Accordingly, the motion to dismiss filed by JAMS is GRANTED for lack of personal jurisdiction.

b. Arbitral Immunity

In the alternative, Plaintiff's claims against JAMS and the JAMS Individual Defendants must be dismissed based on arbitral immunity. The Second Circuit has clearly held that because "the nature of the function performed by arbitrators necessitates protection analogous to that traditionally accorded to judges . . . arbitrators in contractually agreed upon arbitration proceedings are absolutely immune from liability in damages for all acts within the scope of the arbitral process." *Austern v. Chi. Bd. Options Exch., Inc.*, 898 F.2d 882, 886 (2d Cir. 1990). "As with judicial and quasi-judicial immunity, arbitral immunity is essential to protect the decision-maker from undue influence and protect the decision-making process from reprisals by dissatisfied litigants." *Id.* (internal quotation marks omitted). Arbitral immunity extends to sponsoring organizations, including JAMS, as they are "entitled to immunity for all functions that are integrally related to the arbitral process." *Id.* Individuals also benefit from arbitration immunity because "individuals [] cannot be expected to volunteer to arbitrate disputes if they can be caught up in the struggle between the litigants and saddled with the burdens of defending a lawsuit." *Cf. id.* (internal quotation marks omitted and alterations adopted).

All of the alleged misconduct by JAMS and the JAMS Individual Defendants occurred within the confines of the arbitral process with Plaintiff. Plaintiff is merely unhappy with the

fact that he was in arbitration proceedings before JAMS and that he received certain adverse rulings in the arbitration. Plaintiff's claims against JAMS, both in the Lead Case and the JAMS Action, indicate "a clear attempt to circumvent the exclusive means to challenge an arbitration award and precisely the type of action arbitral immunity was created to prevent." *Landmark Ventures, Inc. v. Cohen*, No. 13-CV-9044, 2014 WL 6784397, at *4 (S.D.N.Y. Nov. 26, 2014) (citation omitted). Plaintiff's accusations that JAMS exceeded its jurisdictional powers or authority are also insufficient to overcome arbitral immunity. *See Bletas v. Deluca*, No. 11-CV-1777, 2011 WL 13130879, at *5 (S.D.N.Y. Nov. 15, 2011) (rejecting plaintiff's allegation that arbitrator "exceeded her powers and authority, committed misconduct," and engaged in "corruption and fraud" because the "alleged actions occurred in the context of the two arbitrations"). Nor does Plaintiff provide any factual allegations that JAMS or the JAMS Individual Defendants engaged in fraud, obstruction of justice, or collusion. *See id.* at *6 ("observ[ing] that there is absolutely no factual basis for plaintiffs' over-the-top accusations that arbitrator engaged in criminal conduct or fraud). Plaintiff's claims are therefore dismissed, in the alternative, under the doctrine of arbitral immunity.

The motions to dismiss of JAMS and the JAMS Individual Defendants are GRANTED for lack of personal jurisdiction and based on arbitral immunity. Plaintiff's claims against JAMS' and the JAMS Individual Defendants in the Lead Case (No. 25-CV-1683) are DISMISSED.[21] The JAMS Action (25-CV-1868) is DISMISSED in its entirety.

---

[21] In the alternative, Plaintiff's claims are dismissed for failure to state a claim under Rule 12(b)(6). *See supra* Section IV.B.1.b.1 (dismissing civil RICO claim for failure to allege "enterprise").

### 4.  Texas Judiciary[22]

Plaintiff names 18 Texas state judges, in their judicial and personal capacities, who were "involved" in the Texas proceeding of 2018-CCL-01401 in the Lead Case.  (Lead Compl. 21.) These include five trial court judges, three administrative and regional judges, the Chief Justice of the Texas Supreme Court, six judges from Texas' 13th Court of Appeals, and three district judges.  (*Id.* at 21–28.)  All of Plaintiff's allegations relate to judicial acts that the members of the Texas Judiciary committed.  (*See, e.g.*, Lead Compl. 22 ("Each of these judges ruled . . . without first confirming jurisdiction."), 24 ("By ruling without first establishing jurisdiction, the [Texas 13th Court of Appeals] acted ultra vires."), 25–28 (accusing district judges of misconduct based on their "rulings on a legal matter").)

In his opposition brief, Plaintiff contends that the Texas Judiciary's various rulings are not immune from suit because they were "ultra vires act[s]."  (Doc. 232 at 4–5.)  Plaintiff's ultra-vires argument is inconsistent with the law and his claims are barred by judicial immunity.  "It is well settled that 'judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly.'"  *Brady v. Ostrager*, 834 F. App'x 616, 618 (2d Cir. 2020) (summary order) (quoting *Stump v. Sparkman*, 435 U.S. 349, 355–56 (1978)).

However, no judicial immunity exists where "actions, though judicial in nature, [are] taken in the complete absence of all jurisdiction."  *Mireles v. Waco*, 502 U.S. 9, 12 (1991).  This occurs where the judge "(i) acts in the clear absence of all jurisdiction; and (ii) knew or must have known that he was acting in such a manner."  *Tucker v. Outwater*, 118 F.3d 930, 936 (2d

---

[22] Although Plaintiff does not define "Texas Judiciary," I will collectively refer to all the Texas state judges that Plaintiff names as Defendants, including those who have not appeared here, as the "Texas Judiciary."

Cir. 1997).

Here, Plaintiff fails to establish that any of the judges of the Texas Judiciary acted "in the clear absence of all jurisdiction." *See Brady*, 834 F. App'x at 618 (finding that the plaintiff failed to show that judge "did not act in the clear absence of all jurisdiction" when the judge "was a justice of the New York Supreme Court, Commercial Division, which, in New York County, has jurisdiction over commercial disputes where the amount in controversy totals at least $500,000"). Plaintiff claims that the Texas Judiciary lacked jurisdiction, presumably because they did not adjudicate his jurisdiction-related claims when they issued decisions unfavorable to him. However, that is a legal conclusion unsupported by factual allegations. Accordingly, Plaintiff's claims against the Texas Judiciary dismissed. *See Brady*, 834 F. App'x at 619 (affirming dismissal of civil RICO claim against New York state judge). This ruling includes Plaintiff's claims against any Texas state judges that have not appeared in this action,[23] as I dismiss these claims sua sponte. *See, e.g.*, *Sibley v. Geraci*, 858 F. App'x 415, 417–18 (2d Cir. 2021) (summary order) (affirming sua sponte dismissal of claims as "barred by absolute judicial immunity"); *Tewari v. Sattler*, No. 23-36-CV, 2024 WL 177445, at *2 (2d Cir. Jan. 17, 2024) (summary order) (affirming sua sponte dismissal of claims as frivolous based on judicial immunity); *White v. Renzi*, No. 22-2040, 2023 WL 6205957, at *2 (2d Cir. Sept. 25, 2023) (summary order) (affirming dismissal of claim for judicial immunity). Plaintiff's claims against

---

[23] Plaintiff's claims against Defendants Judge David L. Evans and Judge Maria Aceves are dismissed, in the alternative, for lack of personal jurisdiction. Plaintiff notes that Judge Evans is in "Tarrant County, Tom Vandergriff Civil Courts Building," (Lead Compl. 22), and that Judge Aceves's address is in Dallas, Texas, (*id.* at 26). These allegations are insufficient to establish general jurisdiction.

Nor does Plaintiff establish specific jurisdiction. Plaintiff claims that Judge Evans "refused to rule on jurisdiction," sanctioned Plaintiff, and denied a motion for recusal. (Lead Compl. 42.) Plaintiff also claims that Judge Aceves improperly transferred his Texas state action "to a court without jurisdiction" and engaged in other judicial action that purportedly "shielded Tenet Healthcare from accountability." (*Id.* at 26–27, 38.) All the alleged conduct occurred in Texas; none, even if I take Plaintiff's allegations as true, have any connection with New York.

the Texas Judiciary in the Lead Case are therefore DISMISSED.[24]

### 5. Texas State Attorney General

Plaintiff names Ken Paxton, the Office of the Texas State Attorney General, and attorney Scot Graydon (collectively, the "Texas SAG Defendants") in the Lead Complaint.  (Lead Compl. 23.)  Plaintiff claims that Paxton and Graydon "engaged in a systematic effort to defend judges acting without jurisdiction," "fail[ed] to comply with Rule 120 of the Texas Rules of Civil Procedure," and "use[d] [] public funds to protect ultra vires actions."  (*Id.* at 23, 47.)  Plaintiff's claims against the Texas SAG Defendants are barred by absolute immunity.

"As a general principle, a government attorney is entitled to absolute immunity when functioning as an advocate of the state in a way that is intimately associated with the judicial process."  *Mangiafico v. Blumenthal*, 471 F.3d 391, 396 (2d Cir. 2006) (citing *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)).  This absolute immunity covers "functions of a government attorney 'that can fairly be characterized as closely associated with the conduct of litigation or potential litigation' in civil suits—including the defense of such actions."  *Id.* (quoting *Barrett v. United States*, 798 F.2d 565, 572 (2d Cir. 1986)).

The alleged conduct of the Texas SAG Defendants is clearly "closely associate[d] with litigation in a civil suit" thus dooming Plaintiff's claims.  *See Pinkard v. New York City Dep't of Educ.*, No. 24-CV-6018, 2024 WL 4150020, at *3 (S.D.N.Y. Sept. 4, 2024) (dismissing claims against government attorney based on absolute immunity).  The conduct at issue is litigating on behalf of the Texas state judges.  (*See, e.g.*, Lead Compl. 44 ("Ken Paxton and Scot Graydon proceeded to defend judges."); 45 ("Knowingly Filing Legal Motions Without Jurisdiction"); 46

---

[24] In the alternative, Plaintiff's claims against the Texas Judiciary are dismissed for failure to state a claim under Rule 12(b)(6).  *See supra* Section IV.B.1.b.1 (dismissing civil RICO claim for failure to allege "enterprise").

("The [Office of the Attorney General] used taxpayer funds to defend judicial actions that lacked jurisdiction."); 47 ("The [Office of the Attorney General's] defense of judges without jurisdiction renders all related legal actions void ab initio.").)  A state attorney general's office may represent members of that state's judiciary for acts within the scope of the state judiciary's employment.  *See Malek v. New York State Unified Ct. Sys.*, No. 21-CV-1230, 2022 WL 4120267, at *2 (N.D.N.Y. Sept. 9, 2022) (denying motion to disqualify state attorney general's office from representing state court judge); *Morse v. City of New York*, No. 00-CV-2528, 2001 WL 968996, at *2 (S.D.N.Y. Aug. 24, 2001) (describing state assistant attorney general's representation of state court judges).  Plaintiff presents no accusations of misconduct outside the scope of the Texas SAG Defendants' actions as attorneys.  The Texas SAG Defendants are therefore immune from suit.  Even though the Texas SAG Defendants have not been served in this action, I have authority to dismiss the claims sua sponte based on immunity.  *See, e.g.*, *Bowers v. Kelly*, No. 13-CV-06265, 2015 WL 2061582, at *5–*6 (S.D.N.Y. May 4, 2015) (dismissing sua sponte claims against government attorney); *Kneitel v. City of New York*, No. 15-CV-6942, 2017 WL 5508367, at *5 (E.D.N.Y. Nov. 15, 2017) (same).  Plaintiff's claims against the Texas SAG Defendants in the Lead Case are therefore DISMISSED.[25]

### C.  *Dismissal with Prejudice*

Claims brought pro se are typically dismissed without prejudice.  "A *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks omitted and alterations

---

[25] In the alternative, Plaintiff's claims against the Texas SAG Defendants are dismissed for failure to state a claim under Rule 12(b)(6).  *See supra* Section IV.B.1.b.1 (dismissing civil RICO claim for failure to allege "enterprise").

adopted).  Plaintiff's myriad of complaints and petitions give no such indication.

    As an initial matter, because JAMS, the JAMS Individual Defendants, the Texas

Judiciary, and the Texas SAG Defendants are immune from suit, any amendment would be

futile.  *See Brady*, 834 F. App'x 619 ("Given Justice Ostrager's judicial immunity, the district

court correctly held that amendment would be futile."); *O'Callaghan v. City of New York*, No.

16-CV-1139, 2016 WL 7177509, at *11 (S.D.N.Y. Dec. 8, 2016) ("The Court finds that any

attempt to sue the City's lawyers in their individual capacities would be futile because they are

protected by the doctrine of absolute immunity.").  "The problem with [Plaintiff's] causes of

action is substantive; better pleading will not cure it."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d

Cir. 2000).  Accordingly, Plaintiff's claims against JAMS, the JAMS Individual Defendants,[26]

the Texas Judiciary, and the Texas SAG Defendants are dismissed with prejudice.

    Plaintiff's claims against the Valley Baptist Defendants and the Pakis Defendants are also

dismissed with prejudice.  Even read liberally, Plaintiff's numerous complaints and petitions are

frivolous, "even if Plaintiff subjectively believes them to be true," and therefore can be dismissed

with prejudice.  *Xuefeng Dai v. Alibaba Cloud US LLC*, No. 19-CV-6140, 2020 WL 122945, at

*2 (E.D.N.Y. Jan. 9, 2020) (citing *Hawkins-El v. AIG Fed. Sav. Bank*, 334 F. App'x 394, 395 (2d

Cir. 2009) (summary order) (affirming sua sponte dismissal of complaint as frivolous)).  Indeed,

the Second Circuit has cautioned courts from "excus[ing] frivolous or vexatious filings by *pro se*

litigants."  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (internal

quotation marks).  In fact, "the Court has an obligation to prevent such a waste of the judiciary's

resources and the extreme prejudice to the Defendant from absorbing the costs of a protracted

---

[26] As noted, the JAMS Individual Defendants are not even a party to this action because Judge Stein struck the First
Amended Complaint.  (Doc. 424.)

litigation." *Shukla v. Deloitte Consulting LLP*, No. 19-CV-10578, 2021 WL 3721349, at *3 (S.D.N.Y. Aug. 20, 2021) (citing *Jones v. Niagara Frontier Transportation Authority*, 836 F.2d 731, 734-35 (2d Cir. 1987)).  Plaintiff's conduct has been incredibly prejudicial to all defendants involved who must, at a minimum, review Plaintiff's incessant filings in the five consolidated actions.  These filings have also wasted the judiciary's resources in this District.

Accordingly, Plaintiff's claims against all Defendants in all five consolidated cases are DISMISSED with prejudice.

### D.  *Sanctions*

I take judicial notice of Plaintiff's disturbing pattern of vexatious litigation.  *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts.").  In the Eastern District of New York, Plaintiff filed suit against counsel Haynes and Boone LLP for its representation of the Valley Baptist Defendants in this action.  *See De Oliveira v. Haynes and Boone, LLP*, No. 25-CV-4355 (E.D.N.Y. Aug. 5, 2025), Doc. 1.  In the District of Columbia, Plaintiff filed suit against this District's Clerk of Court Tammi Hellwig—that suit has since been transferred to the Eastern District of New York. *See De Oliveira v. Hellwig*, No. 25-CV-04592 (E.D.N.Y. Aug. 19, 2025), Doc. 6.  In this District, Plaintiff sought to add Andrew Harris as a Defendant, merely for representing certain Texas state judges in this action.  (Doc. 251 ¶ 9.)

This pattern of incessant, vexatious litigation must stop, and I will not countenance the prospect of Plaintiff filing more frivolous and vexatious actions.  Plaintiff is a "pro se litigant with a long record of frivolous and vexatious proceedings in this court," and therefore sanctions are warranted.  *See Johl v. Johl*, 788 F.2d 75, 75 (2d Cir. 1986) (per curiam).  In particular, I have the authority to enjoin litigious parties from pursuing "onerous, multiplicitous, and baseless

litigation." *Abdullah v. Gatto*, 773 F.2d 487, 488 (2d Cir. 1985) (citing *In re Martin-Trigona*,

737 F.2d 1254 (2d Cir. 1984)).

The Second Circuit has listed several factors that courts should consider before enjoining

a vexatious litigant:

(1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits;

(2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?;

(3) whether the litigant is represented by counsel;

(4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and

(5) whether other sanctions would be adequate to protect the courts and other parties.

*Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986). "Ultimately, the question the court must

answer is whether a litigant who has a history of vexatious litigation is likely to continue to

abuse the judicial process and harass other parties." *Id.*

The *Safir* factors collectively weigh in favor of a filing injunction. First, Plaintiff's

litigious history, including in the Eastern District of New York and the District of Columbia,

clearly indicates that his claims are vexatious, harassing, and duplicative. Plaintiff has

"unleashed a torrent of paperwork on the Court" and "continuously filed frivolous and

duplicative motions and other documents" in this action, and "fil[ed] separate lawsuits" in other

Districts. *See In re Cunningham*, No. 17-CV-7809, 2018 WL 10038795, at *10 (S.D.N.Y. Mar.

22, 2018). In these federal actions, Plaintiff "has repeatedly asserted the same claims in slightly

altered guise and most—if not all of—his claims have been resoundingly rejected by the courts."

*Ranasinghe v. Kennell*, No. 16-CV-2170, 2017 WL 384357, at *5 (S.D.N.Y. Jan. 25, 2017)

(internal quotation marks omitted), *aff'd*, 718 F. App'x 82 (2d Cir. 2018).

Second, Plaintiff's motive is also clear; he is incredibly displeased with how the Texas Actions are going and in response sues any and all parties involved, including his own prior counsel. This dissatisfaction has now led him to file actions in other Districts, as evident in his suits against counsel and this District's Clerk of Court. The third factor "is neutral because [Plaintiff], although representing himself, has extensive litigation experience," including in the Texas Actions themselves. *In re Cunningham*, 2018 WL 10038795, at *10. Fourth, Plaintiff has undoubtedly "caused needless expense" to the multitude of Defendants here and has posed an incredible burden on members of the judiciary. *7 W. 21 LI, LLC v. Mosseri*, No. 25-CV-00849, 2025 WL 1224832, at *5 (S.D.N.Y. Apr. 28, 2025) ((quoting *Safir*, 792 F.2d at 24) (noting that a party's meritless filings required responses from other parties and the "Court [] had to adjudicate these duplicative actions"), *appeal dismissed*, No. 25-1206, 2025 WL 1982288 (2d Cir. June 11, 2025)). Finally, Plaintiff's conduct demonstrates that a filing injunction is necessary. *See Woodhouse v. Meta Platforms Inc.*, 704 F. Supp. 3d 502, 516 (S.D.N.Y. 2023) (finding that "a filing injunction would be adequate to protect the courts and parties").

I plan on enjoining Plaintiff from filing any more motions or lawsuits that relate to the Texas Actions, including those related to Plaintiff's contracts with VHS and Valley Baptist, and the related litigation in Texas state courts and in arbitration, particularly against any of the Defendants and their counsel here. Plaintiff will be enjoined from such filings in this District. For any future action that Plaintiff seeks to initiate in this District, whether related to the Texas Actions or not, Plaintiff "must first submit a request for permission to file and attach to the request a copy of his proposed complaint and any supporting documents. The documents should bear the caption 'Request for Permission to File under Filing Injunction'; be addressed to the

Clerk of Court; and be submitted to the Pro Se Intake Unit of this Court." *In re Cunningham*, 2018 WL 10038795, at *11. "If [Plaintiff] disobeys either injunction, he could be subject to other sanctions, including monetary penalties." *Id.*

The Second Circuit notably prohibits a district court from "impos[ing] a filing injunction on a litigant *sua sponte* without providing the litigant with notice and an opportunity to be heard." *Moates v. Barkley*, 147 F.3d 207, 208 (2d Cir. 1998). Plaintiff is therefore ordered to submit, within 30 days of this Opinion & Order, a sworn declaration as to why this filing injunction should not be issued. That declaration must not exceed 2,000 words. If Plaintiff fails to submit such a declaration in compliance with this Opinion & Order and in a timely manner, this filing injunction will take effect *nunc pro tunc* to the date of this Opinion & Order.

At this time, I will not impose sanctions on Plaintiff requiring him to play attorneys' fees for this litigation. However, Plaintiff is warned that any further frivolous motions or lawsuits may result in such orders, either from this Court or another. In other words, Plaintiff may be responsible for attorneys' fees that inevitably result in response to Plaintiff's barrage of motions and filings.

Accordingly, the motion for sanctions by JAMS is GRANTED IN PART and DENIED IN PART.

## V.    <u>Conclusion</u>

For the reasons above, Defendants' motions to dismiss are GRANTED, and JAMS' motion for sanctions is GRANTED IN PART and DENIED IN PART. Plaintiff's claims in all five cases are DISMISSED with prejudice.

Plaintiff must submit his declaration as to why a filing injunction should not issue within

30 days of this Opinion & Order.[27]

      The Clerk of Court is respectfully directed to file this Opinion & Order in all five

consolidated actions:  No. 25-CV-1683; No. 25-CV-1692; No. 25-CV-1753; No. 25-CV-1754;

and No. 25-CV-1868.  The Clerk of Court is also respectfully directed to close all five cases.

SO ORDERED.

Dated: November 20, 2025
      New York, New York

                                        Vernon S. Broderick
                                        United States District Judge

---

[27] Pro se Plaintiff consented to receiving electronic service by the ECF system.  (Doc. 9.)